**RECORD NO. 20-16**

In The
# United States Court of Appeals
For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## RICHARD TIPTON, a/k/a Whittey,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

---

**JOINT APPENDIX
VOLUME I OF II
(Pages 1 – 203)**

---

Jeffrey L. Ertel
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street NW, Suite 1500
Atlanta, Georgia  30303
(404) 688-7530

Frederick R. Gerson
DURRETTE, ARKEMA, GERSON & GILL, PC
1111 East Main Street, 16th Floor
Post Office Box 1463
Richmond, Virginia  23219
(804) 775-6900

*Counsel for Appellant*

*Counsel for Appellant*

Gerald W. King, Jr.
FEDERAL PUBLIC DEFENDER FOR
  THE WESTERN DISTRICT OF NORTH CAROLINA
129 West Trade Street, Suite 300
Charlotte, North Carolina  28202
(704) 374-0720

Joseph Attias
Richard D. Cooke
OFFICE OF THE U.S. ATTORNEY
919 East Main Street, Suite 1900
Richmond, Virginia  23219
(804) 819-5400

*Counsel for Appellant*

*Counsel for Appellee*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS
## VOLUME I OF II

**Appendix Page**

Docket Entries ........................................................................................................ 1

Excerpt from Mr. Tipton's Trial before The Honorable James R. Spencer
    on February 2, 1993 ...................................................................................... 6

Mr. Tipton's Motion for the Imposition of a Reduced Sentence
Under Section 404 of The First Step Act,
With Attachments,
    filed July 31, 2020 ........................................................................................ 9

    Attachments:

      1.    Second Superseding Indictment
          dated July 20, 1992 ............................................................ 36

      2.    Jury's Decision Form
          dated February 13, 1993 .................................................... 58

      3.    Judgment
          dated June 1, 1993 ............................................................ 70

      4.    Verdict
          dated February 3, 1993 ...................................................... 74

      5.    Jury's Special Findings
          dated February 16, 1993 .................................................... 81

Government's Response in Opposition to Mr. Tipton's  First Step Act Motion,
With Attachment,
    filed September 21, 2020 ............................................................................ 92

    Attachment:

      A.    Inmate Discipline Data
          dated August 27, 2020 .................................................... 118

Mr. Tipton's Reply in Support of His First Step Act Motion
        filed October 20, 2020.................................................................................... 128

Memorandum Opinion Denying James Roane's First Step Act Motion
        filed October 29, 2020.................................................................................... 146

Memorandum Order Denying Mr. Tipton's First Step Act Motion
        filed November 19, 2020 ................................................................................ 189

Mr. Tipton's Notice of Appeal
        filed November 24, 2020 ................................................................................ 201

# TABLE OF CONTENTS
## VOLUME II OF II – UNDER SEAL

**Appendix Page**

Defendant's First Step Act Amendment Application Worksheet,
With Attachment,
   filed September 1, 2020 ................................................................................. 204

   Attachment:

   1.    Original Presentence Investigation Report
         dated August 20, 1993 ................................................................... 206

CLOSED

# U.S. District Court
## Eastern District of Virginia – (Richmond)
## CRIMINAL DOCKET FOR CASE #: 3:92–cr–00068–DJN–1

Case title: USA v. Tipton, et al

Date Filed: 04/24/1992
Date Terminated: 06/01/1993

Assigned to: District Judge David J. Novak

Appeals court case number: 20–16 USCA

**Defendant (1)**

**Richard Tipton**
*TERMINATED: 06/01/1993*
*also known as*
"Whittey"

represented by **Eric David White**
Samuel I White PC (VA Beach)
596 Lynnhaven Pkwy
Suite 200
Virginia Beach, VA 23452
757–490–9284
Fax: 757–497–2802
*TERMINATED: 06/01/1993*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frederick Robert Gerson**
Durrette Arkema Gerson & Gill PC
1111 East Main Street
16th Floor
Richmond, VA 23219
804–775–6900
Fax: 804–823–2611
Email: fgerson@dagglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerald Wesley King , Jr.**
Federal Defender Program
101 Marietta Street NW
Suite 1500
Atlanta, GA 30303
**NA**
678–539–4342
Fax: 404–688–0768
Email: Gerald_King@fd.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender*

**Robert Patrick Geary**
PO Box 42
Sandston, VA 23150
(804) 643–8003
Email: rpg.esq11@yahoo.com
*TERMINATED: 06/01/1993*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Lyn Ertel**
Federal Defender Program, Inc.

101 Marietta Street
Suite 1500
Atlanta, GA 30303
**NA**
678−539−4313
Fax: 404−688−0768
Email: jeff_ertel@fd.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender*

**Stephen Atherton Northup**
Troutman Pepper Hamilton Sanders LLP
(Richmond)
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
(804) 697−1200
Email: steve.northup@troutmansanders.com
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Intervenor**
**Willie Lee Seward**

**Plaintiff**

**USA**                                    represented by   **S. David Schiller**
*TERMINATED: 05/27/1992*                                   Office of the U.S. Attorney
                                                           SunTrust Building
                                                           919 East Main Street
                                                           Suite 1900
                                                           Richmond, VA 23219
                                                           (804) 819−5400
                                                           Email: david.schiller@usdoj.gov
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Joseph Attias**
                                                           United States Attorney Office
                                                           (Richmond−NA)
                                                           SunTrust Building

-2-

919 East Main Street
Suite 1900
Richmond, VA 23219
**NA**
804–819–5400
Email: joseph.attias2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Richard D. Cooke**
United States Attorney's Office
(Richmond)
SunTrust Building
919 East Main Street
Suite 1900
Richmond, VA 23219
804–819–5449
Email: richard.cooke@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Thomas Arthur Garnett**
US Attorney Office (Richmond)
SunTrust Building
919 East Main Street
Suite 1900
Richmond, VA 23219
(804) 819–5431
Email: Thomas.A.Garnett@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/02/1997 | | Supreme Court denied certiorari; order filed by USA as to Richard Tipton (Entered: 09/02/1997) |
| 03/23/2020 | | Case reassigned to District Judge David J. Novak. District Judge James R. Spencer no longer assigned to the case. (jsmi, ) (Entered: 03/23/2020) |
| 06/08/2020 | | 2255 Appeal Remark: USCA 2255 Case docketed. Case #20–10, Case Manager EBorneisen (lgar, ) (Entered: 06/08/2020) |
| 07/16/2020 | 13 | 2255 ORDER of USCA as to Richard Tipton : Upon consideration of submissions relative to the movants motion to hold in abeyance, the court grants the motion and places this case in abeyance pending a decision by this court in United States v. Taylor, No. 19–7616. Entered at the direction of Judge Motz with the concurrence of Judge Floyd. Judge Wilkinson voted to deny authorization to file a successive motion under 28 U.S.C. § 2255. (lbre, ) (Entered: 07/16/2020) |
| 07/31/2020 | 24 | MOTION for Imposition of a Reduced Sentence Under Section 404 of the First Step Act by Richard Tipton. (Attachments: # 1 Exhibit 1, Superseding Indictment, # 2 Exhibit 2, Jury Decision Forms, # 3 Exhibit 3, Court's Judgment, # 4 Exhibit 4, Verdict Form, # 5 Exhibit 5, Tipton Special Findings)(Gerson, Frederick) (Entered: 07/31/2020) |
| 08/04/2020 | 25 | Motion to appear Pro Hac Vice by Gerald Wesley King, Jr. and Certification of Local Counsel Frederick R. Gerson by Richard Tipton. (Attachments: # 1 Pro Hac) No fee required Federal Defender Services(khan, ) (Entered: 08/04/2020) |
| 08/04/2020 | 26 | Motion to appear Pro Hac Vice by Jeffrey L. Ertel and Certification of Local Counsel Frederick R. Gerson by Richard Tipton. (Attachments: # 1 pro hac) No fee required Federal Defender Services (khan, ) (Entered: 08/04/2020) |
| 08/07/2020 | 28 | NOTICE OF ATTORNEY APPEARANCE Richard D. Cooke appearing for USA. (Cooke, Richard) (Entered: 08/07/2020) |
| 08/07/2020 | 29 | VACATED PER 32 ORDER ENTERED ON 8/14/2020 – ORDER DENYING 26 Motion for Pro hac vice as to Richard Tipton (1). Signed by District Judge David J. Novak on 08/07/2020. (tjoh, ) Modified on 8/14/2020 (jsmi, ). (Entered: 08/07/2020) |

| 08/07/2020 | 30 | ORDER granting 25 Gerald Wesley King, Jr. Motion for Pro hac vice as to Richard Tipton (1). Signed by District Judge David J. Novak on 08/07/2020. (tjoh, ) (Entered: 08/07/2020) |
|---|---|---|
| 08/13/2020 | 31 | MOTION for Reconsideration re 29 Order on Motion for Pro hac vice *to Jeffrey L. Ertel* by Richard Tipton. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Gerson, Frederick) (Entered: 08/13/2020) |
| 08/14/2020 | 32 | ORDER as to Richard Tipton that VACATES its previous 29 Order denying the admission pro hac vice of Mr. Ertel and hereby GRANTS 26 Motion to Appear Pro Hac Vice by Jeffrey L. Ertel. The Court hereby ORDERS Mr. Ertel to file an affidavit signed under the penalty of perjury attesting to the fact that he has thoroughly read the Local Rules for the United States District Court for the Eastern District of Virginia and that he agrees to comply with all of the local rules. Failure to file such an affidavit within seven days of the entry of this Order shall result in the revocation of his pro hac vice admission. Signed by District Judge David J. Novak on 8/14/2020. (jsmi, ) (Entered: 08/14/2020) |
| 08/21/2020 | 42 | NOTICE *of Filing* by Richard Tipton re 32 Order on Motion for Reconsideration,, (Attachments: # 1 Affidavit of Jeffrey L. Ertel)(Gerson, Frederick) (Entered: 08/21/2020) |
| 09/02/2020 | 45 | ORDER as to Richard Tipton that the Court hereby DIRECTS the United States Attorney's Office to respond within 15 days of this Order and to explain its position regarding Defendant's First Step Act Motion and requested relief. If Defendant disagrees with the Government's response, Defendant may reply to the Government's response within 15 days of the date that the Government's response is filed. The United States Probation Office is DIRECTED to prepare a First Step Act Worksheet within 14 days of the date of entry hereof. See Order for details. Signed by District Judge David J. Novak on 9/2/2020. (jsmi, ) (Entered: 09/02/2020) |
| 09/04/2020 | 47 | ORDERS granting 34 , 35 , and 36 Motions for Pro hac vice as to Cory Johnson. Alexander C. Drylawski, Judith A. Flumenbaum, and Donald P. Salzman added. Signed by District Judge David J. Novak on 9/2/2020. (jsmi, ) (Entered: 09/04/2020) |
| 09/10/2020 | 48 | First Step Act Work Sheet (Sealed Document) as to Richard Tipton (Attachments: # 1 Supplement Presentence Report)(frere, laurie) (Entered: 09/10/2020) |
| 09/17/2020 | 49 | MOTION for Extension of Time to File Response/Reply as to 24 MOTION for Imposition of a Reduced Sentence Under Section 404 of the First Step Act , 45 Order to Respond – First Step Act,, by USA as to Richard Tipton. (Attachments: # 1 Proposed Order)(Cooke, Richard) (Entered: 09/17/2020) |
| 09/17/2020 | 50 | ORDER as to Richard Tipton that Government's 49 Unopposed Motion for a Four Day Extension for Filing the United States' Response to § 404 Motion is GRANTED. The Government shall have until September 21, 2020, by which to file its response to Defendant's First Step Act Motion. Signed by District Judge David J. Novak on 9/17/2020. (jsmi, ) (Entered: 09/17/2020) |
| 09/21/2020 | 54 | RESPONSE in Opposition by USA as to Richard Tipton re 24 MOTION for Imposition of a Reduced Sentence Under Section 404 of the First Step Act (Attachments: # 1 Exhibit A)(Attias, Joseph) (Entered: 09/21/2020) |
| 10/02/2020 | 61 | MOTION for Extension *TIME TO FILE A REPLY TO THE GOVERNMENTS RESPONSE TO DEFENDANTS MOTION FOR A REDUCED SENTENCE UNDER SECTION 404 OF THE FIRST STEP ACT* by Richard Tipton. (Attachments: # 1 Proposed Order)(Gerson, Frederick) (Entered: 10/02/2020) |
| 10/07/2020 | 62 | ORDER granting 61 Motion for Extension of Time as to Richard Tipton (1). Defendantshall have until October 20, 2020, by which to file his reply in support of his First Step ActMotion. Signed by District Judge David J. Novak on 10/05/2020. (tjoh, ) (Entered: 10/07/2020) |
| 10/20/2020 | 65 | REPLY TO RESPONSE to by Richard Tipton re 24 MOTION for Imposition of a Reduced Sentence Under Section 404 of the First Step Act (Gerson, Frederick) (Entered: 10/20/2020) |

Case: 3:92-cr-68-1   As of: 12/28/2020 01:55 PM EST   5 of 5

| 11/17/2020 | 71 | PAPER DOCKET SHEET as to Richard Tipton. (jsmi, ) (Entered: 11/17/2020) |
|---|---|---|
| 11/17/2020 | 74 | ORDER of USCA (#20–10) as to Richard Tipton : For reasons appearing to the court, this case is placed in abeyance pending a decision by this court in United States v. Ortiz–Orellana, No. 16–4844. (lbre, ) (Entered: 11/18/2020) |
| 11/19/2020 | 76 | ORDER as to Richard Tipton that the Court finds that Defendant's convictions on Counts Three, Seventeen, Eighteen, Nineteen, Twenty Four and Twenty–Five do not constitute covered offenses under the First Step Act. Although Defendant's convictions on Counts Thirty–Two and Thirty–Three do constitute covered offenses, the Court declines to exercise its discretion to reduce Defendant's sentence. Therefore, Defendant's 24 Motion for Imposition of a Reduced Sentence Under Section 404 of the First Step Act will be denied. Signed by District Judge David J. Novak on 11/19/2020. (jsmi, ) (Entered: 11/19/2020) |
| 11/24/2020 | 80 | NOTICE OF APPEAL by Richard Tipton re 76 Order on Motion for Reconsideration. (khan, ) (Entered: 11/24/2020) |
| 11/24/2020 | 81 | Transmission of Notice of Appeal to US Court of Appeals as to Richard Tipton re 80 Notice of Appeal. (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (lbre, ) (Entered: 11/24/2020) |
| 11/25/2020 | | USCA Case Number 20–16, Case Manager Emily Borneisen for 81 Notice of Appeal filed by Richard Tipton. (lgar, ) (Entered: 11/25/2020) |
| 12/08/2020 | 84 | MOTION TO INTERVENE by Willie Lee Seward. (jsmi, ) (Entered: 12/08/2020) |
| 12/09/2020 | 85 | ORDER (Denying Motion to Intervene) as to Richard Tipton – This matter comes before the Court on a Motion to Intervene (ECF No. 84) filed by Wakeel A. Sabur ("Sabur"), requesting placement in the witness protection program upon release from prison. However, the Court cannot grant Sa bur the relief that he seeks, as the Court has no role in the witness protection program. Rather, the Government controls the witness protection program. Accordingly, Sabur's Motion to Intervene (ECF No. 84) is hereby DENIED. Signed by District Judge David J. Novak on 12/9/2020. (Copy mailed to Wakeel A. Sabur) (smej, ) (Entered: 12/09/2020) |

3103

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------

UNITED STATES OF AMERICA,

                    Plaintiff;

   v.                   CRIMINAL ACTION
                         92CR68

RICHARD TIPTON, CORY JOHNSON,
JAMES H. ROANE, JR., AND
SANDRA REAVIS,

                    Defendants.

------------------------------------------

VOLUME XVI

February 2, 1993
Richmond, Virginia
10:00 a.m.

BEFORE:      HONORABLE JAMES R. SPENCER
               United States District Judge

APPEARANCES:  HOWARD C. VICK, JR., ESQ.
               WILLIAM H. PARCELL, III, ESQ.
               Office of the United States Attorney;
                   Counsel for Government;

               ROBERT P. GEARY, ESQ.
               ERIC D. WHITE, ESQ.
                   Counsel for Defendant Tipton;
               CRAIG S. COOLEY, ESQ.
               JOHN F. McGARVEY, ESQ.
                   Counsel for Defendant Johnson;
               DAVID P. BAUGH, ESQ.
               ARNOLD R. HENDERSON, V, ESQ.
                   Counsel for Defendant Roane;
               ROBERT J. WAGNER, ESQ.
                   Counsel for Defendant Reavis.
                 JEFFREY B. KULL
            OFFICIAL COURT REPORTER

05827

-6-

3203

into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated in words or writing what the scheme was, its objective or purpose, or every precise detail of the scheme, or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act. You may of course find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

It is charged in Count One of the indictment that the conspiracy distributed and possessed with

05927

-7-

3204

intent to distribute a particular amount or quantity of narcotic controlled substance. The evidence in the case need not establish the exact amount or quantity of the substance containing cocaine, except you must find beyond a reasonable doubt that the conspiracy distributed or possessed with intent to distribute, or attempted to possess with intent to distribute at least 50 grams or more of crack cocaine.

The second element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy, the first count of the indictment, is that the defendant knowingly, willfully, and voluntarily became a member of the conspiracy. If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourself who the members of that conspiracy were. In deciding whether the defendant whom you are considering was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy; did he or she participate in it with knowledge of its unlawful purpose and with the specific intent of furthering its business or objective as an associate or worker.

In that regard, it has been said that in order

05928

-8-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Richmond Division

UNITED STATES OF AMERICA     )

                                    )       Criminal Case No. 92CR68

v.                              )       **CAPITAL CASE**

                                    )

RICHARD TIPTON, III.          )

## MOTION FOR THE IMPOSITION OF A REDUCED SENTENCE
## UNDER SECTION 404 OF THE FIRST STEP ACT

Pursuant to Section 404 of the First Step Act of 2018, the Defendant Richard Tipton, III respectfully moves this Court to reduce his sentences for the interrelated offenses charged in Counts 3, 24, 25, 32, and 33, as the statutory penalty for each has been modified by the Fair Sentencing Act.  Following those modifications, Mr. Tipton's death sentences rest upon predicate offenses that no longer authorize capital punishment; he accordingly moves this Court to vacate those sentences. Mr. Tipton further submits that this Court should reduce the terms of years imposed for his non-capital convictions.  In support of this motion, Mr. Tipton shows as follows:

## I.    FACTS AND ARGUMENT

### A. Mr. Tipton's Convictions and Sentencing.

On February 3, 1993, Mr. Tipton was convicted of the following offenses that fall within the purview of the First Step Act.[1]  Per Count 2 of his superseding indictment (attached as Ex. 1), Mr. Tipton was convicted of engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848(a), with the CCE defined as violations of "Title 21, United States Code, Section 841…including, but not limited to, those violations alleged in the instant indictment[.]"  Ex. 1 at 5-6.  The only two Section 841 violations alleged in the indictment, Counts 32 and 33, charged Mr. Tipton with "possessing with the intent to distribute a Schedule II narcotic controlled substance, that is, *fifty (50) grams or more*" of "cocaine base, commonly known as 'crack' or 'cook-em-up,'" as described in 21 U.S.C. § 841(b)(l)(A)(ii).  Ex. 1 at 21-22 (emphasis added). Finally, Mr. Tipton was convicted of six violations of 21 U.S.C. § 848(e) for killings committed "while engaged in and working in furtherance of" this CCE—

---

[1]Mr. Tipton was also convicted of: conspiracy to "possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance" in violation of 21 U.S.C. § 846 (Count 1); six counts of murder "to maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. § 1959 (Counts 4, 21, 22, 23, 27, and 28); two counts of using a firearm in relation to a crime of violence or a drug trafficking crime, 21 U.S.C. § 924(c) (Counts 20 and 26); two counts of maiming "to maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. § 1959 (Counts 29 and 30).  These convictions, which are now invalid, are discussed *infra*.

2

offenses for which the government sought the death penalty.  See Ex. 1 at 6-7, 13-15, 17-18 (Counts 3, 17, 18, 19, 24, and 25).

At the conclusion of the penalty phase, the jury recommended death sentences for three of Mr. Tipton's Section 848(e) offenses (Counts 3, 24 and 25); it recommended life sentences for the remaining three (17, 18, 19).  See Jury's Decision Form (attached as Ex. 2.)  This Court sentenced Mr. Tipton in accord with the jury's recommendation, imposing terms of imprisonment for the non-capital counts.  See Court's Judgment (attached as Ex. 3).

## B. The Fair Sentencing Act

In 2010, Congress enacted the Fair Sentencing Act, which recognized that federal drug statutes had imposed overly harsh penalties for cocaine-base offenses, with a disproportionate effect on African-American defendants.[2]  Congress accordingly adjusted the penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1).[3]  Per those amendments, a violation of 21 U.S.C. § 841(a)(1) must now involve at least 280 grams of cocaine base—as

---

[2] *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012).

[3] Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010).

opposed to the 50 grams required when Mr. Tipton was sentenced—in order to trigger the highest penalty ranges of 10 years to life imprisonment.[4]

## C. The First Step Act

On December 21, 2018, Congress enacted the First Step Act.  Section 404 of that act authorizes relief for any defendant convicted of a "covered offense"—an offense with statutory penalties that "were modified by section 2 or 3 of the Fair Sentencing Act of 2010" and was "committed before August 3, 2010," the effective date of the Fair Sentencing Act.  First Step Act of 2018, S. 3747, 115th Cong. § 404(a) (2018).  Upon a "motion of the defendant," this Court may "impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* at § 404(b).1

## D. Mr. Tipton's Offenses Fall Within the First Step Act's Purview

The Fair Sentencing Act modified the statutory penalties for Mr. Tipton's Section 841(a)(1) and 848 convictions. At the time of his sentencing, his Section 841(a)(1) convictions for possessing with intent to distribute more than fifty grams of crack were punishable under § 841(b)(1)(A), which imposed a mandatory minimum of ten years' incarceration and a maximum penalty of life imprisonment. Were he sentenced today, however, that quantity would authorize punishment

---

[4] 21 U.S.C. § 841(b)(1)(A)(iii) (and "at least 5 years" of supervised release, or "at least 10 years" with the § 851 enhancement).

4

-12-

under § 841(b)(1)(B) only, which carries a five-year mandatory minimum penalty and a statutory maximum of forty years.

This shift from § 841(b)(1)(A) to § 841(b)(1)(B) is significant, as only a crime punishable under the former provision can serve as the necessary predicate for imposing a sentence of death for a Section 848 conviction. Section 848(e)(1)(A) provides:

> any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable *under section 841(b)(1)(A) of this title* . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, *or may be sentenced to death*.

848(e)(1)(A) (emphases added). While Mr. Tipton's Section 841(a)(1) convictions as charged would have qualified as "offense[s] punishable under section 841(b)(1)(A)" at the time of his 1993 trial, today, under the Fair Sentencing Act, they would not. Accordingly, Mr. Tipton could no longer be sentenced to death for any of his Section 848 convictions.

## E. Mr. Tipton Is Eligible For Resentencing

Because the statutory penalties for Mr. Tipton's Section 841(a)(1) and 848 convictions were thus modified by the Fair Sentencing Act, those convictions are "covered offenses" subject to resentencing under the First Step Act. Sections 2 and 3 of the Fair Sentencing Act expressly modify Section 841(a). And while the

5

-13-

FSA did not directly amend Section 848, the Government has conceded elsewhere that Section 848 convictions are "eligible for a sentence reduction under the 2018 FSA…due to § 848's requirement of a § 841(b)(1)(A) violation." *United States v. Davis*, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020); see also *United States v. Brown*, 2020 WL 3106320 at *4 (W.D. Va. June 11, 2020) ("As to whether any of the penalties for § 848 have been modified by the Fair Sentencing Act, the parties do not disagree."); and United States' Mot. to Remand at 8, *United States v. Maupin*, No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26.  Courts have consistently agreed that Section 848 convictions are covered offenses.  See, e.g., *United States v. Davis*, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020) ("[A] defendant's § 848(e)(1)(A) conviction is a covered offense because it relies on the drug quantity thresholds set by § 841 and, therefore, requires a jury finding that the defendant committed a murder in furtherance of a drug conspiracy to sell 280 or more grams of cocaine base."); *United States v. Brown*, 2020 WL 3106320, at *4 (W.D. Va. June 11, 2020); Order at 5, *United States v. Kelly*, No. 2:94-CR-163 (E.D. Va. June 5, 2020); *Wright v. United States*, 425 F. Supp. 3d 588, 598 (E.D. Va. 2019); Order at 1, *United States v. Groves*, No. 5:94-CR-97 (E.D.N.C. Nov. 21, 2019); *United States v. Dean*, 2020 WL 2526476, at *3 (D. Minn. May 18, 2020); *United States v. Jimenez*, 2020 WL 2087748, at *2 (S.D.N.Y. Apr. 30, 2020); Order at 4, *United States v. Hines*, No. 5:94-CR-150 (N.D.N.Y. Nov. 8,

2019), ECF No. 607; Order at 4, *United States v. Walker*, No. 5:95-CR-101 (N.D.N.Y. Oct. 25, 2019), ECF No. 620; Order at 4, *United States v. Robinson*, No. 98-CR-60 (E.D. Wis. Sept. 27, 2019), ECF No. 606.

Moreover, the relevant inquiry for determining whether an offense is a "covered offense" must disregard any quantities of crack cocaine actually proven in Mr. Tipton and focus instead on the statute of conviction. *Wirsing*, 943 F.3d at 185-86 ("*all* defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in § 404(c) of the Act, are eligible to move for relief under that Act" (emphasis added)); see also *United States v. Jackson*, 2020 WL 3563995, at *7 (3d Cir. July 1, 2020) ("§ 404 eligibility turns on a defendant's statute of conviction, not on his possession of a certain quantity of drugs"); *United States v. Shaw*, 957 F.3d 734, 735 (7th Cir. 2020) ("To determine whether a defendant is eligible for a reduced sentence under the First Step Act, a court needs to look only at a defendant's statute of conviction, not to the quantities of crack involved in the offense.").

## II. THIS COURT SHOULD CONDUCT A HEARING TO CONSIDER SECTION 3553(A)'S SENTENCING FACTORS

As Mr. Tipton has established eligibility under the First Step Act, Section 404 requires a "complete review on the merits," Pub. L. No. 115-391, § 404(c) (2018), which includes weighing the sentencing factors codified in 18 U.S.C. §

7

3553(a). *Shaw*, 957 F.3d at 742 (the record must show that district court

"considered the arguments presented" and "accounted for the 18 U.S.C. § 3553(a)

factors."); *United States v. Boulding*, 960 F.3d 774, 776 (6th Cir. 2020) ("an

eligible defendant is entitled to an accurate amended guideline calculation and

renewed consideration of the 18 U.S.C. § 3553(a) factors"); *United States v. Smith*,

959 F.3d 701, 703 (6th Cir. 2020) (same).

§ 3553(a) states that a court "shall impose a sentence sufficient, but not

greater than necessary," to comply with its purposes.  It directs the Court to

consider "the nature and circumstances of the offense and the history and

characteristics of the defendant." § 3553(a)(1).[5]  It identifies:

> [T]he need for the sentence imposed…to reflect the seriousness of the
> offense, to promote respect for the law, and to provide just
> punishment for the offense; to afford adequate deterrence to criminal
> conduct; to protect the public from further crimes of the defendant;
> and to provide the defendant with needed educational or vocational

---

[5]While Mr. Tipton contends that his Section 848(e) convictions are no longer capital crimes, this duty is only underscored by the many holdings of Supreme Court requiring a sentencer to consider, as a mitigating factor, "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978);  see also *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) ("the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense."); (sentencer must consider, as a mitigating factor, "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."); see also *Eddings v. Oklahoma*, 455 U.S. 104, 117 (1982).

training, medical care, or other correctional treatment in the most
effective manner.

*Id.*

Critically here, § 3553(a) also directs the Court to consider "the kinds of
sentence and the sentencing range established" for the categories of offense
committed and "the kinds of sentences *available.*"—which, in Mr. Tipton's case,
requires acknowledging that a sentence of death would *not* be available for his
Section 848(e) convictions. *Id.* (emphasis added.)

Mr. Tipton will present argument and evidence in support of the following
points.

### A. Mr. Tipton is Not Eligible for a Sentence of Death

Because Mr. Tipton's § 841(a)(1) convictions are no longer punishable
under § 841(b)(1)(A), they cannot support the sentences of death under §
848(e)(1)(A) imposed for Counts 3, 24, and 25.

As the Supreme Court held in *Apprendi v. New Jersey*, any factor that
increases the maximum potential sentence for an offense is an *element* of that
offense that must be alleged in the indictment, presented to the jury and found
beyond a reasonable doubt. 530 U.S. 466, 490 (2000). Following *Apprendi*, "in
order to authorize the imposition of a sentence exceeding the maximum allowable
without a jury finding of a specific threshold drug quantity, the specific threshold
quantity must be treated as an element [of the offense], *i.e.*, charged in the

9

-17-

indictment and proved to the jury beyond a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (footnote omitted).

At the time of Mr. Tipton's convictions, the threshold drug quantity required to establish a conviction under 21 U.S.C. §841(b)(1)(A) was more than 50 grams of cocaine base. The Fair Sentencing Act, however, has moved that threshold. In order to sustain a conviction under that provision today, the Government must prove that the defendant possessed with the intent to distribute *more than 280 grams* of a substance containing cocaine base. A count alleging a drug quantity of "more than 50 grams of cocaine base," as charged in Mr. Tipton's indictment, would now fall under 21 U.S.C. § 841(b)(1)(B)(iii), which has a threshold of at least 28, but less than 280, grams of a substance containing cocaine base. The sentencing range for that offense is a mandatory minimum of five years in prison and a statutory maximum of 40 years in prison.[6] *More importantly, however, a conviction under 21 U.S.C. §841(b)(1)(B) does not serve as a predicate offense for the imposition of a death sentence under 21 U.S.C. 848(e).*

---

[6]Because drug quantity is an element of the offense, in order to sustain a conviction under 21 U.S.C. § 841(b)(1)(A) or § 841(b)(1)(B), the jury must make a specific finding that the government has proven beyond a reasonable doubt the amount and type of drug. Here, the jury did not make a finding on drug quantity. Thus, the Court was authorized to impose only a sentence between 0 and 20 years. See 21 U.S.C. § 841 (b)(1)(C). See also, *United States v. Cheese*, ___ F.Supp.3d ___, 2020 WL 3618987 at *8 (D. MD. July 2, 2020) (The jury did not determine the quantity of drugs . . . [t]herefore the statutory range . . . is 0-30 years . . . *See* 21 U.S.C. § 841(b)(1)(C).")

As a death sentence is no longer available for Mr. Tipton's Section 848(e) convictions, this Court should resentence him to a lesser sentence within the current and corrective statutory range. As the Supreme Court has held, "because there is a qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Zant v. Stephens*, 462 US 862, 884-85 (1983) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).  Allowing Mr. Tipton's death sentences to stand when they rest upon predicate offenses that were disproportionately punished for improper and discriminatory reasons cannot comport with those requirements.

**B. The Currently Applicable Statutory Ranges Are Lower than When Mr. Tipton Was Sentenced**

As the mandatory minimum sentences for Mr. Tipton's Section 841(a)(1) convictions are lower now than at the time of his sentencing, this Court should modify his sentences.  In 1993, the sentencing range for Mr. Tipton's Section 841(a)(1) convictions was ten years to life imprisonment.  On Count 32, this Court sentenced him to forty years; on Count 33, to twenty years.  See Ex. 3 at 2.  Today, however, the sentencing range for these convictions is five to forty years.  Mr. Tipton's sentences for Counts 32 and 33 were at the midpoint and low end of the 1993 guidelines, respectively; they are now at the maximum and the midpoint. This Court should reduce Mr. Tipton's sentences accordingly.

11

This Court should also reduce the life sentences imposed for Mr. Tipton's Section 848(e) convictions as charged in Counts 17, 18, and 19. The Government sought the death penalty for each of these counts, but the jury declined to impose that maximum available punishment. Now that none of Mr. Tipton's Section 848(e) offenses can support a death sentence, these counts, which received a lesser sentence at trial, should not carry the maximum available punishment allowed by the Fair Sentencing Act.

## C. Mr. Tipton's History and Characteristics

Section 3553(a)(1) directs a sentencing court to consider "the history and characteristics of the defendant." This charge mirrors Supreme Court precedent requiring consideration of "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett*, 438 U.S. at 604 (emphasis added). Those "mitigating factors" can and must include anything "stemming from the diverse frailties of humankind," *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976).

As discussed *infra*, the evidence presented at Mr. Tipton's penalty phase, while incomplete, established several statutory mitigating factors stemming from his impoverished and abusive childhood that are relevant for Section 3553(a)(1). Mr. Tipton will present and expand upon that evidence at a hearing on this motion, but proffers the following herein.

Mr. Tipton was born to a drug-addicted mother who abused heroin throughout her pregnancy with him.  His parents fought constantly and moved the family from home to home until his father abandoned them after savagely beating his mother.  His mother's extended family threw them out over his mother's continuing drug abuse and insistence on bringing men home.  His mother ultimately took up with another violent heroin addicts; their fights frequently led to one or another being hospitalized.  Mr. Tipton, who was himself brutally and regularly beaten by his mother, would often try to intervene to protect her from her boyfriend, suffering further abuse in the process.

The family lived in the Washington Heights section of Manhattan, which, due to its ready access to neighboring states and the emergence of crack cocaine, was the murder capital of New York and the largest retail drug market in the world. [7]  Mr. Tipton both witnessed and suffered the violence as gangs organized on racial lines began to target him and his friends, forcing them to fight every day just to go to the school or the store.

Mr. Tipton's mother often left her children unattended while scoring drugs, but continued to bring men home to smoke crack or shoot heroin, leaving their

---

[7]Nix, Crystal, "*Tales Of Two Precincts One Better, One Worse; The 34th: Murders Surge As Crack Spreads*," THE NEW YORK TIMES, March 29, 1987, sec. Week in Review. http://www.nytimes.com/1987/03/29/weekinreview/tales-two-precincts-one-better-one-worse-34th-murders-surge-crack-spreads.html

apartment littered with drug paraphernalia and unconscious strangers. When one overdosed, Mr. Tipton's mother made him help her carry the body to another floor to avoid questions from the police. With his mother's addiction consuming what little money they had, there was no food in the apartment, and the utilities were often disconnected.

Mr. Tipton attempted to escape the chaos and abuse of his mother's home from an early age, but was rebuffed. When he was eleven, his grandparents invited his sister to come live with them. When he begged them to take him, too, they told him that he needed to be the man of the house and take care of his mother. As a teenager, he twice fled to Covenant House, a homeless shelter for teens, only to be returned to his mother's abuse and neglect.

Both of Mr. Tipton's sisters were ultimately taken in by their grandparents, who gave them a stable and supportive home. Both thrived, went to college, and had families and successful, productive careers. Mr. Tipton began drifting back and forth between Washington Heights and his father's home in Richmond, living on the streets. His combination of poverty and neglect left him particularly susceptible to ovations from neighborhood dealers. Before long, he was selling drugs. When Mr. Tipton was arrested for the crimes underlying this motion, he was only twenty-one years old.

14

**-22-**

While Mr. Tipton is criminally responsible for the crimes he has committed, no assessment of his "history and characteristics" could be complete without including his deplorable upbringing and the lifetime of trauma and physical and psychological insults it inflicted upon him.

### D. Other Convictions That Influenced Mr. Tipton's Sentences Are Invalid.

Mr. Tipton was convicted of additional counts that, while not the subject of this motion, have been vacated or otherwise invalidated.   In considering whether to reduce Mr. Tipton's sentences, this Court must account for the effect of these improper convictions on the original sentencing determinations.

1.  Mr. Tipton's Section 848(a) Conspiracy Conviction Was Vacated.

Mr. Tipton was convicted of conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846 (Count 1) and engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848(a) (Count 2).  On appeal, however, the Fourth Circuit vacated Mr. Tipton's Section 846 conspiracy conviction as violating the Constitution's double jeopardy clause, as it "is a lesser included offense within the § 848 CCE as charged."  *United States v. Tipton*, 90 F.3d 861, 891 (4th Cir. 1996).  Mr. Tipton should be resentenced without the influence of this superadded, unconstitutional conviction on the sentencing decision.

15

-23-

2.  Mr. Tipton's Section 924(c) Convictions Are Invalid

Mr. Tipton was also convicted of two counts of using a firearm in relation to a crime of violence or a drug trafficking crime in violation of 21 U.S.C. § 924(c).[8] The Supreme Court's decision in *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), however, has rendered those Section 924(c) convictions unconstitutional.

Before *Davis*, § 924(c) included two alternative clauses defining "crime of violence."  The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause and applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  The second, § 924(c)(3)(B), was commonly referred to as the "residual clause" and applied to any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  *Davis*, however, held that § 924(c)(3)'s residual clause is void for vagueness, violates the Due Process Clause, and, accordingly, unconstitutionally imposed criminal punishment. 139 S. Ct. 2319 (2019).

Absent § 924(c)'s residual clause, none of Mr. Tipton's convictions under that statute can stand.  To remain valid, a § 924(c) conviction predicated upon a

---

[8] Counts 20 and 26.

crime of violence must have a predicate offense which satisfies the elements-based, categorical approach required by § 924(c)(3)(a)'s "force" or "elements" clause.  In assessing whether a predicate offense meets those requirements, a reviewing court applies the categorical approach, which asks only "whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force."  *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (*en banc*) *cert. denied*, 140 S. Ct. 304 L.Ed. 2d (2019).  Moreover, the requirements of § 924(c) cannot be satisfied unless the record established with "certainty" that the defendant was "necessarily" convicted of an offense that qualifies as a "crime of violence."  *Shepard v. United States*, 544 U.S. 13, 21 (2005).  Accordingly, in cases where the record does not establish which of multiple offenses the jury might have found as the predicate, the § 924(c) conviction cannot be sustained if even *one* of the possible predicates is not categorically a crime of violence.

At least two types of offenses charged as predicates for Mr. Tipton's § 924(c) counts–those pursuant to § 1959(a) and § 848(e)–cannot categorically qualify as "crimes of violence" absent the residual clause voided by *Davis*.  Moreover, the record does not conclusively establish which of the many possible predicates listed were relied upon by the jury when convicting him of § 924(c)

violations.[9]  Finally, the record cannot establish with certainty whether § 848(e)

was considered by the jury as a crime of violence or a drug trafficking charge,

which prevents its use as an alternative predicate for the § 924(c) offenses.

Accordingly, following *Davis*, Mr. Tipton's § 924(c) convictions are legal

nullities that were entered in excess of this Court's jurisdiction.  Mr. Tipton has

moved the Fourth Circuit for authorization to file a successive motion pursuant to

28 U.S.C. § 2255 in this Court that will seek relief from these unconstitutional

convictions; that pleading addresses these arguments in more detail.  Doc. 2-1, *In

re Tipton*, USCA4 Appeal 20-10 (filed June 8, 2020).  On July 15, 2020, the

Circuit ordered that motion placed in abeyance pending its upcoming decision in

---

[9]Mr. Tipton's Second Superseding Indictment offered multiple § 848(e) and § 1959 counts as the predicate offenses for his § 924(c) offenses.  See Exhibit 1. For the first, Count 20, the indictment cited: conspiracy, as charged in Count 1; the § 848(e) violations charged in Counts 17, 18, and 19; and the § 1959 violations charged in Counts 21, 22 and 23.  *Id.* at 15. For the second, Count 26, the indictment cited: conspiracy, again as charged in Count 1; § 848(e) violations as charged in Counts 24 and 25; § 1959 violations as charged in Counts 27 and 28; and the § 1959 maiming violations charged in Counts 29 and 30.  *Id.* at 15.

When instructing the jury as to the § 924(c) offenses, however, this Court made no reference to these predicates.  Tr. 3221-24.  Rather, it simply read the text of § 924(c)(1) to the jury, including a nearly verbatim recitation of its force and residual clauses.  *Id.*  Nor did this Court identify certain counts as drug trafficking crimes, merely stating generally that "[t]he offenses alleged . . . are crimes of violence *or* drug trafficking crimes."  Tr. 3223.  This Court repeatedly admonished the jury to refer to Mr. Tipton's verdict form to "assist" it in "giving individual consideration to each…count against him," T. 3219-22, but that form required no specific findings as to the predicate or § 924(c) offenses, directing the jury only to find Mr. Tipton "Guilty or Not Guilty."  See Verdict, attached as Ex. 4.

18

*United States v. Taylor*, No. 19-7616.  Doc. 19, USCA4 Appeal 20-10 (filed July 15, 2020).  *Taylor*, in turn, will address "whether an 18 U.S.C. § 924(c) conviction is subject to vacatur where the indictment charged multiple predicates, one of which is invalid."  Order, *United States v. Taylor*, No. 19-7616 (Feb. 12, 2020 4th Cir.)  Given the Fourth Circuit's recognition of its relevance for Mr. Tipton's challenge to his Section 924(c) convictions, he respectfully submits that this Court should reserve judgment upon his motion until *Taylor* has been decided.

  3.  Mr. Tipton's Section 1959 Convictions Were Improperly Charged and Are Invalid

Mr. Tipton was convicted of six counts of murder "to maintain or increase position in racketeering enterprise"[10] and two counts of maiming "to maintain or increase position in racketeering enterprise," [11] all in violation of 18 U.S.C. § 1959.  Those counts each defined the racketeering enterprise as "dealing in narcotic or other dangerous drugs."  None identified a state or federal statute, and none referenced other counts in the indictment.

When instructing the jury, however, this Court defined "racketeering activity" as "any act or threat involving *murder* or dealing in narcotic or other dangerous drugs."  T. 3221 (Emphasis added).  This instruction constructively

---

[10]Counts 4, 21, 22, 23, 27, and 28.

[11]Counts 29 and 30.

amended the indictment. None of the Section 1959 counts included murder in their definition of the racketeering enterprise. Nor did they reference a statute or other count that otherwise defined the racketeering activities. Based upon this Court's instruction, the jurors could have convicted Mr. Tipton of these Section 1959 offenses based upon conduct that *was not charged in the indictment*: an enterprise whose racketeering activity was murder.

As the Fourth Circuit has recognized, a jury instruction which "broadens the bases for conviction beyond those charged in the indictment" creates "a constructive amendment" or "fatal variance" which so alters the indictment as "to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (internal quotations and citations omitted). Where constructive amendment occurs, "it cannot be said with certainty that with a new basis for conviction added, [the defendant] was convicted solely on the charge made in the indictment the grand jury returned." *Stirone v. United States*, 361 U.S. 212, 217 (1960). As such, constructive amendment "destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Floresca*, 38 F.3d 706, 712 (4th Cir. 1994) (en banc) (quoting *Stirone*, 361 U.S. at 217) (emphasis in *Floresca*).

Because such constructive amendments "violate[] the Fifth Amendment

right to be indicted by a grand jury," *Randall*, 171 F.3d at 203, they "are erroneous per se and require reversal regardless of preservation." *United States v. Whitfield*, 695 F.3d 288, 309 (4th Cir. 2012) (quoting *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir.2010)); see also *Floresca*, 38 F.3d at 712 (a constructive amendment is "not subject to review for harmlessness"); *Randall*, 171 F.3d at 203 (constructive amendment "is error per se, and must be corrected on appeal even when the defendant did not preserve the issue by objection."). "[E]ven if there was sufficient evidence to convict the defendant on the specific charges made out by the grand jury," reversal is required. *United States v. Nieves*, 108 F. App'x 790, 793 (4th Cir. 2004) (citing *Floresca*, 378 F.3d at 711).

Section 1959 is not a covered offense under the First Step Act, and Mr. Tipton has not challenged the constructive amendment of his Section 1959 counts on appeal or in post-conviction proceedings. When resentencing him on his covered offenses, however, this Court can and should consider how these clearly invalid convictions influenced the original sentencing decisions—including his jury's decision to sentence him to death.

4. Discounting These Convictions Results in a Sentence of Less than Death

As the Supreme Court recognized in *United States v. Tucker*, "the real question" for Mr. Tipton is "whether the sentence" for those of his convictions that remain in place "might have been different if the [jury] had known that…[Mr.

21

Tipton's] previous convictions had been unconstitutionally obtained." 404 U.S. 443, 448 (1972). In keeping with *Tucker,* courts have held that a defendant must be resentenced on any valid convictions "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by invalid convictions. *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986); see also *Jerkins v. United States,* 530 F.2d 1203, 1204 (5th Cir. 1976) (same); *James v. United States,* 476 F.2d 936 (8th Cir. 1973) (same). Given the fact that this same jury sentenced Mr. Tipton to death, that ascertaining must be guided by "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to *a special need for reliability* in the determination that death is the appropriate punishment in any capital case." *Johnson v. Mississippi,* 486 U.S. 576, 584 (1988) (citation omitted) (emphasis added). Indeed, because "[t]he decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make," the Supreme Court has made clear that "[t]he *possibility* that [a defendant's] jury conducted its task improperly certainly is great enough to require resentencing." *Mills v. Maryland,* 486 U.S. 367, 383–84 (1988) (emphasis added). In *Johnson*, that meant that the use of an invalid conviction in a capital sentencing determination was prejudicial and required the reversal of the

22

**-30-**

petitioner's death sentence because of the possibility that it had proved "decisive in the choice between a life sentence and a death sentence." 486 U.S. at 586.

There is more than a possibility here. The record shows that the Government's penalty phase case relied almost exclusively on evidence from the guilt-innocence phase of the trial. The Government "did not put on a great deal of evidence" during the penalty phase. T. 3883–3884, 3891, 3392–3893. Rather, it urged the jury to rely upon its findings "in your guilt phase verdict." T. 3893. Thus, the jury's decision to impose the death penalty was at least partially predicated upon the invalid convictions discussed *supra*. Given that, it is not merely possible, but likely, that these invalid convictions profoundly affected the jury's decision to impose a sentence of death.

For that sentence was not a foregone conclusion. The jury found a number of statutory mitigating factors that argued powerfully against a sentence of death. See Special Findings (Attached as Ex. 5) at 8-9. Mr. Tipton's jurors unanimously found that he has a full-scale I.Q. of 85, *id.* at 8, evidence of borderline intellectual functioning that is "inherently mitigating," *Tennard v. Dretke*, 542 U.S. 274, 287 (2004). The jurors also recognized Mr. Tipton's "troubled history," which the Supreme Court has repeatedly recognized as powerfully "relevant to assessing a defendant's moral culpability." *Wiggins v. Smith*, 539 U.S. 510, 513 (2003). They unanimously found that he "was introduced to addictive drugs and alcohol while

23

**-31-**

still a child," "grew up in an impoverished, violent and brutal environment, and was exposed to extreme violence as a child and throughout his life." Ex. 5 at 8-9. Moreover, ten jurors found Mr. Tipton's youth mitigating, along with his being "subjected to emotional and physical abuse and neglect as a child, and…deprived of the parental guidance and protection that he needed." *Id.* at 8. Ten jurors also noted Mr. Tipton's "frontal lobe brain dysfunction that went untreated when he was a child," while two-thirds of the jury agreed that he "is impulsive and is impaired in thinking about the consequences of his actions and in adjusting his thinking to changing events." *Id.* at 9. Such evidence of "cognitive impairment" and "diminished judgment and reasoning skills" has been recognized by the Supreme Court as "help[ing] the jury understand….horrendous acts[.]" *Sears v. Upton*, 561 U.S. 945, 951 (2010). Finally, eleven jurors agreed that "another defendant or defendants, equally culpable in the crime(s), will not be punished by death," and that the victims "consented to the criminal conduct that resulted in" their deaths—reflecting that nearly all of the jurors were engaged in a complicated assessment of culpability that might well have yielded a sentence of less than death. Ex. 5 at 8.

Given the breadth and power of mitigating evidence, the harm from the jury's consideration of these invalid criminal charges in sentencing Mr. Tipton should not be underestimated. In light of the Eighth Amendment's requirement of

24

-32-

reliability in capital sentencing, the "possibility" that the jury improperly relied upon the unconstitutional § 924(c) convictions in sentencing him to death requires that Mr. Tipton be resentenced.

## III. CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Tipton respectfully requests the following relief:

a) That this Court vacate the sentences of death imposed for Counts 3, 24 and 25 and resentence Mr. Tipton to lesser sentences within the statutory range contemplated by the Fair Sentencing Act; or

b) Alternatively, that this Court grant an evidentiary hearing in which Mr. Tipton can present evidence and argument in support of a reduced sentence as to those counts; and

c) That this Court grant an evidentiary hearing in which Mr. Tipton can present evidence and argument in support of a reduced sentence as to each of his non-capital "covered offenses";

d) That this Court grant any other relief to which Mr. Tipton may be entitled.

Respectfully submitted on this, the 31st day of July, 2020.

25

-34-

*/s/Frederick R. Gerson*
Frederick R. Gerson
VSB #39968
Durrette, Arkema, Gerson & Gill, PC
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219
fgerson@dagglaw.com

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Gerald W. King, Jr.
Ga. Bar No. 140981
Jeffrey Lyn Ertel
Ga. Bar No. 249966
Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Pro hac vice application forthcoming.


Counsel for Richard Tipton, III.

26

## CERTIFICATE OF SERVICE

I certify that on this, the 31st day of July, 2020, the foregoing document was

served on all parties or their counsel of record though the CM/ECF system and will

be served electronically and via email on the attorney listed below:

> Richard Cooke, Esq.
> U.S. Attorney's Office
> Eastern District of Virginia
> 2100 Jamison Avenue
> Alexandria, Virginia 22314
> Richard.Cooke@usdoj.gov

This 31st day of July, 2020.

*/s/Frederick R. Gerson*
Frederick R. Gerson
Counsel for Richard Tipton, III

27



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JUL 2 0 1992

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>RICHARD TIPTON aka Whittey )<br>(Counts 1-7, 11-30, 32-33) )<br><br>CORY JOHNSON aka "O" aka "CO" )<br>(Counts 1, 2, 8-32) )<br><br>JAMES H. ROANE, JR., aka "J.R." )<br>(Counts 1, 2, 5-16, 32) )<br><br>VERNON LANCE THOMAS )<br>aka Anthony Mack aka "V" )<br>(Counts 1, 2, 11-16, 24-30, 32) )<br><br>JERRY R. GAITERS )<br>(Counts 1, 17-23, 32) )<br><br>STERLING HARDY )<br>(Counts 1, 14-16, 32) )<br><br>SANDRA REAVIS )<br>(Count 1) )<br> ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CRIMINAL NO. 3:92CR68<br><br>21 USC § 846<br>Conspiracy<br>(Count 1)<br><br>21 USC § 848<br>Continuing Criminal Enterprise<br>(Count 2)<br><br>21 USC § 848(e)(1)(A) & 18 USC § 2<br>Murder in Furtherance of CCE<br>(Counts 3,5,8,11,17,18,19,24,25)<br><br>18 USC § 924(c)<br>Use of Firearm in Relation to Crime of<br>Violence or Drug Trafficking Crime<br>(Counts 6,9,12,15,20,26)<br><br>18 USC §§ 1959 & 2<br>Violent Crimes in Aid of Racketeering<br>(Counts 4,7,10,13,14,16,21-23,27-30)<br><br>21 USC § 841(a)(1)<br>Distribution of Crack<br>(Count 31)<br><br>21 USC § 841(a)(1) & 18 USC § 2<br>Possession w/Intent to Distribute Crack<br>(Counts 32-33) |

115

00085

-36-

## SECOND SUPERSEDING INDICTMENT

### JULY 1992 TERM - At Richmond

### COUNT ONE

THE GRAND JURY CHARGES that from on or about January, 1989, the exact date being unknown to the grand jury, and continuously thereafter up to and including the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", JERRY GAITERS, STERLING HARDY, and SANDRA REAVIS, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury to commit the following offenses against the United States of America:

1.      To knowingly, intentionally, and unlawfully possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance, that is, at least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

### WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

The ways, manners, and means by which the conspirators carried out the purpose of the conspiracy includes, but are not limited to, the following:

1.      It was part of the conspiracy that defendants and co-conspirators would cause cocaine to be purchased in New York City, and elsewhere, and transported to Richmond, Virginia, where the cocaine was to be distributed.

2

00086

-37-

2.      It was further part of the conspiracy that once the defendants and co-defendants would receive cocaine in Richmond, Virginia, they would cook the cocaine in such a way to make it cocaine base ("crack" or "cook-em-up"), which cocaine was intended to be distributed on the streets of Richmond, Virginia.

3.      It was further part of the conspiracy that the defendants and co-defendants would induce other individuals to work for them selling the crack cocaine on the streets of Richmond, Virginia.

4.      It was further part of the conspiracy to engage in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy. To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities.

## OVERT ACTS

In furtherance of this conspiracy, and to bring about the objects and goals of the conspiracy, the defendants, co-conspirators, and unindicted co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1.      In or about December, 1991, defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a cocaine debt.

2.      On or about January 5, 1992, RICHARD TIPTON, aka Whittey, murdered Douglas A. Talley.

3

00087

-38-

3.    On or about January 13, 1992, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R." murdered Douglas Moody.

4.    On or about January 13, 1992, an individual known to the grand jury, disposed of the knife used by JAMES ROANE, JR., aka "J.R.", to kill Doug Moody.

5.    On or about January 14, 1992, members of the conspiracy caused an individual known to the grand jury to purchase one Glock handgun and two Tech 9mm handguns from Southern Gun World in Richmond, Virginia.

6.    On or about January 14, 1992, JAMES ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O;" aka "CO", murdered Peyton Maurice Johnson.

7.    On or about January 15, 1992, CORY JOHNSON, aka "O," aka "CO", distributed a certain amount of cocaine base ("crack" or "cook em up") in Richmond, Virginia.

8.    On or about January 29, 1992, RICHARD TIPTON aka Whittey, JAMES ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Louis J. Johnson, Jr., in Richmond, Virginia.

9.    On or about January 31, 1992, CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a drug debt, and solicited that individual to kill Dorothy Armstrong.

10.    On or about February 1, 1992, JAMES ROANE, JR., aka "J.R.", RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON

4

00088

-39-

LANCE THOMAS, aka Anthony Mack, aka "V",and STERLING HARDY murdered Torrick Brown and shot Martha McCoy in Richmond, Virginia.

11.    On or about February 1, 1992, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong aka Mousey, in Richmond, Virginia.

12.    On or about February 2, 1992, defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", and JERRY GAITERS possessed with the intent to distribute crack cocaine.

13.    On or about February 13, 1992, STERLING HARDY solicited the murders of certain individuals.

14.    On or about February 19, 1992, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Curtis Thorne, Linwood Chiles, and shot, seriously wounding, Gwendolyn Green and Priscilla Green, in Richmond, Virginia.

15.    On or about April 10, 1992, RICHARD TIPTON, aka Whittey, possessed with the intent to distribute crack cocaine in Richmond, Virginia.

(In violation of Title 21, United States Code, Section 846).

## COUNT TWO

THE GRAND JURY FURTHER CHARGES that from at least January, 1991, and continuously thereafter up to and including the date of the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants RICHARD TIPTON,

5

00089

-40-

aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", unlawfully, intentionally, and knowingly, did engage in a Continuing Criminal Enterprise, that is, they did violate Title 21, United States Code, Section 841 and 846, including, but not limited to, those violations alleged in the instant indictment, which are realleged and incorporated by reference herein, and did commit other violations of said statutes, which violations were part of a continuing series of violations of said statutes undertaken by RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", in concert with at least five other persons with respect to whom they occupied positions of organizer, supervisor, and manager, and from which continuing series of violations the defendant, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", obtained substantial income and resources.

(In violation of Title 21, United States Code, Section 848.)

## COUNT THREE

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant RICHARD TIPTON aka Whittey, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas A. Talley, and such killing resulted.

6

00090

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, RICHARD TIPTON aka Whittey, did knowingly, intentionally, and unlawfully cause the murder of Douglas Talley, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIVE

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas Moody, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

7

00091

-42-

## COUNT SIX

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is, a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Five and Seven of this Indictment. (In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, intentionally, and unlawfully cause the murder of Douglas Moody, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

8

00092

-43-

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Peyton Maurice Johnson, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINE

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eight and Ten of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

9

00093

-44-

## COUNT TEN

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, JAMES H. ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Peyton Maurice Johnson, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT ELEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Louis J. Johnson, Jr., and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

10

—————  ————— 00094

-45-

## COUNT TWELVE

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eleven and Thirteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT THIRTEEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, intentionally, and unlawfully cause the murder of Louis J. Johnson, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in

11

**00095**

-46-

narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FOURTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully cause the murder of Torrick Brown, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIFTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court

12

00096

-47-

of the United States, that is a violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 1959, as set forth in Counts One, Fourteen and Sixteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully commit assault resulting in serious bodily injury to Martha McCoy, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21

13

00097

-48-

USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Bobby Long, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT EIGHTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Carter, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINETEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded,

14

00098

-49-

induced, procured, and caused the intentional killing of Dorothy Mae Armstrong, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Seventeen, Eighteen & Nineteen and Twenty-One through Twenty-Three of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity,

15

**00099**

-50-

and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON; aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Anthony Carter, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Dorothy Mae Armstrong, as consideration for the receipt of, and as consideration for a promise and

16

00100

-51-

agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-FOUR

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Curtis Thorne, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-FIVE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly,

17

00101

-52-

intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Linwood Chiles, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-SIX

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Twenty-Four, Twenty-Five and Twenty-Seven through Thirty of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-SEVEN

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Curtis Thorne, as consideration for the receipt of, and as

18

00102

-53-

consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-EIGHT

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Linwood Chiles, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-NINE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and

19

00103

-54-

unlawfully cause the maiming of Priscilla Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Gwendolyn Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about January 15, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, CORY

20

00104

-55-

JOHNSON, aka "O," aka "CO", did knowingly and intentionally distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 2, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES ROANE, JR., aka "J.R.", and JERRY GAITERS, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about April 10, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD

21

00105

-56-

TIPTON aka Whittey, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

A TRUE BILL:

ISI *Christopher F. Snead*
**FOREPERSON**

RICHARD CULLEN
UNITED STATES ATTORNEY

By:

Howard C. Vick, Jr.
Assistant United States Attorney

William Parcell
Special Assistant U.S. Attorney

22

00106

-57-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Case No. 3:92CR68-01 |
| | ) |
| RICHARD TIPTON | ) |
| a.k.a. "Whittey" | ) |
| | ) |

## DECISION FORM

As to the crime of killing <u>Douglas A. Talley</u> while engaged in, or in furtherance of, a continuing criminal enterprise:

A.  WE, THE JURY, <u>do</u> <u>not</u> unanimously find proven, beyond a reasonable doubt, the existence of the statutory aggravating factors required by law as prerequisites for the imposition of capital punishment, and therefore do not consider the death penalty as to this capital crime for which defendant Richard Tipton has been convicted.

_____          _____
FOREPERSON'S SIGNATURE                           DATE

<u>OR</u>

B.  WE, THE JURY, unanimously find beyond a reasonable doubt that the aggravating factors required by law as prerequisites for the imposition of capital punishment have been proven by the government as to this capital crime. We further find, unanimously and beyond a reasonable doubt, that the aggravating factors proven in this case, as to this crime and this defendant, sufficiently outweigh any mitigating factors, and are themselves so serious, that justice mandates a sentence of death. We vote unanimously that Richard Tipton shall be sentenced to death for this capital crime.

_____          2/13/93
FOREPERSON'S SIGNATURE                           DATE

<u>OR</u>

00233

-58-

C.    WE, THE JURY, <u>do</u> <u>not</u> unanimously find that the aggravating factors proven in this case, as to this capital crime and this defendant, so outweigh the mitigating factors that justice mandates a sentence of death. We, therefore, return a decision that Richard Tipton <u>not</u> be sentenced to death for this capital crime.

| | |
|---|---|
| FOREPERSON'S SIGNATURE | DATE |

<u>OR</u>

D.    WE, THE JURY, having considered and evaluated the evidence presented in light of the instructions of the Court, are not unanimously persuaded that a death sentence should be imposed for this capital crime. We, therefore, return a decision that Richard Tipton not be sentenced to death for this capital crime.

| | |
|---|---|
| FOREPERSON'S SIGNATURE | DATE |

00234



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD TIPTON<br>  a.k.a. "Whittey" | )<br>)<br>)<br>) Criminal Case No. 3:92CR68-01<br>)<br>)<br>)<br>) |

## DECISION FORM

As to the crime of killing <u>Bobby Long</u> while engaged in, or in furtherance of, a continuing criminal enterprise:

A.   WE, THE JURY, <u>do</u> <u>not</u> unanimously find proven, beyond a reasonable doubt, the existence of the statutory aggravating factors required by law as prerequisites for the imposition of capital punishment, and therefore do not consider the death penalty as to this capital crime for which defendant Richard Tipton has been convicted.


_____          _____
    FOREPERSON'S SIGNATURE                      DATE


<u>OR</u>

B.   WE, THE JURY, unanimously find beyond a reasonable doubt that the aggravating factors required by law as prerequisites for the imposition of capital punishment have been proven by the government as to this capital crime. We further find, unanimously and beyond a reasonable doubt, that the aggravating factors proven in this case, as to this crime and this defendant, sufficiently outweigh any mitigating factors, and are themselves so serious, that justice mandates a sentence of death. We vote unanimously that Richard Tipton shall be sentenced to death for this capital crime.


_____          _____
    FOREPERSON'S SIGNATURE                      DATE


<u>OR</u>

00235

502

-60-

C.    WE, THE JURY, <u>do</u> <u>not</u> unanimously find that the aggravating factors proven in this case, as to this capital crime and this defendant, so outweigh the mitigating factors that justice mandates a sentence of death.   We, therefore, return a decision that Richard Tipton <u>not</u> be sentenced to death for this capital crime.

_____          _____
FOREPERSON'S SIGNATURE                              DATE

<u>OR</u>

D.    WE, THE JURY, having considered and evaluated the evidence presented in light of the instructions of the Court, are not unanimously persuaded that a death sentence should be imposed for this capital crime. We, therefore, return a decision that Richard Tipton not be sentenced to death for this capital crime.

_____          _____
FOREPERSON'S SIGNATURE          2/13/93          DATE

00236

-61-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



UNITED STATES OF AMERICA    )
)
v.    )    Criminal Case No. 3:92CR68-01
)
RICHARD TIPTON    )
    a.k.a. "Whittey"    )
)

## DECISION FORM

As to the crime of killing <u>Anthony Carter</u> while engaged in, or in furtherance of, a continuing criminal enterprise:

A.    WE, THE JURY, <u>do</u> <u>not</u> unanimously find proven, beyond a reasonable doubt, the existence of the statutory aggravating factors required by law as prerequisites for the imposition of capital punishment, and therefore do not consider the death penalty as to this capital crime for which defendant Richard Tipton has been convicted.

_____        _____
    FOREPERSON'S SIGNATURE                    DATE

<u>OR</u>

B.    WE, THE JURY, unanimously find beyond a reasonable doubt that the aggravating factors required by law as prerequisites for the imposition of capital punishment have been proven by the government as to this capital crime. We further find, unanimously and beyond a reasonable doubt, that the aggravating factors proven in this case, as to this crime and this defendant, sufficiently outweigh any mitigating factors, and are themselves so serious, that justice mandates a sentence of death. We vote unanimously that Richard Tipton shall be sentenced to death for this capital crime.

_____        _____
    FOREPERSON'S SIGNATURE                    DATE

<u>OR</u>

00237

503

-62-

C.    WE, THE JURY, <u>do</u> <u>not</u> unanimously find that the aggravating factors proven in this case, as to this capital crime and this defendant, so outweigh the mitigating factors that justice mandates a sentence of death.  We, therefore, return a decision that Richard Tipton <u>not</u> be sentenced to death for this capital crime.

_____    _____
FOREPERSON'S SIGNATURE           DATE

<u>OR</u>

D.    WE, THE JURY, having considered and evaluated the evidence presented in light of the instructions of the Court, are not unanimously persuaded that a death sentence should be imposed for this capital crime.  We, therefore, return a decision that Richard Tipton not be sentenced to death for this capital crime.

_____    2/13/93
FOREPERSON'S SIGNATURE           DATE

00238

-63-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Case No. 3:92CR68-01 |
| | ) |
| RICHARD TIPTON<br>  a.k.a. "Whittey" | ) |
| | ) |

## DECISION FORM

As to the crime of killing <u>Dorothy Mae Armstrong</u> while engaged in, or in furtherance of, a continuing criminal enterprise:

A.  WE, THE JURY, <u>do</u> <u>not</u> unanimously find proven, beyond a reasonable doubt, the existence of the statutory aggravating factors required by law as prerequisites for the imposition of capital punishment, and therefore do not consider the death penalty as to this capital crime for which defendant Richard Tipton has been convicted.

_____          _____
    FOREPERSON'S SIGNATURE                    DATE

OR

B.  WE, THE JURY, unanimously find beyond a reasonable doubt that the aggravating factors required by law as prerequisites for the imposition of capital punishment have been proven by the government as to this capital crime. We further find, unanimously and beyond a reasonable doubt, that the aggravating factors proven in this case, as to this crime and this defendant, sufficiently outweigh any mitigating factors, and are themselves so serious, that justice mandates a sentence of death. We vote unanimously that Richard Tipton shall be sentenced to death for this capital crime.

_____          _____
    FOREPERSON'S SIGNATURE                    DATE

OR

00239

-64-

C.    WE, THE JURY, <u>do</u> <u>not</u> unanimously find that the aggravating factors proven in this case, as to this capital crime and this defendant, so outweigh the mitigating factors that justice mandates a sentence of death.   We, therefore, return a decision that Richard Tipton <u>not</u> be sentenced to death for this capital crime.

_____          _____
       FOREPERSON'S SIGNATURE                         DATE

<u>OR</u>

D.    WE, THE JURY, having considered and evaluated the evidence presented in light of the instructions of the Court, are not unanimously persuaded that a death sentence should be imposed for this capital crime. We, therefore, return a decision that Richard Tipton not be sentenced to death for this capital crime.

_____          __2/13/93_____
       FOREPERSON'S SIGNATURE                         DATE

00240

-65-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



FILED
FEB 1 6 1993
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

```
UNITED STATES OF AMERICA        )
                                )
    v.                          )    Criminal Case No. 3:92CR68-01
                                )
RICHARD TIPTON                  )
    a.k.a. "Whittey"            )
                                )
```

## DECISION FORM

As to the crime of killing <u>Curtis Thorne</u> while engaged in, or in furtherance of, a continuing criminal enterprise:

A.   WE, THE JURY, <u>do</u> <u>not</u> unanimously find proven, beyond a reasonable doubt, the existence of the statutory aggravating factors required by law as prerequisites for the imposition of capital punishment, and therefore do not consider the death penalty as to this capital crime for which defendant Richard Tipton has been convicted.

_____        _____
    FOREPERSON'S SIGNATURE                           DATE

<u>OR</u>

B.   WE, THE JURY, unanimously find beyond a reasonable doubt that the aggravating factors required by law as prerequisites for the imposition of capital punishment have been proven by the government as to this capital crime. We further find, unanimously and beyond a reasonable doubt, that the aggravating factors proven in this case, as to this crime and this defendant, sufficiently outweigh any mitigating factors, and are themselves so serious, that justice mandates a sentence of death. We vote unanimously that Richard Tipton shall be sentenced to death for this capital crime.

_____        2/13/93
    FOREPERSON'S SIGNATURE                          /DATE

<u>OR</u>

00241

-66-

C.   WE, THE JURY, <u>do</u> <u>not</u> unanimously find that the aggravating factors proven in this case, as to this capital crime and this defendant, so outweigh the mitigating factors that justice mandates a sentence of death.  We, therefore, return a decision that Richard Tipton <u>not</u> be sentenced to death for this capital crime.

_____         _____

    FOREPERSON'S SIGNATURE                    DATE

<u>OR</u>

D.   WE, THE JURY, having considered and evaluated the evidence presented in light of the instructions of the Court, are not unanimously persuaded that a death sentence should be imposed for this capital crime.  We, therefore, return a decision that Richard Tipton not be sentenced to death for this capital crime.

_____         _____

    FOREPERSON'S SIGNATURE                    DATE

00242

-67-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



FEB 16 1993

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 3:92CR68-01 |
| ) | |
| RICHARD TIPTON ) | |
|   a.k.a. "Whittey" ) | |

## DECISION FORM

As to the crime of killing <u>Linwood Chiles</u> while engaged in, or in furtherance of, a continuing criminal enterprise:

A.   WE, THE JURY, <u>do</u> <u>not</u> unanimously find proven, beyond a reasonable doubt, the existence of the statutory aggravating factors required by law as prerequisites for the imposition of capital punishment, and therefore do not consider the death penalty as to this capital crime for which defendant Richard Tipton has been convicted.

_____   _____
FOREPERSON'S SIGNATURE           DATE

<u>OR</u>

B.   WE, THE JURY, unanimously find beyond a reasonable doubt that the aggravating factors required by law as prerequisites for the imposition of capital punishment have been proven by the government as to this capital crime. We further find, unanimously and beyond a reasonable doubt, that the aggravating factors proven in this case, as to this crime and this defendant, sufficiently outweigh any mitigating factors, and are themselves so serious, that justice mandates a sentence of death. We vote unanimously that Richard Tipton shall be sentenced to death for this capital crime.

_____   _2/15/93_____
FOREPERSON'S SIGNATURE           DATE

<u>OR</u>

00243

506

-68-

c. WE, THE JURY, do not unanimously find that the aggravating factors proven in this case, as to this capital crime and this defendant, so outweigh the mitigating factors that justice mandates a sentence of death. We, therefore, return a decision that Richard Tipton not be sentenced to death for this capital crime.

_____      _____
FOREPERSON'S SIGNATURE                    DATE

OR

D. WE, THE JURY, having considered and evaluated the evidence presented in light of the instructions of the Court, are not unanimously persuaded that a death sentence should be imposed for this capital crime. We, therefore, return a decision that Richard Tipton not be sentenced to death for this capital crime.

_____      _____
FOREPERSON'S SIGNATURE                    DATE

00244

-69-

AO 245 S (Rev. a 90 Sheet 1 Judgment in a Cr. Case

# United States District Court

EASTERN _____ District of ____ VIRGINIA ____

CLERK, U.S. DISTRICT
RICHMOND, VA

UNITED STATES OF AMERICA

v.

**RICHARD TIPTON**
**a/k/a Whittey**

(Name of Defendant)

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number:  **3:92CR68-01**

**Eric D. White, Esquire**
**Robert P. Geary, Esquire**

Defendant's Attorney

THE DEFENDANT:

‒ pleaded guilty to count(s) _____ .
X was found guilty on count(s) **1,2,3,4,17,18,19,20,21,22,23,24,25,26,27,28,29,30,32,33** _____ after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. 846 | Conspiracy | 03/16/92 | 1 |
| 21 U.S.C. 848 | Continuing Criminal Enterprise | 03/16/92 | 2 |
| 21 U.S.C. 848(e)(1)(A) and 18 U.S.C. 2 | Murder in furtherance of CCE; aid and abet | 02/19/92 | 3,17,18,19,24,25 |
| 18 U.S.C. 1959 & 2 | Violent crimes in aid of racketeering; aid & abet | 02/19/92 | 4, 21-23, 27-30 |
| 18 U.S.C. 924(c) & 2 | Use of firearm in crime of violence or drug trafficking crime; aid and abet | 02/19/92 | 20,26 |
| 21 U.S.C. 841(a)(1) and 18 U.S.C. 2 | Possession with intent to distribute crack cocaine; aid and abet | 02/02/92 | 32, 33 |

The defendant is sentenced as provided in pages 2 through __4__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

X The defendant has been found not guilty on count(s) **5, 6, 7, 14, 15, and 16** _____ , and is discharged as to such count(s).
X Count(s) **11, 12, and 13** _____ (is)(are) dismissed on the motion of the United States.
X It is ordered that the defendant shall pay a special assessment of $ **950.00** XXXXXXXXXXXXXXXXXXXXXXXXXX . for count(s) **listed above, with the exception of Ct. 1,** which shall be due XX immediately XX as follows.

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: **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**

Defendant's Date of Birth: **05/13/70**

Defendant's Mailing Address:

**513 W. 179th Street**

**New York, New York 10033**

Defendant's Residence Address:
**Incarcerated**

**June 1, 1993**

Date of Imposition of Sentence

_Signature_

Signature of Judicial Officer

**James R. Spencer, United States District Judge**

Name & Title of Judicial Officer

**June 1, 1993**

Date

542

00287

-70-

AO 245 S (Rev. 4/90) Sheet 2 - Imprisonment

Defendant:    **RICHARD TIPTON**                                    Judgment — Page __2__ of __4__
Case Number:  **3:92CR68-01**

## IMPRISONMENT

XXX̶T̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶x̶
x̶x̶x̶x̶x̶x̶XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

The Court imposes a sentence of DEATH as to each of Counts 3, 24, and 25.
The Court imposes a sentence of LIFE as to each of Counts 17, 18, and 19.
In addition, the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of LIFE plus TWENTY-FIVE (25) YEARS, consisting of the following sentence:
Count 2 - LIFE
Counts 4, 21, 22, 23, 27, 28 - LIFE as to each count, to run concurrently with any other sentence imposed.
Counts 29 and 30 - THIRTY (30) YEARS on each count, to run concurrently with any other sentence imposed.
Count 33 - TWENTY (20) YEARS, to run concurrently with any other sentence imposed.
Count 32 - FORTY (40) YEARS, to run concurrently with any other sentence imposed.
Count 20 - FIVE (5) YEARS, to run consecutively to any other sentence imposed.
Count 26 - TWENTY (20) YEARS, to run consecutively to any other sentence imposed.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States marshal.
☐ The defendant shall surrender to the United States marshal for this district.
　☐ at _____ a.m.
　　 p.m. on _____.
　☐ as notified by the United States marshal.
☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
　☐ before 2 p.m. on _____.
　☐ as notified by the United States marshal.
　☐ as notified by the probation office.

### RETURN

I have executed this judgment as follows:

_____

_____     00288

_____

_____

Defendant delivered on _____ to _____ at

_____, with a certified copy of this judgment.

_____
United States Marshal

By _____
Deputy Marshal

00288

AC 245 5  Rev 4 90  Sheet 3  Supervised Release

Defendant:    **RICHARD TIPTON**                        Judgment — Page __3__ of __4__
Case Number:  **3:92CR68-01**

## SUPERVISED RELEASE

Upon release from imprisonment. the defendant shall be on supervised release for a term of _____

**FIVE (5) YEARS on the Indictment.**

While on supervised release, the defendant shall not commit another federal. state. or local crime and shall not illegally possess a controlled substance. The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). If this judgment imposes a restitution obligation. it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

☐ The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

☐ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

☐ The defendant shall not possess a firearm or destructive device.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this judgment. the defendant shall not commit another federal. state or local crime.  In addition:

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling. training. or other acceptable reasons;

6) the defendant shall notify the probation officer within 72 hours of any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase. possess. use. distribute. or administer any narcotic or other controlled substance  or any paraphernalia related to such substances  except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold. used. distributed. or administered;

9) the defendant shall not associate with any persons engaged in criminal activity. and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer. the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics. and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

00289

-72-

AO 245 5  Rev 4 90  Sheet 7 - Statement of Reasons

Defendant:    **RICHARD TIPTON**                     Judgment — Page __4__ of  4
Case Number: **3:92CR68-01**

## STATEMENT OF REASONS

**X** The court adopts the factual findings and guideline application in the presentence report.

OR

☐ The court adopts the factual findings and guideline application in the presentence report except
(see attachment. if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level: ___**43**___

Criminal History Category: ___**I**___

Imprisonment Range: _____ to **LIFE** months

Supervised Release Range: ____ to **5** years

Fine Range: $ **25,000** to $ **5,000,000**

☒ Fine is waived ~~or is below the guideline range~~ because of the defendant's inability to pay.

Restitution: $ **not recommended per 18 U.S.C. 3663(d)**

☐ Full restitution is not ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no
reason to depart from the sentence called for by application of the guidelines.

OR

☒ The sentence is within the guideline range, that range exceeds 24 months. and the sentence is imposed
for the following reason(s):
**The Court imposed the sentence as recommended by the jury as to Counts 3,24,25 and Counts 17,18,19.
As to the additional counts on which a sentence of life imprisonment was imposed, deterrence is
guaranteed; punishment will be a by-product of the sentence imposed.**

OR

The sentence departs from the guideline range

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following reason(s):

00290

• U S GPO 1990 ‑ 14‑

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

UNITED STATES OF AMERICA ) 
) 
v. ) **Criminal Case No. 3:92CR68-01**
) 
RICHARD TIPTON ) 
  a.k.a. "Whittey" ) 
)



**VERDICT**

WE, THE JURY, FIND as follows:

**Count 1:**        Conspiracy to Distribute Controlled Substance

                    *Guilty*
                    (Guilty or Not Guilty)

**Count 2:**        Continuing Criminal Enterprise

Question: Do you find that the government has proven, beyond a reasonable doubt, that a Continuing Criminal Enterprise existed as charged in the indictment?

Yes: *Yes*                    No: _____

If you indicated above that a Continuing Criminal Enterprise did not exist, you must find the defendant, RICHARD TIPTON, Not Guilty as to Count 2.

If you indicated that a Continuing Criminal Enterprise did exist, you must now determine whether defendant RICHARD TIPTON is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below:

                    *Guilty*
                    (Guilty or Not Guilty)

465

-74-

Count 3:            Killing of Douglas A. Talley while Engaged In or
                    Working in Furtherance of a Continuing Criminal
                    Enterprise

(If you indicated, in response to the Question set forth under
Count 2 above, that a Continuing Criminal Enterprise did not
exist, you must find the defendant Not Guilty as to this
Count).

___Guilty___
(Guilty or Not Guilty)

Count 4:            Killing of Douglas A. Talley to Maintain or
                    Increase Position in Racketeering Enterprise

___Guilty___
(Guilty or Not Guilty)

Count 5:            Killing of Douglas Moody while Engaged In or
                    Working in Furtherance of a Continuing Criminal
                    Enterprise

(If you indicated, in response to the Question set forth under
Count 2 above, that a Continuing Criminal Enterprise did not
exist, you must find the defendant Not Guilty as to this
Count).

___Not Guilty___
(Guilty or Not Guilty)

Count 6:            Use of Firearm in Relation to Killing of Douglas
                    Moody

___Not Guilty___
(Guilty or Not Guilty)

Count 7:            Killing of Douglas Moody to Maintain or Increase
                    Position in Racketeering Enterprise

___Not Guilty___
(Guilty or Not Guilty)

Defendant RICHARD TIPTON is not charged in Counts 8-13 of the
indictment.

-76-

Count 14:        Killing of Torrick Brown, Jr., to Maintain or
                 Increase Position in Racketeering Enterprise

                 _____Not Guilty_____
                 (Guilty or Not Guilty)

Count 15:        Use of Firearm in Relation to Killing of Torrick
                 Brown, Jr., and Maiming of Martha McCoy

                 _____Not Guilty_____
                 (Guilty or Not Guilty)

Count 16:        Maiming of Martha McCoy to Maintain or Increase
                 Position in Racketeering Enterprise

                 _____Not Guilty_____
                 (Guilty or Not Guilty)

Count 17:        Killing of Bobby Long while Engaged In or Working
                 in Furtherance of a Continuing Criminal Enterprise

        (If you indicated, in response to the Question set forth under
        Count 2 above, that a Continuing Criminal Enterprise did not
        exist, you must find the defendant Not Guilty as to this
        Count).

                 _____Guilty_____
                 (Guilty or Not Guilty)

Count 18:        Killing of Anthony Carter while Engaged In or
                 Working in Furtherance of a Continuing Criminal
                 Enterprise

        (If you indicated, in response to the Question set forth under
        Count 2 above, that a Continuing Criminal Enterprise did not
        exist, you must find the defendant Not Guilty as to this
        Count).

                 _____Guilty_____
                 (Guilty or Not Guilty)

-77-

Count 19:          Killing of Dorothy Mae Armstrong while Engaged In
                   or Working in Furtherance of a Continuing Criminal
                   Enterprise

          (If you indicated, in response to the Question set forth under
          Count 2 above, that a Continuing Criminal Enterprise did not
          exist, you must find the defendant Not Guilty as to this
          Count).

                          ___Guilty___
                          (Guilty or Not Guilty)


Count 20:          Use of Firearm in Relation to Killing of Bobby
                   Long, Anthony Carter and Dorothy Mae Armstrong

                          ___Guilty___
                          (Guilty or Not Guilty)


Count 21:          Killing of Bobby Long to Maintain or Increase
                   Position in Racketeering Enterprise

                          ___Guilty___
                          (Guilty or Not Guilty)


Count 22:          Killing of Anthony Carter to Maintain or Increase
                   Position in Racketeering Enterprise

                          ___Guilty___
                          (Guilty or Not Guilty)


Count 23:          Killing of Dorothy Mae Armstrong to Maintain or
                   Increase Position in Racketeering Enterprise

                          ___Guilty___
                          (Guilty or Not Guilty)


-78-

Count 24:          Killing of Curtis Thorne while Engaged In or
                   Working in Furtherance of a Continuing Criminal
                   Enterprise

       (If you indicated, in response to the Question set forth under
       Count 2 above, that a Continuing Criminal Enterprise did not
       exist, you must find the defendant Not Guilty as to this
       Count).

                   _____Guilty_____
                        (Guilty or Not Guilty)


Count 25:          Killing of Linwood Chiles while Engaged In or
                   Working in Furtherance of a Continuing Criminal
                   Enterprise

       (If you indicated, in response to the Question set forth under
       Count 2 above, that a Continuing Criminal Enterprise did not
       exist, you must find the defendant Not Guilty as to this
       Count).

                   _____Guilty_____
                        (Guilty or Not Guilty)


Count 26:          Use of Firearm in Relation to Killing of Curtis
                   Thorne and Linwood Chiles and Maiming of Priscilla
                   Green and Gwendolyn Green

                   _____Guilty_____
                        (Guilty or Not Guilty)


Count 27:          Killing of Curtis Thorne to Maintain or Increase
                   Position in Racketeering Enterprise

                   _____Guilty_____
                        (Guilty or Not Guilty)


Count 28:          Killing of Linwood Chiles to Maintain or Increase
                   Position in Racketeering Enterprise

                   _____Guilty_____
                        (Guilty or Not Guilty)

Count 29:        Maiming of Priscilla Green to Maintain or Increase
                 Position in Racketeering Enterprise

                 _____Guilty_____
                 (Guilty or Not Guilty)

Count 30:        Maiming of Gwendolyn Green to Maintain or Increase
                 Position in Racketeering Enterprise

                 _____Guilty_____
                 (Guilty or Not Guilty)

Defendant RICHARD TIPTON is not charged in Count 31 of the
indictment.

Count 32:        Possession of Controlled Substance with Intent to
                 Distribute  (on or about 2/2/92)

                 _____Guilty_____
                 (Guilty or Not Guilty)

Count 33:        Possession of Controlled Substance with Intent to
                 Distribute  (on or about 4/10/92)

                 _____Guilty_____
                 (Guilty or Not Guilty).

SO SAY WE ALL.

_____        ___2/3/93_____
FOREPERSON'S SIGNATURE                     DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) ) ) | Criminal Case No. 3:92CR68-01 |
| RICHARD TIPTON<br> a.k.a. "Whittey" | ) ) ) | |


FILED
FEB 1 6 1993
CLERK, U.S. DIS
RICHMOND VA

## SPECIAL FINDINGS

### I.   Statutory Aggravating Factors:

**Category One**:   (21 U.S.C. § 848(n)(1))

WE, THE JURY, FIND as follows:

1A.   That defendant RICHARD TIPTON intentionally killed the victim of the capital crime.

Proven to the jury's unanimous satisfaction,
   beyond a reasonable doubt:

As to Douglas A. Talley ..............   _Yes_
                                         (Yes or No)

As to Bobby Long .....................   _~~No~~ Yes_
                                         (Yes or No)

As to Anthony Carter .................   _~~No~~ Yes_
                                         (Yes or No)

As to Dorothy Mae Armstrong ..........   _Yes_
                                         (Yes or No)

As to Curtis Thorne ..................   _Yes_
                                         (Yes or No)

As to Linwood Chiles .................   _Yes_
                                         (Yes or No)

00222

-81-

1B.  That defendant RICHARD TIPTON intentionally inflicted serious bodily injury which resulted in the death of the victim of the capital crime.

Proven to the jury's unanimous satisfaction,
      beyond a reasonable doubt:

As to Douglas A. Talley ...............    Yes
                                          (Yes or No)

As to Bobby Long .....................     Yes
                                          (Yes or No)

As to Anthony Carter .................     Yes
                                          (Yes or No)

As to Dorothy Mae Armstrong ..........     Yes
                                          (Yes or No)

As to Curtis Thorne ..................     Yes
                                          (Yes or No)

As to Linwood Chiles .................     Yes
                                          (Yes or No)

1C.  That defendant RICHARD TIPTON intentionally engaged in conduct intending that the victim of the capital crime be killed, or that lethal force be employed against the victim, which resulted in the death of the victim.

Proven to the jury's unanimous satisfaction,
      beyond a reasonable doubt:

As to Douglas A. Talley ..............    Yes
                                          (Yes or No)

As to Bobby Long .....................     Yes
                                          (Yes or No)

As to Anthony Carter .................     Yes
                                          (Yes or No)

As to Dorothy Mae Armstrong ..........     Yes
                                          (Yes or No)

As to Curtis Thorne ..................     Yes
                                          (Yes or No)

As to Linwood Chiles .................     Yes
                                          (Yes or No)

2

00223

1D.   That defendant RICHARD TIPTON intentionally engaged in conduct which defendant TIPTON knew would create a grave risk of death to a person, other than one of the participants in the offense, and that such conduct resulted in the death of the victim of the capital crime.

Proven to the jury's unanimous satisfaction,
      beyond a reasonable doubt:

As to Douglas A. Talley .............   ___Yes___
                                        (Yes or No)

As to Bobby Long ...................   ___Yes___
                                        (Yes or No)

As to Anthony Carter ...............   ___Yes___
                                        (Yes or No)

As to Dorothy Mae Armstrong ........   ___Yes___
                                        (Yes or No)

As to Curtis Thorne ................   ___Yes___
                                        (Yes or No)

As to Linwood Chiles ...............   ___Yes___
                                        (Yes or No)

Jurors:   At this point, review your findings on the Category One aggravating factors as to each individual victim.  Each victim represents a separate capital crime.  If, as to any victim, you have not found one of the Category One aggravating factors proven to your unanimous satisfaction, beyond a reasonable doubt, you must now complete Section A of the Decision Form for defendant RICHARD TIPTON that relates to that victim.

If, as to one or more victims, you have found a Category One aggravating factor proven to your unanimous satisfaction, continue to the Category Two factors on the following page.

3

00224

**Category Two:**   (21 U.S.C. §§ 848(n)(2)-(12))

WE, THE JURY, find as follows:

2A.   That defendant RICHARD TIPTON committed the killing of the victim of the capital crime after substantial planning and premeditation.

Proven to the jury's unanimous satisfaction, beyond a reasonable doubt:

As to Douglas A. Talley ..............   Yes
                                        (Yes or No)

As to Bobby Long ....................   Yes
                                        (Yes or No)

As to Anthony Carter ................   Yes
                                        (Yes or No)

As to Dorothy Mae Armstrong .........   Yes
                                        (Yes or No)

As to Curtis Thorne .................   Yes
                                        (Yes or No)

As to Linwood Chiles ................   Yes
                                        (Yes or No)

2B.   That, in the commission of the capital crime, defendant RICHARD TIPTON knowingly created a grave risk of death to one or more persons in addition to the victim of the capital crime.

Proven to the jury's unanimous satisfaction, beyond a reasonable doubt:

As to Curtis Thorne .................   Yes
                                        (Yes or No)

As to Linwood Chiles ................   Yes
                                        (Yes or No)

4

00225

-84-

2C.   That defendant RICHARD TIPTON committed the killing of the victim of the capital crime in an especially heinous, cruel or depraved manner in that it involved serious physical abuse to the victim.

Proven to the jury's unanimous satisfaction, beyond a reasonable doubt:

As to Douglas A. Talley ..............   __Yes__
                                           (Yes or No)

Jurors:   At this point, again review your findings as to each individual victim. If, as to any victim, you now have not found proven, to your unanimous satisfaction, both one of the Category One factors <u>and</u> one of the Category Two factors, you must complete Section A of the Decision Form for defendant RICHARD TIPTON that relates to that victim, if you have not already done so.

If, however, you have found both a Category One factor and a Category Two factor proven to your unanimous satisfaction as to one or more victims (i.e., one or more capital crimes), continue your deliberations with regard to those particular capital crimes by proceeding to the section on the next page dealing with nonstatutory aggravating factors.

5

00226

## II. Nonstatutory Aggravating Factors:

WE, THE JURY, FIND as follows:

1. That defendant RICHARD TIPTON committed multiple murders.

   Proven to the jury's unanimous satisfaction,
         beyond a reasonable doubt:

   __Yes__
   (Yes or No)

2. That defendant RICHARD TIPTON has a substantial criminal history.

   Proven to the jury's unanimous satisfaction,
         beyond a reasonable doubt:

   __Yes__
   (Yes or No)

3. That defendant RICHARD TIPTON seriously wounded two individuals in the course of committing the CCE murders for which he has been convicted.

   Proven to the jury's unanimous satisfaction,
         beyond a reasonable doubt:

   __Yes__
   (Yes or No)

4. That defendant RICHARD TIPTON was knowingly and willfully a member of a conspiracy which had as one of its goals the murder of individuals other than those for which the defendant was charged.

   Proven to the jury's unanimous satisfaction,
         beyond a reasonable doubt:

   __Yes__
   (Yes or No)

Jurors: Regardless of your findings as to these nonstatutory aggravating factors, proceed to the next section concerning mitigating factors.

6

00227

-86-

### III.  Mitigating Factors:

WE, THE JURY, FIND as follows:

Jurors:   Consideration of the following mitigating factors is specifically provided for by statute.

1.   That defendant RICHARD TIPTON's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge(s).

Number of jurors who so find,
by a preponderance of the evidence:
(Number)

2.   That defendant RICHARD TIPTON is punishable as a principal (as defined in section 2 of Title 18 of the United States Code) in the offense(s), which was (were) committed by another, but defendant RICHARD TIPTON's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge(s).

Number of jurors who so find,
by a preponderance of the evidence:
(Number)

3.   That defendant RICHARD TIPTON could not reasonably have foreseen that his conduct in the course of the commission of the murder(s) would cause, or would create a grave risk of causing, death to any person.

Number of jurors who so find,
by a preponderance of the evidence:
(Number)

4.   That defendant RICHARD TIPTON was youthful, although not under the age of 18.

Number of jurors who so find,
by a preponderance of the evidence:
(Number)

7

00228

-87-

5.   That defendant RICHARD TIPTON did not have a significant prior criminal record.

     Number of jurors who so find,
     by a preponderance of the evidence:    _____12_____
                                               (Number)

6.   That defendant RICHARD TIPTON committed the offense(s) under severe mental or emotional disturbance.

     Number of jurors who so find,
     by a preponderance of the evidence:    _____∅_____
                                               (Number)

7.   That another defendant or defendants, equally culpable in the crime(s), will not be punished by death.

     Number of jurors who so find,
     by a preponderance of the evidence:    _____11_____
                                               (Number)

8.   That the victim(s) consented to the criminal conduct that resulted in his (her) (their) deaths.

     Number of jurors who so find,
     by a preponderance of the evidence:    _____11_____
                                               (Number)

9.   That the following other factors in the defendant's background or character mitigate against imposition of a death sentence:

     Jurors:   The following are nonstatutory mitigating factors.

a)   That defendant RICHARD TIPTON was subjected to emotional and physical abuse and neglect as a child, and was deprived of the parental guidance and protection that he needed.

     Number of jurors who so find,
     by a preponderance of the evidence:    _____10_____
                                               (Number)

b)   That defendant RICHARD TIPTON suffers from attention deficit and hyperactivity disorder that went untreated when he was a child.

     Number of jurors who so find,
     by a preponderance of the evidence:    _____∅_____
                                               (Number)

8

00229

-88-

c) That defendant RICHARD TIPTON suffers from frontal lobe brain dysfunction that went untreated when he was a child.

Number of jurors who so find,
by a preponderance of the evidence:    10
                                       (Number)

d) That defendant RICHARD TIPTON has a history of birth complications, illness, disease and/or head injury and suffers brain dysfunction which has affected his ability to function, and/or his behavior.

Number of jurors who so find,
by a preponderance of the evidence:    4
                                       (Number)

e) That defendant RICHARD TIPTON was introduced to addictive drugs and alcohol while still a child.

Number of jurors who so find,
by a preponderance of the evidence:    12
                                       (Number)

f) That defendant RICHARD TIPTON is impulsive and is impaired in thinking about the consequences of his actions and in adjusting his thinking to changing events.

Number of jurors who so find,
by a preponderance of the evidence:    8
                                       (Number)

g) That defendant RICHARD TIPTON's full scale I.Q. is 85.

Number of jurors who so find,
by a preponderance of the evidence:    12
                                       (Number)

h) That defendant RICHARD TIPTON grew up in an impoverished, violent and brutal environment, and was exposed to extreme violence as a child and throughout his life.

Number of jurors who so find,
by a preponderance of the evidence:    12
                                       (Number)

9

00230

-89-

i)   That defendant RICHARD TIPTON, if not sentenced to death, will be sentenced to life in prison without any possibility of parole.

Number of jurors who so find,
by a preponderance of the evidence:   _____
                                           (Number)

Jurors:   If any juror or jurors find(s) that a mitigating factor not listed above has been proven to exist by a preponderance of the evidence, please identify that mitigating factor on the following page, together with the number of jurors who so find. Remember, however, that you need not be able to articulate a mitigating factor with specificity to consider it in your deliberations.

If additional space is needed, use the back of the this page.

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence:   _____
                                           (Number)

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence:   _____
                                           (Number)

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence:   _____
                                           (Number)

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence:   _____
                                           (Number)

10

00231

-90-

Jurors:   You have completed the Special Findings as to defendant RICHARD TIPTON, and must now begin the process of weighing the aggravating and mitigating factors to determine if the death penalty is justified as to each capital crime for which this defendant has been convicted. Remember, you are now considering only those capital crimes for which you have not already completed Section A of the Decision Form. Upon completing your deliberations as to the remaining capital crimes charged to this defendant, complete Section B, C or D of the Decision Form for each crime as appropriate.

The date and your foreperson's signature should appear below, certifying that these are your Special Findings as to uefendant RICHARD TIPTON.

FOREPERSON'S SIGNATURE                2/13/93        DATE

11

00232

-91-

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:92-cr-68 (DJN) |
| | ) | |
| RICHARD TIPTON, III, | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Opposition to
Defendant's First Step Act Motion**

Richard Tipton was convicted in February 1993 for his role in a drug organization that was responsible for numerous murders and maimings. A jury found that Tipton participated in six murders and convicted him of, among other things, six counts of violating 21 U.S.C. § 848(e)(1)(A). The jury ultimately imposed a death sentence on three of these murders.

In the first of these murders, which occurred in early January 1992, and was charged as Count 3, Tipton brutally killed Douglas Talley, a colleague in the drug trade whom Tipton suspected of being a snitch. PSR ¶ 68. Talley's murder lasted no longer than five minutes, yet left him with eighty-four stab wounds. *United States v. Tipton*, 90 F.3d 861, 868 (4th Cir. 1996).

The second, third, and fourth murders occurred on February 1, 1992, and were charged in Counts 17, 18, and 19. These murders began with a drug debt owed by Dorothy Mae Armstrong and ended in her death by gunfire. PSR ¶ 86. Two other individuals, Bobby Long and Anthony Carter were also murdered during this attack, *Tipton*, 90 F.3d at 869, likely because they witnessed Armstrong's murder, PSR ¶ 88.

The fifth and sixth murders, charged in Counts 24 and 25, occurred on February 19, 1992, and resulted in the deaths of Curtis Thorne and Linwood Chiles. Tipton, along with codefendant

-92-

Cory Johnson, shot Chiles at close range after instructing him to place his head on the steering wheel of his car. *Tipton*, 90 F.3d at 869; *United States v. Roane*, 378 F.3d 382, 389 n.6 (4th Cir. 2004). Tipton and Johnson also murdered Thorne by gunfire; his body was later found on the ground outside the rear passenger door of Chiles' car. *Id.*; PSR ¶ 93. Two other passengers in the car, Gwen and Priscilla Greene, were also shot, likely due to being in the wrong place at the wrong time. PSR ¶ 93.

A jury convicted Tipton of all six § 848(e)(1)(A) murders discussed above, as well as eight counts of committing violent crimes in aid of racketeering activity under 18 U.S.C. § 1959, of which two counts (Counts 29 and 30) related to the maiming of Gwen and Priscilla Greene during the aforementioned attack.

Tipton's convictions and sentences have withstood the test of direct appeal and collateral review. *See, e.g.*, *Tipton*, 90 F.3d at 870–903; *Roane*, 378 F.3d at 395–407. On July 31, 2020, Tipton, filed a motion to reduce his sentence under § 404 of the First Step Act. (ECF No. 24.) In seeking a sentence reduction under § 404, Tipton argues that his six convictions under § 848(e)(1)(A) (Counts 3, 17, 18, 19, 24, and 25) are "covered offenses." He also contends that his concurrent sentences on Counts 32 and 33, drug offenses that in the context of this case are essentially incidental, are also covered offenses. As to relief, Tipton requests vacatur of his sentences on Counts 3, 24, and 25 and an evidentiary hearing regarding the imposition of new sentences for both the capital and non-capital § 848(e) convictions.

Tipton's requests should be denied. Globally, the penalties for trafficking in crack cocaine were changed because of findings like the U.S. Sentencing Commission's that "crack is associated with significantly less trafficking-related violence … than previously assumed." *Kimbrough v. United States*, 552 U.S. 85, 98 (2007) (internal quotation marks and citation omitted). But Tipton's

2

particular case involved an extremely violent drug organization. His death sentences for the murders of Douglas Talley, Curtis Thorne, and Linwood Chiles, and life sentences for the other murders, were driven by his violent acts, and the Fair Sentencing Act would not realistically have made any difference in this case if it had been in effect at the time he was prosecuted. Under § 404(b), even when a defendant has a covered offense, the Court should assess a defendant's case "as if" the Fair Sentencing Act had applied. *See, e.g.*, *United States v. Jones*, 962 F.3d 1290, 1303 (11th Cir. 2020). As discussed below, if the Fair Sentencing Act had been in effect at the time of Tipton's prosecution, he would still have life sentences for all of the murder counts, except Counts 3, 24, and 25, for which he would still have received death sentences. Regardless of whether the "as if" provision in § 404(b) is treated as guiding judicial discretion or as a mandatory limit on sentence reductions, Tipton's request should be denied. He seeks an unjustified windfall. Tipton offers no persuasive basis for this Court to reduce his sentence for intentionally killing numerous people. Nothing he offers in mitigation outweighs the gravity of his criminal conduct—conduct so serious that a jury imposed the highest sentence available under the law.

Tipton's requested sentence reduction also falters on legal grounds. Tipton is mistaken that his convictions under § 848(e)(1)(A) should be deemed "covered offenses" under § 404(a) of the First Step Act. His convictions under § 848(e)(1)(A) are not covered offenses. *See United States v. Snow*, 967 F.3d 563 (6th Cir. 2020). In labeling § 848(e)(1)(A) a covered offense, Tipton seeks not a sentence reduction, but rather elimination of criminal liability for a drug-related murder, as *Snow* persuasively explains. As the Tenth Circuit has likewise observed, "[u]nlike a direct appeal of a conviction, which challenges the underlying conviction, a motion brought under the 2018 FSA only challenges the sentence—the length of incarceration[.]" *United States v. Mannie*, – F.3d –, 2020 WL 4810084, at *6 (10th Cir. Aug. 18, 2020). The result Tipton seeks cannot be squared

3

with the text of § 404, which includes no provision for eliminating criminal liability, and would be inconsistent with the Savings Statute, 1 U.S.C. § 109, which operates as a background provision to preserve criminal liability, including for death sentences. *See, e.g.*, *United States v. Stitt*, 552 F.3d 345, 353–55 (4th Cir. 2008).

Moreover, the Sixth Circuit in *Snow* considered and rejected the best-case scenario for finding § 848(e)(1)(A) a covered offense. As the Fourth Circuit has explained, § 848(e)(1)(A) has three prongs. *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013) (citing *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009)). Only one of those prongs requires proof of a violation 21 U.S.C. § 841(b)(1)(A), an offense that might have been modified by the Fair Sentencing Act. The other two prongs of § 848(e)(1)(A) require that the charged murder be in relation to a continuing criminal enterprise under 21 U.S.C. § 848 and do not require proof of a violation of § 841(b)(1)(A). Notably, Tipton was separately convicted in Count 2 of engaging in a continuing criminal enterprise, and his § 848(e)(1)(A) convictions rested on those findings. *See Tipton*, 90 F.3d at 887. Tipton did not incur criminal liability under § 848(e)(1)(A) by having the government rely on the prong requiring a § 841(b)(1)(A) violation. But as *Snow* persuasively explains, even if Tipton's § 848(e)(1)(A) convictions had depended on a violation of § 841(b)(1)(A), those offenses still would not be covered offenses under the First Step Act.

Tipton's argument that § 404 provides an avenue for a resentencing is also legally untenable. Section 404 specifically provides for a sentence reduction by a court, but by statute and constitutional command, the death sentence must be imposed by a jury. Under 21 U.S.C. § 848(i), in a capital sentencing procedure that is saved by the Savings Statute, as *Stitt* held, a court must conduct a capital sentencing before a jury. And if the jury returns a death sentence, the court must impose that sentence. "Upon the recommendation that the sentence of death be imposed, the court

4

**-95-**

shall sentence the defendant to death." 21 U.S.C. § 848(l). This more specific provision about a death sentence governs over the more general provisions of § 404. "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'clearly expressed congressional intention' that such a result should follow." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). The most natural reading of § 404 is that it does not displace the provisions governing capital sentencings and does not disturb a death sentence, which must be imposed by a jury, not a court. Section 404 simply does not permit a court to upset a death sentence.

These points also fit with the background rule, accepted by every circuit to address the question, that a § 404 motion does not trigger a *de novo* resentencing and is instead a limited proceeding. *See, e.g.*, *United States v. Easter*, – F.3d –, 2020 WL 5525395, at *7 (3d Cir. Sept. 15, 2020) ("We also hold, however, that Easter is not entitled to a plenary resentencing hearing"); *United States v. Smith*, 958 F.3d 494, 499 (6th Cir. 2020) ("Our sister circuits have likewise held that the First Step Act authorizes a limited sentencing modification, not a full resentencing." (citing *United States v. Curry*, 792 F. App'x 267, 268 (4th Cir. 2020)); *United States v. Foreman*, 958 F.3d 506, 508 (6th Cir. 2020) ("[N]othing in the First Step Act entitles a defendant to a plenary resentencing."); *United States v. Hamilton*, 790 F. App'x 824, 826 (7th Cir. 2020); *United States v. Williams*, 943 F.3d 841, 843 (8th Cir. 2019)); *see also United States v. Denson*, 963 F.3d 1080, 1086–87 (11th Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019).

**Procedural History**

**A.      Tipton is indicted, convicted, and sentenced.**

On July 20, 1992, Tipton, along with six others, was charged as part of a 33-count indictment with:

- Conspiracy to possess with intent to distribute and to distribute 50 grams or

5

more of cocaine base, in violation of 21 U.S.C. § 846 (Count 1);

- Engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) (Count 2);

- Capital murder in furtherance of a criminal enterprise, in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2 (Counts 3, 5, 11, 17, 18, 19, 24, 25);

- Commission of violent crimes in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Counts 4, 7, 13, 14, 16, 21, 22, 23, 27, 28, 29, 30);

- Use of a firearm in relation to a crime of violence or a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts 12, 15, 20, 26); and

- Possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Counts 32, 33).

(Second Superseding Indictment.) These charges stemmed from Tipton's leadership role, along with Cory Johnson and James Roane, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

The facts relevant to the instant motion were summarized by the Fourth Circuit on direct appeal as follows:

Tipton, Roane, and Cory Johnson were principal "partners" in a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. The conspiracy's operations began in Trenton, New Jersey where Johnson and Tipton, both from New York City, became members. In August of 1990, the conspiracy expanded its operations to Richmond, Virginia where Roane joined the conspiracy in November of 1991. The Trenton-based operation came to an end on June 4, 1991 when police confiscated a large quantity of crack cocaine and firearms. In late 1991, the conspiracy's operations were expanded from the Central Gardens area of Richmond to a second area in Richmond called Newtowne.

During the period of the conspiracy's operation, its "partners", including appellants, obtained wholesale quantities of powdered cocaine from suppliers in New York City, converted it by "cooking" into crack cocaine, then packaged it, divided it among themselves, and distributed it through a network of 30–40 street level dealers, "workers." Typically, the appellants and their other partners in the conspiracy's operations took two-thirds of the proceeds realized from street-level sales of their product.

Over a short span of time in early 1992, Tipton, Cory Johnson, and Roane were variously implicated in the murders of ten persons within the Richmond area—all

6

**-97-**

in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the "partners."

On January 4, 1992, Tipton and Roane drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. Once there, Roane grabbed Talley from the rear while Tipton stabbed him repeatedly. The attack lasted three to five minutes and involved the infliction of eighty-four stab wounds to Talley's head, neck, and upper body that killed him.

On the evening of January 13, 1992, Tipton and Roane went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, where Tipton shot Moody twice in the back. After Moody fled by jumping through a window, both Tipton and Roane pursued. Roane, armed with a military-style knife retrieved from an apartment where the knife was kept for co-conspirator Curtis Thorne, caught up with Moody in the front yard of the apartment where he stabbed him eighteen times, killing him.

On the night of January 14, 1992, Roane, Cory Johnson, and a third person retrieved a bag of guns that they had left at an apartment earlier that day. Roane then located Peyton Johnson, another rival drug dealer, at a tavern. Shortly after Roane left the tavern, Cory Johnson entered with another person and fatally shot Peyton Johnson with a semi-automatic weapon.

\*       \*       \*

In late January, 1992, after being threatened by Cory Johnson for not paying for a supply of crack cocaine, Dorothy Armstrong went to live with her brother, Bobby Long. On February 1, Cory Johnson learned from Jerry Gaiters the location of Long's house. Thereafter, Tipton and an unidentified "young fellow" picked up Gaiters and Cory Johnson who were then driven by Tipton to a house where the group obtained a bag of guns. After dropping off the unidentified third party, the group proceeded to Long's house. Upon arriving at Long's house, Cory Johnson and Gaiters got out of the car and approached the house. While Tipton waited in the car, Cory Johnson and Gaiters went to the front door. When Long opened the door, Cory Johnson opened fire, killing both Dorothy Armstrong and one Anthony Carter. Bobby Long fled out the front door, but was fatally shot by Cory Johnson in the front yard.

In early February 1992, Cory Johnson began to suspect that Linwood Chiles was cooperating with the police. On February 19, 1992, Johnson borrowed Valerie Butler's automobile and arranged to meet with Chiles. That night, Chiles, Curtis Thorne, and sisters Priscilla and Gwen Greene met Cory Johnson and drove off together in Chiles's station wagon. Chiles parked the car in an alley, and Tipton soon drove in behind it in another car, got out, and came up alongside the stationwagon. With Tipton standing by, Cory Johnson told Chiles to place his head

7

-98-

on the steering wheel and then shot Chiles twice at close range. Additional shots were fired, killing Thorne and critically wounding both of the Greene sisters. The autopsy report indicated that Thorne had been hit by bullets fired from two different directions.

*Tipton*, 90 F.3d at 868–69.

In February 1993, a jury convicted Tipton of six capital murders under § 848(e) (Counts 3, 17, 18, 19, 24, 25); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, 30); using a firearm in relation to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 20, 26); and possession of cocaine base with the intent to distribute under § 841(a)(1) (Counts 32, 33). (Judgment). Following a penalty hearing on the capital murder counts, the jury recommended that Tipton be sentenced to death for three of the six murders for which he was convicted under § 848(e) (Counts 3, 24, 25). *See Tipton*, 90 F.3d at 870.

In accordance with the jury's recommendation, the Honorable James R. Spencer, then the presiding district judge, sentenced Tipton to death. *Id.* The jury also sentenced Cory Johnson to death on all seven of the § 848(e)(1)(A) murders for which he had been convicted, and sentenced Roane to death for one of the three § 848(e)(1)(A) murders for which he was convicted. *Id.*

After sentencing, Judge Spencer refused, however, to order the defendants' execution on the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect. *Id.*

All three defendants appealed their convictions and sentences and the government cross-appealed Judge Spencer's stay of execution of the death sentences. *Id.* The Fourth Circuit affirmed the defendants' convictions and sentences, with the exception of the Count One § 846 cocaine conspiracy, which it vacated as being a lesser included offense of the § 848 continuing criminal

enterprise convictions. *Id*. at 891, 903. As to Judge Spencer's refusal to execute the defendants' death sentences, the Fourth Circuit reversed and "remand[ed] with instructions to enter appropriate orders for the executions in accordance with regulation promulgated by the Attorney General." *Id*. at 903.

### B.     Tipton's post-conviction litigation.

Following the Fourth Circuit's decision, Tipton sought relief from the district court under 28 U.S.C. § 2255. The district court dismissed or denied all of Tipton's claims and he appealed. *See Roane*, 378 F.3d at 389.

On appeal, Tipton claimed that (1) the district court erred by (a) not properly instructing the jury regarding the unanimity requirement of § 848(e), as well as by committing other instructional errors; (b) improperly adjudicating his discovery request at the § 2255 stage and by awarding summary judgment; and (c) denying his request to interview jurors; (2) that his trial was tainted by prosecutorial misconduct because the government knowingly introduced perjured testimony and withheld certain exculpatory evidence; (3) that his death sentences were constitutionally invalid under the Fifth Amendment because the indictment failed to allege the statutory aggravating factors under 21 U.S.C. § 848(n)(1)-(12); (4) that the prosecution discriminated against women in the jury selection process; and (5) that his counsel was ineffective for failing to (a) further investigate his alleged gang activities in New York and New Jersey; (b) request a voir dire inquiry on whether prospective jurors had a tendency to favor the death penalty; (c) present mitigating evidence regarding prison conditions; (d) present an adequate defense as to the murders of Douglas Talley (Count 3), Linwood Chiles (Count 24) and Curtis Thorne (Count 25); (e) present an adequate case-in-mitigation; and (f) request certain unanimity instructions. *Id*. at 395–96 & n.8.

The Fourth Circuit rejected each argument in a lengthy opinion. *Id*. at 396–407.

9

**-100-**

## C.    Tipton's motion under § 404(b) of the First Step Act.

On July 31, 2020, Tipton filed the instant motion for a sentence modification under § 404(b) of the First Step Act. (ECF No. 24.) In his motion, Tipton advances one overarching argument: that his murder convictions under § 848(e) (Counts, 3, 24, and 25), and his cocaine distribution convictions (Count 32 and 33) are "covered offenses" under § 404(b) of the First Step Act, and that, consequently, he is no longer eligible for the death penalty and instead, is eligible for a resentencing.  (*Id.* at 4-9.). Tipton also seeks resentencing on the § 848(e) convictions for which he received a term of life imprisonment (Counts 17, 18, and 19). (*Id.* at 12.). Tipton also seeks vacatur of his sentences on Counts 3, 24, and 25 and an evidentiary hearing regarding the imposition of new sentences for both the capital and non-capital § 848(e) convictions. (*Id.* at 25.)

## Argument

As outlined above, Tipton's convictions for capital murder in furtherance of a criminal enterprise under § 848(e) (Counts 3, 17, 18, 19, 24, and 25) are not covered offenses under § 404(b) of the First Step Act. For this reason, he is not entitled to a modification of his death sentence under the Act. Moreover, even assuming Tipton's death sentences could be reduced, this Court should exercise its discretion under the First Step Act and deny his motion. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). A district court is "not obligated to reduce [the defendant's] sentence at all." *United States v. Jackson*, 952 F.3d 492, 502 (4th Cir. 2020). For example, the Fourth Circuit has recognized that relief may be denied to "defendants who almost certainly would not have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act." *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (citing *United States v. Peters*, 843 F.3d 572, 577, 581 (4th Cir. 2016)). Even when a defendant has a covered offense, a court

10

**-101-**

may consider the drug quantities involved in the offense "in evaluating [the defendant's] motion on the merits." *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020). The drug quantities in this case far exceeded the new 280-gram threshold imposed by the Fair Sentencing Act. For Tipton in particular, the PSR attributed him with 18.49 kilograms of crack. *See* PSR ¶ 57; *see also id*. at 37.

In seeking relief under the First Step Act for his six § 848(e) convictions, three of which resulted in the imposition of the death penalty, Tipton fails to show that they are covered offenses, and offers no support for his theory that he is entitled to a new sentencing proceeding on Counts 3, 24, and 25.

## I. Tipton's murder convictions under § 848(e) are not covered offenses under § 404(b) of the First Step Act.

The First Step Act provides that a sentencing court "may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Under the First Step Act, a "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222.

As noted above, for an offense to qualify as "covered" under § 404(b), its statutory penalties must have been modified by the Fair Sentencing Act. *See Wirsing*, 943 F.3d at 180 ("On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act."). The statutory penalties for a violation of § 848(e), however, were not changed by the Fair Sentencing Act. The penalties under § 848(e), remain, both before and after the Fair Sentencing Act, 20 years to life imprisonment or death. *See* § 848(e)(1)(A).  Neither the Fair Sentencing Act nor the First Step Act altered this scheme.

11

**-102-**

Because the plain language of the First Step does not encompass convictions under § 848(e), those offenses are not "covered offenses" under the First Step Act. Although the bare text of the Act bars relief, further support is found for excluding § 848(e) from § 404(b)'s coverage in the operation of the statute itself. In *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), the Fourth Circuit held that § 848(e) is a separate substantive offense, and not just a penalty enhancement. *Id*. at 633. Section 848(e) is therefore separable from its underlying "predicates," whether they be acts "in furtherance of a continuing criminal enterprise" or "offense[s] punishable under section 841(b)(1)(A)[.]" *See* § 848(e)(1)(A). In the context of a § 848(e)(1)(A) prosecution, these predicates function as elements which must be found by a jury. As such, it is impossible for them to be "statutory penalties for which were modified . . . the Fair Sentencing Act of 2010." First Step Act § 404(a), 132 Stat. at 5222.

Moreover, § 848(e)(1)(A) has three prongs. *Hager*, 721 F.3d at 179–80 (citing *Aguilar*, 585 F.3d at 657). Only one of those prongs requires proof of a violation § 841(b)(1)(A), while the other two prongs of § 848(e)(1)(A) require that the murder be in relation to a continuing criminal enterprise under 21 U.S.C. § 848 and do not require proof of a violation of § 841(b)(1)(A). Tipton was convicted in Count 2 of engaging in a continuing criminal enterprise, and his § 848(e)(1)(A) convictions rested on those findings. *See Tipton*, 90 F.3d at 887 ("The Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances."). Tipton did not sustain criminal liability under § 848(e)(1)(A) by having the government rely on the prong requiring a § 841(b)(1)(A) violation.

The predicate facts required to find a violation of § 848(e) are akin to elements of the crime,

12

**-103-**

and even though § 848(e) references § 841(b)(1)(A), a defendant is only eligible for a § 404(b) reduction if the *penalties* for his offense of conviction have been modified by the Fair Sentencing Act. Here, the Fair Sentencing Act did no such thing. *See United States v. Guerrero*, 813 F.3d 462, 464–65 (2d Cir. 2016) ("The [Fair Sentencing] Act makes no mention of § 848(e)(1)(A)."); *see also United States v. Spearman*, No. 91-CR-50013-01 (BAF), 2020 WL 4390632, at *5 (E.D. Mich. Aug. 1, 2020) ("The § 848(e)(1)(A) drug-related murder convictions … likewise have nothing to do with drug quantities, and the statutory penalty (twenty years to life) has not been changed by the Fair Sentencing Act or the First Step Act."); *United States v. Martinez*, No. 06 CR. 987-1 (DC), 2020 WL 4226639 (S.D.N.Y. July 23, 2020) (after the First Step Act, "Count Two -- the [§ 848(e)(1)(A)] murder count -- still carries a mandatory minimum sentence of twenty years") (Chin, J.,); *United States v. Potts*, 389 F. Supp. 3d 352, 356 (E.D. Pa. 2019) ("The Fair Sentencing Act made many changes to elements of various crack offenses, but it did not amend the text of § 848(e)."); *United States v. Valentine*, No. 06-CR-580 (JSR), 2019 WL 3242494, at *1 (S.D.N.Y. July 2, 2019) ("[T]he Fair Sentencing Act … did not modify the sentences for the [§ 848(e)(1)(A)] murder … crimes to which defendant pled guilty").[1]

To be sure, § 2 of the Fair Sentencing Act modified the statutory penalties for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums—"raising the amount from 15 grams to 28 grams for the 5–year minimum sentence, and from 50 grams to 280 grams for the 10–year minimum sentence." *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). And of course, § 404 of the First Step Act "makes retroactive the provisions of the Fair Sentencing Act of 2010 that reformed crack cocaine sentencing." *United States v. Woodson*, 962

---

[1] The government recognizes that since the passage of the First Step Act, several district courts have held otherwise. *See* ECF No. 24 at 5-7. For the reasons appearing in this section, the government respectfully maintains that these cases are wrongly decided.

F.3d 812, 813 (4th Cir. 2020). But none of these amendments altered § 848(e)'s penalty scheme. It may be the case that the Fair Sentencing Act indirectly limited the number of defendants who can be charged with § 848(e) offenses by increasing the threshold amounts of crack cocaine required under § 841(b)(1)(A), but even assuming the truth of the latter does not render § 848(e) a covered offense under the First Step Act.

The Second Circuit has rejected a similar attempt to obtain relief under the Fair Sentencing Act from an § 848(e) conviction. In *United States v. Guerrero*, 813 F.3d 462 (2d Cir. 2016), the defendant argued that the Fair Sentencing Act compelled vacatur of his § 848(e) conviction because after the Act's passage, "§ 848(e)(1)(A)'s drug trafficking element required the jury to find that the conspiracy involved at least 280 grams of crack cocaine" and "[b]ecause only a quantity of 50 grams was alleged and proved, … the Government failed to establish an element of the charged murder offense[.]" *Id*. at 465. The Second Circuit rejected this argument, holding as follows:

> A defendant may be convicted under § 848(e)(1)(A) if he was engaged in a drug trafficking offense punishable under § 841(b)(1)(A) at the time he committed intentional murder. The crime is complete at the time of the murder, *see* 21 U.S.C. § 848(e)(1)(A), and it is as of that time that the statute's drug trafficking element is measured. Here, Guerrero committed the murders in September 1994, at which time the threshold quantity of crack cocaine necessary under § 841(b)(1)(A) was 50 grams or more. The jury's finding that Guerrero had been engaged in a conspiracy to distribute 50 grams or more of crack cocaine at the time he intentionally killed Ortega and Garrido therefore satisfied the drug trafficking element of the § 848(e)(1)(A) murder offense. There was no error in the indictment, the instructions, or the verdict.

> *    *    *

> No other conclusion flows from the FSA, a sentencing statute principally designed to increase threshold quantities of drugs necessary to trigger certain enhanced penalty schemes, to remove certain mandatory minimum sentences, and to direct the promulgation of new Sentencing Guidelines.

14

**-105-**

*Id.* As in *Guerrero*, Tipton's convictions under § 848(e)(1)(A) were complete the day his six murders occurred "and it is as of that time that the statute's drug trafficking element is measured." Neither the Fair Sentencing Act nor the First Step Act counsel otherwise, *see id.* at 466 ("Because the FSA did not expressly extinguish any criminal liability under § 848(e)(1)(A), the law's enactment did not retroactively invalidate Guerrero's conviction."), and there is no reason to believe that Congress, through statutes aimed at remedying disparities between cocaine base and powder cocaine, *see Gravatt*, 953 F.3d at 260, intended to absolve murders from criminal liability, to say nothing of vacating lawfully imposed death sentences. *Cf.* ECF No. 24 at 25 (requesting resentencing hearing on Counts 3, 24, and 25).

The only court of appeals to have considered the eligibility of a § 848(e) conviction under the First Step Act has held that it is not a "covered offense" under § 404(b). In *United States v. Snow*, 967 F.3d 563 (6th Cir. 2020), the defendant argued that the Fair Sentencing Act's increase of the threshold amount of crack cocaine under § 841(b)(1)(A) to 280 grams "combined with § 848(e)(1)(A)'s requirement of an offense punishable under § 841(b)(1)(A), qualifies his § 848(e)(1)(A) conviction as a "covered offense," making him eligible for a First Step Act sentence reduction." *Id.* at 564. The Sixth Circuit disagreed, holding "that the First Step Act's text and structure do not support extending resentencing relief to Snow's § 848(e)(1)(A) conviction." *Id.*

*Snow* first noted that "[i]n run-of-the-mill First Step Act cases, applying the Fair Sentencing Act retroactively requires only a change in degree: adjusting from a previous and higher statutory sentencing range to a new and lower one." *Id.* at 565. "Thus," the court continued, "in such cases, it makes sense to say that the Fair Sentencing Act 'modified' the statutory penalties. But the same is not true of Snow's § 848(e)(1)(A) conviction for murder while engaged in a conspiracy to distribute at least 50 grams of cocaine base." *Id.* This was so,

15

**-106-**

the court held, because

> [t]he Fair Sentencing Act did not reduce the sentencing range that applies to a conviction with those elements. Instead, after the Fair Sentencing Act, those elements no longer amount to an offense under § 848 at all and there is no applicable statutory sentencing range. The elimination of statutory penalties cannot be called a "modification" of statutory penalties without putting great strain on the ordinary meaning of the word "modify." This strongly suggests that Snow's § 848(e)(1)(A) conviction cannot be considered a covered offense as defined in § 404(a) of the First Step Act.

*Id*. Continuing, the Sixth Circuit noted that § 404(b) of the Act confirmed its conclusion. As it reiterated, § 404(b) permits courts to "impose a reduced sentence" for a covered offense "'as if [the changes made by the Fair Sentencing Act] were in effect' when the offense was committed." *Id*. Revisiting the defendant's § 848(e)(1)(A) conviction under this rubric, however, would have resulted in the unusual step of eliminating the statutory penalties for his conviction. As *Snow* held,

> if the district court chose to revisit Snow's Count 2 sentence as if the Fair Sentencing Act were in effect, it would be unable to "impose" any sentence because, again, there would no longer be any statutory penalties prescribed for Snow's conviction. In other words, § 404(b) on its face presupposes that the district court may still impose some sentence even after applying the Fair Sentencing Act retroactively; it simply does not contemplate the elimination of a sentence, as would be required here.

*Id*. "In sum," the Sixth Circuit concluded the defendant's "§ 848(e)(1)(A) conviction is not a covered offense and he is ineligible for a reduction in his sentence for Count 2." *Id*.

The Sixth Circuit's holding accounts for both the text of the First Step Act as well as

16

**-107-**

§ 404(b)'s actual, "real time" operation. This Court should adopt its reasoning.[2]

## II.    The First Step Act did not displace § 848(e)'s detailed provisions concerning imposition of the death penalty.

Tipton was convicted of six counts of capital murder in furtherance of a criminal enterprise, in violation of § 848(e) (Counts 3, 17, 18, 19, 24, and 25), and was sentenced to death on Counts 3, 24, and 25. Tipton was sentenced in accordance with the jury's recommendation pursuant to 21 U.S.C. § 848(l), *Tipton*, 90 F.3d at 870, a statutory provision which has since been repealed.

The Fourth Circuit has held that even in a case where a defendant obtains post-conviction relief from a faulty capital sentencing proceeding, courts are still obligated to follow the penalty scheme attendant to § 848(e) convictions, even if they have been repealed and replaced by the different procedures of the Death Penalty Act, 18 U.S.C.A. § 3591 *et seq*. ("FDPA"). *See United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008). In *Stitt*, a defendant was convicted and sentenced to death under § 848(e)(1)(A). *Id*. at 352. The defendant obtained relief under § 2255 due to his defense attorney's conflict of interest during the penalty phase of his trial, which resulted in vacatur of his death sentence. *Id*. at 348. During the pendency of various appeals related to the case, Congress repealed §§ 848(g) through (r) and made § 848(e) convictions death penalty eligible in accordance with the FDPA. *Id*. 352. Given this change-in-law, the district court refused to empanel

---

[2] Although Tipton is likely eligible for a sentence modification on Counts 32 and 33, crack offenses under § 841(a)(1), the Court need not reach this contention due to Tipton's ineligibility for relief under the concurrently imposed death sentences under § 848(e). *See United States v. Charles*, 932 F.3d 153, 160 (4th Cir. 2019) ("[T]he [concurrent-sentence] doctrine still has continuing force as a species of harmless-error review where a defendant seeks to challenge the legality of a sentence that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration."); *accord United States v. McCain*, – F.3d –, 2020 WL 5414850, at *5 (4th Cir. Sept. 10, 2020) ("Even assuming the district court plainly erred in not vacating McCain's Section 1512 conviction, he has not shown that the error affected his substantial rights. McCain received two concurrent life sentences: on Count One for violating Section 1512 and on Count Five for violating Section 924.").

17

**-108-**

a new sentencing jury under the relevant, but since-repealed, provisions of § 848, instead opting to resentence the defendant to life imprisonment without a jury. *Id*. at 351-52.

The government appealed and the Fourth Circuit reversed. In so holding, the Fourth Circuit held that the Savings Statute, 1 U.S.C. § 109, saved §§ 848(g) through (r) as applied to the defendant. *Stitt* first noted that "courts are in agreement that 'sentencing provisions' are saved as part of the 'prosecution' of a 'penalty' even when a later change alters the availability of a particular sentence." *Id*. at 354. As such, *Stitt* held that "we continue to apply the original sentencing provisions because the repeal of §§ 848(g)-(r) would have the effect of eliminating a previously-available sentencing option, a death sentence, at the resentencing." *Id*. *Stitt* also noted "that the penalty provided in § 848(e) cannot be fully preserved without also preserving the mechanisms for enforcing it, §§ 848(g)-(r). Indeed, the repealed portions of § 848 are a constitutionally required condition precedent to imposing § 848(e)'s penalty of a death sentence." *Id*. Concluding, the Fourth Circuit held that because the "'enforcing provisions' of § 848(g)-(r) are both akin to a 'sentencing provision' and also have a constitutionally mandated 'special relation to the accrued right,' the Savings Statute operates to save them against Stitt. And, § 848(i)(1)(B)(iv) provided for the empanelling of a sentencing jury in cases where the original death sentence was later vacated." *Id*.

Addressing the district court's assertion of equitable power to personally resentence the defendant, despite an earlier jury's imposition of the death penalty, *Stitt* held as follows:

> Section 848(i) provided that, if the Government files the appropriate death-eligibility notice (which it did in 1998), and if the defendant is found guilty of the death eligible offenses (which Stitt was in 1999), then "the judge who presided at the trial … *shall* conduct a separate hearing to determine the punishment to be imposed." 21 U.S.C.A. § 848(i)(1) (emphasis added). That hearing "*shall*" be conducted "before a jury impaneled for the purpose of the hearing if ... after initial imposition of a sentence under this section, redetermination of the sentence under this section is necessary." 21 U.S.C.A. § 848(i)(1)(B)(iv) (emphasis added). And,

18

**-109-**

if a jury recommends a sentence of death, "the court shall sentence the defendant to death." 21 U.S.C.A. § 848(l) (emphasis added). Given the repeated use of the term "shall," we believe it was not "appropriate" for the district court to forego empanelling a new penalty-phase jury.

*Id*. at 355-56.

Given the First Step Act's text and animating purpose, *Gravatt*, 953 F.3d at 260, there is little indication that it was intended to override the § 848(e)'s more specific provisions addressing the imposition of death sentences. Relatedly, there is no evidence that the First Step Act permits courts to disturb jury-imposed death sentences as an exercise of discretion under § 404(b) and Tipton points to no statute or case providing as such. Tipton's argument for a hearing on all six § 848(e) counts and vacatur of his death sentences should therefore be rejected.

## III.    Tipton's remaining arguments are improperly brought in a First Step Act motion.

Tipton raises three additional points which, although having no bearing on the instant motion, he nonetheless asks this Court to consider. Each should be rejected as improvidently brought in a First Step Act motion.

Tipton first notes that his conviction on Count 1 was vacated by the Fourth Circuit on direct appeal. (ECF No. 24 at 15.). He therefore asks to be resentenced "without the influence of this superadded, unconstitutional conviction on the sentencing decision." (*Id*.) Tipton also states that his § 924(c) convictions (Counts 20 and 26) are invalid in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). (*Id*. at 16-19.) And finally, Tipton claims that his eight convictions for committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, and 30) were improperly charged and are therefore invalid. (*Id*. at 19-21.)

As noted above, each argument is either irrelevant to the Court's consideration of the instant motion or improperly raised through a First Step Act motion. With regards to Tiptons's

19

**-110-**

first argument, of course the government recognizes that the Fourth Circuit vacated his conviction on Count 1. This vacatur occurred in 1996 though, *see Tipton*, 90, F.3d at 891, and presumably resulted in little more than an amended judgment. The time has long-since-passed to seek any other type of relief from the Fourth Circuit's vacatur. And in any event, the likelihood that the elimination of a cocaine distribution conspiracy conviction would/will have any impact on Tipton's sentence is infinitesimal in light of the fact that he stands convicted of six murders.

As to Tipton's *Davis* argument, and as he himself recognizes, he is currently seeking authorization from the Fourth Circuit to even raise such a claim in the district court. Accordingly, even if a First Step Act motion was the proper forum to raise such a claim, it would make little sense to consider his *Davis* argument until after the Fourth Circuit actually authorizes it, to say nothing of its success on the merits. Because Tipton's application to file a successive § 2255 petition on this very issue is fully briefed and pending before the Fourth Circuit, the government does not address the merits of this claim herein. *See In re Richard Tipton*, No. 20-10, ECF Nos. 2, 7, 10, 13, 16.

Finally, Tipton's claims of instructional error have no place in a First Step Act motion. To begin, the First Step Act permits sentence modifications under specified circumstances. The Act is not a vehicle by which to raise perceived infirmities in a conviction. *See United States v. Moore*, – F.3d –, 2020 WL 5523205, at *5 (2d Cir. Sept. 15, 2020) ("By its express terms, [§ 404 of the First Step Act] does not require plenary resentencing or operate as a surrogate for collateral review, obliging a court to reconsider all aspects of an original sentencing."); *Mannie*, 2020 WL 4810084, at *6 ("Unlike a direct appeal of a conviction, which challenges the underlying conviction, a motion brought under the 2018 FSA only challenges the sentence—the length of incarceration"). If Tipton believed instructional error infected his eight § 1959 convictions, he should have raised

20

-111-

the argument on direct appeal or in a § 2255 motion. At this juncture, Tipton would need prefiling authorization from the Fourth Circuit to even raise such arguments before this Court. *See In re Vassell*, 751 F.3d 267, 271 (4th Cir. 2014) ("Section 2255(h) requires a court of appeals considering whether to authorize a second or successive § 2255 motion to follow the gatekeeping procedure 'provided in section 2244.'"). Because Tipton has not done so, his claims of instructional error are improperly raised in the instant motion.[3]

Ultimately, Tipton's motion offers no persuasive reason for reducing his sentence—even if a reduction were authorized—given the gravity of his crimes. Even if the Fair Sentencing Act were applied, Tipton would still face statutory maximums of life for every count on which he received a death sentence for murder. His guideline range would remain unchanged at life imprisonment. He would still be eligible for a death sentence, and the jury's decision to impose a death sentence on Counts 3, 24, and 25 would still stand.

## IV.    Response to the Court's September 2, 2020, Order.

On September 2, 2020, the Court ordered the government to provide its position with regards to Tipton's First Step Act motion. (*See* ECF No. 45.) As noted above, the government maintains that Tipton's death sentences cannot be reduced under § 404 of the First Step Act. His convictions under § 848(e) are not "covered offenses," and § 404 does not authorize a court to reduce the death sentences the jury imposed. Even if that were not the case, this Court should

---

[3] On direct appeal, the Fourth Circuit rejected an instructional error challenge brought by Tipton, Roane, and Johnson to their § 1959 convictions. The defendants argued that "the district court failed to differentiate between 'an enterprise engaged in racketeering activity' and the 'racketeering activity' in which it was engaged." *Tipton*, 90 F.3d at 888. The Fourth Circuit rejected the argument on plain error review, holding that "we are satisfied that, as the Government contends, the jury was adequately told that the elements were separate and distinct ones and that both must be proved. Viewed in total context, the two isolated references to 'racketeering activity' when 'enterprise engaged in racketeering activity' was appropriate must have been understood as short-hand references to the 'enterprise' itself." *Id.*

exercise its discretion under the First Step Act, *see* First Step Act § 404(c), and deny Tipton's request for a sentence reduction due to the serious nature of his offenses and the risk he poses to the public.

Tipton stands convicted of six murders under § 848(e). The details of the murders are distilled as follows:

- In early January 1992, Tipton brutally murdered Douglas Talley (Count 3) in an attack that despite lasting only three to five minutes, resulted in the infliction of eighty-four stab wounds to Talley's head, neck, and torso. *Tipton*, 90 F.3d at 868. When the police arrived at the scene, they found Talley dead and hanging out of the front door. PSR ¶ 68. Talley was murdered because Tipton believed him to be a "snitch." (*Id.*)

- In early February 1992, Tipton murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong (Counts 17, 18, and 19). Armstrong was murdered because she owed a drug debt to Tipton and Johnson and because "she knew too much" about their activities. PSR ¶ 86. The pair located Armstrong at her home, where she was hiding until she could repay her debts, and while Tipton acted as lookout, Johnson burst through the side door and shot her. PSR ¶ 87; *Tipton*, 90 F.3d at 869. Carter and Long were also killed as part of this attack, likely because they witnessed the murder of Armstrong. PSR ¶ 88.

- In February 1992, Tipton murdered Curtis Thorne and Linwood Chiles (Counts 24 and 25). The murder involved Tipton and Johnson arranging to meet Thorne, Chiles, and Priscilla and Gwen Greene in an alley. Johnson then instructed Chiles to place his head on the steering wheel of his car and, with Tipton standing by, shot him at close range. *Tipton*, 90 F.3d at 869. Tipton also participated in this shooting. *Roane*, 378 F.3d at 389 n.6. Additional shots were fired at Thorne and the Greene sisters. *Id.* Thorne's autopsy report indicated that he had been hit by bullets from two different directions. *Id.* When police arrived at the scene, they found a male victim lying on the ground outside the rear passenger door and one of the Greene sisters on the curb several feet away. Chiles was found slumped over the steering wheel, with the other Greene sister to his right in the passenger seat. PSR ¶ 93. The Greene sisters were simply in the wrong place at the wrong time. (*Id.*)

Tipton was also convicted of two counts of committing violent crimes in aid of racketeering activity under § 1959 as related to the maiming of Gwen and Priscilla Greene (Counts 29 and 30).

As is evident, the nature and circumstances of Tipton's offenses could hardly be worse.

22

-113-

Tipton received numerous terms of life imprisonment and a death sentence on Counts 3, 24, and 25. There is every reason to believe that a defendant who plotted and participated in violent murders, and callously attacked unrelated bystanders, poses a serious risk to public safety. Tipton's murders were deliberate and premediated. The passage of time and new Congressional legislation cannot undo such grave acts. *See United States v. Umana*, 750 F.3d 320, 358 (4th Cir. 2014) (death penalty proportional to crime where defendant "killed two people in furtherance of a racketeering enterprise, … had killed before and posed a danger in the future.").

The Court also requested that the government provide the following information:

**A. The number of months and years of supervised release that it considers appropriate;**

The government believes that a lifetime period of supervised release would be appropriate should the Court reduce Tipton's sentence.

**B. The status of Tipton's educational and vocational training;**

Between 2001 and 2020, Tipton has taken numerous courses in prison, including:

1. Art courses (water color, colored pencil, charcoal pencil, and crochet);
2. Exercise courses (yoga, cardio, abdominals, cardio techniques, and wellness);
3. Nutrition courses (introduction to nutrition, nutrition and digestion, and "How we Eat"); and
4. General educational and vocational courses (Shakespeare's Comedies, 7 Ways to Save the World, Origins of Ancient Civilization, Basic Writing, Language, Art, and Reading, Everyday Math, Stress Management, Everyday Math, Anger Management, Owning Your Own Business, Learn a Living, Success on the Job, GED Self-Study, Legal Research, and Creative Writing).

**C. The status of any treatment pertaining to substance abuse or physical/mental health;**

The government is not aware of any mental or substance abuse treatment, or any other treatment that is germane to the issues in this motion.

23

-114-

**D. Tipton's post-sentencing conduct:**

The following infractions appear on Tipton's inmate disciplinary record:

1. Being Unsanitary or Untidy (2016);
2. Disruptive Conduct (2015);
3. Threatening Bodily Harm (2015);
4. Disruptive Conduct (2014);
5. Refusing to Obey an Order (2014);
6. Threatening Bodily Harm and Destroying Property (2014);
7. Interfering with Security Devices (covering camera in cell) and Destroying Property (2014);
8. Refusing Work Assignment (2013);
9. Interfering with Security Devices and Refusing to Obey an Order (2010);
10. Interfering with Security Devices (covering camera in cell) (2010);
11. Refusing to Obey an Order (2010);
12. Possessing Unauthorized Item (razor blade) (2010);
13. Being Insolent to Staff Member (2009);
14. Assault without Serious Injury (bumped one officer in chest and struck other officer with shoulder) (2008);
15. Threatening Bodily Harm and Refusing to Obey and Order (2008);
16. Being Insolent to Staff Member (2008);
17. Lying or Falsifying Statement (2008);
18. Refusing Drug Alcohol Test (2006);
19. Refusing to Obey an Order and Being Insolent to Staff (2005);
20. Threatening Bodily Harm (2004);
21. Phone Abuse Criminal (instructed another individual to use physical force on witness to influence statement) (2004);
22. Phone Abuse/Disruptive Monitoring (became disruptive during hearing and was removed) (2003);
23. Threatening Bodily Harm (2002);
24. Refusing to Obey an Order and Being Insolent to Staff (2001);
25. Possessing Unauthorized Item and Destroying Property (2001);
26. Being Insolent to Staff Member (2001);
27. Destroying Property and Being Unsanitary or Untidy (2000);
28. Making Sexual Proposal/Threat (1999);
29. Destroying Property (1999);
30. Refusing to Obey an Order (1999); and
31. Refusing Work Assignment and Refusing to Obey an Order (1999).[4]

---

[4] Tipton's Inmate Disciplinary Record is attached as Exhibit A.

24

**-115-**

**Conclusion**

For the reasons explained above, the Court should deny Tipton's First Step Act motion.


Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


By:    _____/s/_____

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys

-117-

**Certificate of Service**

I certify that on September 21, 2020, I filed electronically the foregoing with the Clerk of

Court using the CM/ECF system, which will serve all counsel of record.


By:    _____/s/_____

Joseph Attias
Assistant United States Attorney

# EXHIBIT A

```
  BUTB5          *       INMATE DISCIPLINE DATA       *     08-27-2020
PAGE 001         *    CHRONOLOGICAL DISCIPLINARY RECORD  *     07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 08-27-2020


--------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2794446 - SANCTIONED INCIDENT DATE/TIME: 12-15-2015 1125
DHO HEARING DATE/TIME: 05-04-2016 0920          DHO REPT DEL: 07-22-2016 0800
FACL/CHAIRPERSON.....: THP/EZEKIEL
REPORT REMARKS.......: INMATE DENIED CHARGE
  299  DISRUPTIVE CONDUCT-HIGH - FREQ: 1
       LP COMM   / 45 DAYS / CS
       COMP:   LAW:   299 ML 206
       LP PHONE  / 60 DAYS / CS / SUSPENDED 180 DAYS
       COMP:   LAW:
--------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2813424 - SANCTIONED INCIDENT DATE/TIME: 02-06-2016 1820
UDC HEARING DATE/TIME: 02-09-2016 1150
FACL/UDC/CHAIRPERSON.: THP/SCU/SHEPHERD
REPORT REMARKS.......: INMATE FOUND GUILTY OF PROHIBITED ACT.
  330  BEING UNSANITARY OR UNTIDY - FREQ: 1
       LP OTHER  / 15 DAYS / CS
       COMP:   LAW:   LP TRULINCS EMAIL TO DETER FUTURE VIOLATIONS.
                      02/09-23/2016.
--------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2682809 - SANCTIONED INCIDENT DATE/TIME: 02-13-2015 1335
DHO HEARING DATE/TIME: 04-15-2015 1125          DHO REPT DEL: 04-24-2015 1443
FACL/CHAIRPERSON.....: THP/EZEKIEL
REPORT REMARKS.......: INMATE ADMITTED THE THE CHARGE
  203  THREATENING BODILY HARM - FREQ: 1 ATI: SN1
       DS         / 1 DAYS / CS
       COMP:   LAW:   FOR SENTRY PURPOSE ONLY
       LP COMM   / 45 DAYS / CS
       COMP:   LAW:
       LP EMAIL  / 45 DAYS / CS
       COMP:   LAW:
       LP VISIT  / 45 DAYS / CS
       COMP:   LAW:
--------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2581171 - SANCTIONED INCIDENT DATE/TIME: 05-09-2014 0734
UDC HEARING DATE/TIME: 06-06-2014 1450
FACL/UDC/CHAIRPERSON.: THP/SCU/SHEPHERD
APPEAL CASE NUMBER(S): 780587
REPORT REMARKS.......: ON REMAND, UDC FINDS GUILTY OF CHARGE AS BEING MOST LIKE
                       DUE TO VIOLATION BEING WRITTEN RATHER THAN SPOKEN.
  399  DISRUPTIVE CONDUCT-MODERATE - FREQ: 1
       LP PHONE  / 15 DAYS / CS
       COMP:   LAW:   PREVIOUSLY IMPOSED SANCTION FROM 5/16/2014 STAND.
                      SANCTION TIME SERVED.




G0002       MORE PAGES TO FOLLOW . . .
```

```
   BUTB5          *      INMATE DISCIPLINE DATA        *    08-27-2020
PAGE 002          *   CHRONOLOGICAL DISCIPLINARY RECORD  *    07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 08-27-2020


-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2589582 - SANCTIONED INCIDENT DATE/TIME: 06-02-2014 0733
UDC HEARING DATE/TIME: 06-03-2014 1335
FACL/UDC/CHAIRPERSON.: THP/SCU/SHEPHERD
REPORT REMARKS.......: BEST MANAGED AT UDC LEVEL.  I/M FOUND GUILTY OF 307 CHRG
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP PHONE   / 30 DAYS / CS
        COMP:    LAW:    UTILIZING PROGRESSIVE SANCTIONS TO DETER CONTINUED
                        VIOLATIONS OF THIS NATURE.
-------------------------------------------------------------------------------
REPORT NUMBER........: 2581171 (REHEARD 06-06-2014 1450)
UDC HEARING DATE/TIME: 05-16-2014 0920
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2554251 - SANCTIONED INCIDENT DATE/TIME: 02-28-2014 1640
DHO HEARING DATE/TIME: 04-24-2014 0831
FACL/CHAIRPERSON.....: THP/EZEKIEL
REPORT REMARKS.......: DENIED BREAKING THE SPRINKLER HEAD AND THREATENING STAFF
   203  THREATENING BODILY HARM - FREQ: 1 ATI: SN1
        LP EMAIL   / 45 DAYS / CS
        COMP:    LAW:
   218  DESTROYING PROP OVER $100 - FREQ: 1
        LP COMM    / 45 DAYS / CS
        COMP:    LAW:
        LP PHONE   / 45 DAYS / CS / SUSPENDED 180 DAYS
        COMP:    LAW:
        MON REST   / 100.00 DOLLARS / CS
        COMP:    LAW:    COST OF COMPUTER EQUIP
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2546618 - SANCTIONED INCIDENT DATE/TIME: 02-07-2014 1730
DHO HEARING DATE/TIME: 04-24-2014 0830
FACL/CHAIRPERSON.....: THP/EZEKIEL
REPORT REMARKS.......: DENIED ALTERING GOV ISSUED CLOTHING & ABUSING THE DURESS
                       ALARM
   208  INTERFERING WITH SECRY DEVICES - FREQ: 1
        LP MPLAYER / 30 DAYS / CS
        COMP:    LAW:
        LP VISIT   / 30 DAYS / CS
        COMP:    LAW:    ALL VISITS
   329  DESTROY PROP $100 OR LESS - FREQ: 1
        LP MPLAYER / 30 DAYS / CS
        COMP:    LAW:




G0002        MORE PAGES TO FOLLOW . . .
```

```
 BUTB5          *        INMATE DISCIPLINE DATA         *    08-27-2020
PAGE 003        *     CHRONOLOGICAL DISCIPLINARY RECORD  *    07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT       FORMAT: CHRONO   LIMIT TO ___ MOS PRIOR TO 08-27-2020


----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2509420 - SANCTIONED INCIDENT DATE/TIME: 10-28-2013 1519
UDC HEARING DATE/TIME: 11-01-2013 1350
FACL/UDC/CHAIRPERSON.: THP/SCU/SHEPHERD
APPEAL CASE NUMBER(S): 756745
REPORT REMARKS.......: UDC CONSIDERED I/M, WITNESS, STAFF STATEMENTS, REVIEWED
                       VIDEO.  I/M DENIED.
   306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
        CHG QTRS   / CS
        COMP:    LAW:    I/M FOUND GUILTY OF PROHIBITED ACT AND IS RETURNED
                         TO PHASE I QTRS TO DETER FUTURE VIOLATIONS OF SAME
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2104347 - SANCTIONED INCIDENT DATE/TIME: 12-22-2010 1945
DHO HEARING DATE/TIME: 01-20-2011 0945
FACL/CHAIRPERSON.....: THP/D.LOCKETT
REPORT REMARKS.......: INMATE ADMITTED TO COVERING CAMERA IN CELL, STATES I AM
                       NOT ON A STATUS WHICH REQUIRES CONSTANT MONITORING.
   208  INTERFERING WITH SECRY DEVICES - FREQ: 2
        LP OTHER   / 15 DAYS / CS
        COMP:    LAW:    15 DAYS LP OTHER (E-MAIL)
        LP VISIT   / 15 DAYS / CS
        COMP:    LAW:    15 DAYS LP VISITORS, ALL
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP PHONE   / 7 DAYS / CS
        COMP:    LAW:    7 DAYS LP PHONE
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2103918 - SANCTIONED INCIDENT DATE/TIME: 12-21-2010 1510
DHO HEARING DATE/TIME: 01-20-2011 0930
FACL/CHAIRPERSON.....: THP/D.LOCKETT
REPORT REMARKS.......: INMATE ADMITTED TO COVERING CAMERA IN CELL, STATES I AM
                       NOT ON A STATUS WHICH REQUIRES CONSTANT MONITORING.
   208  INTERFERING WITH SECRY DEVICES - FREQ: 1
        LP OTHER   / 15 DAYS / CS
        COMP:    LAW:    15 DAYS LP OTHER (E-MAIL)
        LP VISIT   / 15 DAYS / CS
        COMP:    LAW:    15 DAYS LP VISITORS, ALL
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2015512 - SANCTIONED INCIDENT DATE/TIME: 05-13-2010 1500
UDC HEARING DATE/TIME: 05-19-2010 1020
FACL/UDC/CHAIRPERSON.: THP/SCU/B ENGLISH
REPORT REMARKS.......: INMATE ADMITTED TO NOT GIVING THE PHONE TO STAFF
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP PHONE   / 15 DAYS / CS / SUSPENDED 90 DAYS
        COMP:    LAW:




G0002       MORE PAGES TO FOLLOW . . .
```

-121-

```
  BUTB5          *        INMATE DISCIPLINE DATA         *      08-27-2020
PAGE 004         *    CHRONOLOGICAL DISCIPLINARY RECORD   *      07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 08-27-2020


UDC HEARING DATE/TIME: 05-19-2010 1020 REPORT 2015512 CONTINUED
   398  INTERFERING W/STAFF-MODERATE - FREQ: 1
        LP PHONE   / 15 DAYS / CS / SUSPENDED 90 DAYS
        COMP:    LAW:   30 DAYS TOTAL IF FOUND GUILTY ANOTHER I/R WITHIN
                        90 DAYS
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1969038 - SANCTIONED INCIDENT DATE/TIME: 01-20-2010 1005
DHO HEARING DATE/TIME: 02-17-2010 1420
FACL/CHAIRPERSON.....: THP/D.LOCKETT
REPORT REMARKS.......: INMATE ADMITTED POSSESSION OF RAZOR BLADE, I USE THEM TO
                        SHARPEN MY PENCILS, IT WAS AN ACCIDENT.
   305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
        LP OTHER   / 30 DAYS / CS
        COMP:    LAW:   30 DAYS LOSS PRIVILEGE OTHER (E-MAIL)
        LP PHONE   / 30 DAYS / CS
        COMP:    LAW:   30 DAYS LOSS PRIVILEGE TELEPHONE.
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1814554 - SANCTIONED INCIDENT DATE/TIME: 12-25-2008 0820
DHO HEARING DATE/TIME: 08-04-2009 1445
FACL/CHAIRPERSON.....: THP/D. LOCKETT
REPORT REMARKS.......: INMATE WAS UPSET AND BUMPED ONE OFFICER IN THE CHEST AND
                        STRUCK ANOTHER OFFICER IN THE CHEST WITH HIS SHOULDER.
   224  ASSAULTING W/O SERIOUS INJURY - FREQ: 1 ATI: SN1 RFP: D
        DS         / 7 DAYS / CS / SUSPENDED 180 DAYS
        COMP:    LAW:
        LP VISIT   / 15 DAYS / CS
        COMP:    LAW:   LOSS OF VISITING PRIVILEGE 15 DAYS.
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1812025 - SANCTIONED INCIDENT DATE/TIME: 12-17-2008 1815
DHO HEARING DATE/TIME: 08-04-2009 1430
FACL/CHAIRPERSON.....: THP/D. LOCKETT
REPORT REMARKS.......: INMATE ADMITS MAKING THREATENING COMMENT BUT SAID IT WAS
                        JUST TO ASSIST HIM IN GETTING MOVED TO DIFFERENT CELL.
   203  THREATENING BODILY HARM - FREQ: 1 ATI: SN1
        DS         / 7 DAYS / CS / SUSPENDED 180 DAYS
        COMP:    LAW:
        LP PHONE   / 15 DAYS / CS
        COMP:    LAW:
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP VISIT   / 15 DAYS / CS
        COMP:    LAW:




G0002       MORE PAGES TO FOLLOW . . .
```

```
  BUTB5          *        INMATE DISCIPLINE DATA         *     08-27-2020
PAGE 005         *     CHRONOLOGICAL DISCIPLINARY RECORD  *     07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 08-27-2020


----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1836405 - SANCTIONED INCIDENT DATE/TIME: 02-22-2009 1145
DHO HEARING DATE/TIME: 08-04-2009 1400
FACL/CHAIRPERSON.....: THP/D. LOCKETT
REPORT REMARKS.......: INMATE ADMITS HE PROVIDED LIST OF NEGATIVE TERMS TO
                       THE REPORTING EMPLOYEE BUT SAID IT WAS MISINTERPRETED.
   312  BEING INSOLENT TO STAFF MEMBER - FREQ: 2
         LP PHONE   / 15 DAYS / CS
         COMP:    LAW:
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1797416 - SANCTIONED INCIDENT DATE/TIME: 11-06-2008 1215
UDC HEARING DATE/TIME: 11-12-2008 1330
FACL/UDC/CHAIRPERSON.: THP/SCU/JULIAN
REPORT REMARKS.......: SANCTIONED TO DETER FUTURE MICONDUCT TOWARDS STAFF.
   312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
         LP PHONE   / 15 DAYS / CS
         COMP:    LAW:    INMATE ADMITTED GUILT.
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1796469 - SANCTIONED INCIDENT DATE/TIME: 11-03-2008 1440
UDC HEARING DATE/TIME: 11-06-2008 0840
FACL/UDC/CHAIRPERSON.: THP/SCU/B ENGLISH
REPORT REMARKS.......: INMATE ADMITTED TO MAKING THE COMMENTS ABOUT STAFF
   313  LYING OR FALSIFYING STATEMENT - FREQ: 1
         LP COMM    / 30 DAYS / CS
         COMP:    LAW:
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1469622 - SANCTIONED INCIDENT DATE/TIME: 05-20-2006 1048
DHO HEARING DATE/TIME: 06-01-2006 1400
FACL/CHAIRPERSON.....: THP/KILLION, V
REPORT REMARKS.......: N/A
   110  REFUSING DRUG/ALCOHOL TEST - FREQ: 1 ATI: ???
         DS         / 1 DAYS / CS
         COMP:    LAW:    DIS SEG
         LP VISIT   / 6 MONTHS / CS
         COMP:    LAW:    LOSS OF SOCIAL VISITS
         LP VISITRS / 6 MONTHS / CS
         COMP:    LAW:    RESTRICTED VISITING....
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1297011 - SANCTIONED INCIDENT DATE/TIME: 12-30-2004 0935
DHO HEARING DATE/TIME: 01-24-2005 1110
FACL/CHAIRPERSON.....: THA/CAMPBELL,M
REPORT REMARKS.......: ADMITS TO CHARGES AND STILL REMAINS DISRESPECTFUL
                       TOWARDS DHO




  G0002       MORE PAGES TO FOLLOW . . .
```

```
  BUTB5          *       INMATE DISCIPLINE DATA        *     08-27-2020
PAGE 006         *    CHRONOLOGICAL DISCIPLINARY RECORD  *     07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT         FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 08-27-2020


DHO HEARING DATE/TIME: 01-24-2005 1110 REPORT 1297011 CONTINUED
    307  REFUSING TO OBEY AN ORDER - FREQ: 1
         DS          / 15 DAYS / CS
         COMP:    LAW:    DS
         LP COMM    / 6 MONTHS / CS
         COMP:    LAW:
         LP OTHER   / 6 MONTHS / CS
         COMP:    LAW:    LOSS OF PROPERTY
         LP PHONE   / 6 MONTHS / CS
         COMP:    LAW:    LOSS OF PHONE FOR SIX MONTHS
    312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
         DS          / 15 DAYS / CS
         COMP:    LAW:    DS CONSECUTIVE WITH 15 DAYS FOR 307
         LP COMM    / 6 MONTHS / CS
         COMP:    LAW:    LOSS OF COMMISSARY FOR SIX MONTHS CS WITH 6 MONTHS
                           FOR CODE 307
         LP OTHER   / 6 MONTHS / CS
         COMP:    LAW:    LOSS OF PROPERTY FOR SIX MONTHS CONSECUTIVE WITH
                           6 MONTHS FOR CODE 307
         LP PHONE   / 6 MONTHS / CS
         COMP:    LAW:    LOSS OF PHONE
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1289892 - SANCTIONED INCIDENT DATE/TIME: 12-07-2004 1540
DHO HEARING DATE/TIME: 12-30-2004 0930
FACL/CHAIRPERSON.....: THA/KILLION, V
REPORT REMARKS.......: N/A
    203  THREATENING BODILY HARM - FREQ: 1 ATI: SN1
         DS          / 30 DAYS / CS
         COMP:    LAW:    DIS SEG
         LP PHONE   / 6 MONTHS / CS
         COMP:    LAW:    LOSS OF SOCIAL TELEPHONE PRIVLEGES
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1217659 - SANCTIONED INCIDENT DATE/TIME: 05-01-2004 2134
DHO HEARING DATE/TIME: 05-10-2004 1455
FACL/CHAIRPERSON.....: THA/KILLION, V
APPEAL CASE NUMBER(S): 336249
REPORT REMARKS.......: SUBJ. INSTRUCTED ANOTHER INDIVIDUAL TO USE PHYSICAL
                         FORCE ON A WITNESS TO INFLUENCE STATEMENT.
    197  PHONE ABUSE, CRIMINAL - FREQ: 1 RFP: ?
         DS          / 30 DAYS / CS
         COMP:    LAW:    DIS SEG
         LP PHONE   / 18 MONTHS / CS
         COMP:    LAW:    LOSS OF SOCIAL TELEPHONE PRIVLEGES




  G0002        MORE PAGES TO FOLLOW . . .
```

```
   BUTB5          *      INMATE DISCIPLINE DATA      *    08-27-2020
PAGE 007         *    CHRONOLOGICAL DISCIPLINARY RECORD   *    07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT        FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 08-27-2020


----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1117298 - SANCTIONED INCIDENT DATE/TIME: 06-25-2003 2139
DHO HEARING DATE/TIME: 07-24-2003 1450
FACL/CHAIRPERSON.....: THA/KILLION, V
APPEAL CASE NUMBER(S): 308492
REPORT REMARKS.......: SUBJECT BECAME DISRUPTIVE IN THE HEARING, AND WAS
                       REMOVED
   297  PHONE ABUSE-DISRUPT MONITORING - FREQ: 1
        DS          / 15 DAYS / CS
        COMP:    LAW:   DIS GCT
        LP PHONE   / 6 MONTHS / CS
        COMP:    LAW:    LOSS OF SOCIAL TELEPHONE PRIVLEGES
----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 987573 - SANCTIONED  INCIDENT DATE/TIME: 04-30-2002 1025
DHO HEARING DATE/TIME: 07-02-2002 1330
FACL/CHAIRPERSON.....: THA/KILLION, V
APPEAL CASE NUMBER(S): 277474
REPORT REMARKS.......: N/A
   203  THREATENING BODILY HARM - FREQ: 1 ATI: IN1
        DIS GCT    / 27 DAYS / CS
        COMP:010 LAW:S   DIS GCT
        DS          / 30 DAYS / CS / SUSPENDED 180 DAYS
        COMP:    LAW:    PENDING CLEAR CONDUCT
----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 935698 - SANCTIONED  INCIDENT DATE/TIME: 11-06-2001 1910
UDC HEARING DATE/TIME: 11-13-2001 1530
FACL/UDC/CHAIRPERSON.: THA/SCU/STEWART
APPEAL CASE NUMBER(S): 257026
REPORT REMARKS.......: BASED ON THE EVIDENCE IN THE REPORT AND THE INMATE'S OWN
                       ADMISSION.
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP PHONE   / 30 DAYS / CS
        COMP:    LAW:    30 DAYS LOSS OF TELEPHONE PRIVILEGES BEGINNING
                        11-13 TO 12-13.
   312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
        LP OTHER   / 15 DAYS / CS
        COMP:    LAW:    15 DAYS LOSS OF TELEVISION BEGINNING 11-13 TO 11-2
                        8.


G0002       MORE PAGES TO FOLLOW . . .
```

```
   BUTB5          *      INMATE DISCIPLINE DATA       *      08-27-2020
PAGE 008          *   CHRONOLOGICAL DISCIPLINARY RECORD  *      07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 08-27-2020


------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 911546 - SANCTIONED  INCIDENT DATE/TIME: 08-17-2001 1000
UDC HEARING DATE/TIME: 08-21-2001 1420
FACL/UDC/CHAIRPERSON.: THA/SCU/B. STEWART
APPEAL CASE NUMBER(S): 248641
REPORT REMARKS.......: BASED ON THE UNDENIABEL EVIDENCE FOUND IN THE CELL OF
                       THE INMATE.
   305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
        LP COMM    / 30 DAYS / CC
        COMP:    LAW:    30 DAYS COMMISSARY RESTRICTION BEGINNING 8-23-01.
   329  DESTROY PROP $100 OR LESS - FREQ: 2
        LP COMM    / 30 DAYS / CC
        COMP:    LAW:    30 DAYS COMMISSARY RESTRICTION RUNNING CONCURRENT
                         WITH THE CHARGE 305.
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 911540 - SANCTIONED  INCIDENT DATE/TIME: 08-17-2001 1000
UDC HEARING DATE/TIME: 08-21-2001 1414
FACL/UDC/CHAIRPERSON.: THA/SCU/B. STEWART
REPORT REMARKS.......: BASED ON THE SPECIFIC STATEMENTS AS HEARD BY THE OFFICER
   312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
        LP OTHER   / 7 DAYS / CS
        COMP:    LAW:    CONFISCATE TELEVISION FOR 7 DAYS BEGINNING 8-21-01
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 837001 - SANCTIONED  INCIDENT DATE/TIME: 11-30-2000 1245
UDC HEARING DATE/TIME: 12-04-2000 1401
FACL/UDC/CHAIRPERSON.: THA/4/RYHERD
REPORT REMARKS.......: INMATE WAS FOUND TO HAVE COMMITTED THE PROHIBITED ACT.
                       SANCTION IMPOSE TO IMPROVE BEHAVIOR.
   329  DESTROY PROP $100 OR LESS - FREQ: 1
        LP COMM    / 30 DAYS / CS
        COMP:    LAW:    LOSS OF COMMISSARY FOR 30 DAYS. MAY PURCHASE STAMP
                         AND PHONE CREDITS.
   330  BEING UNSANITARY OR UNTIDY - FREQ: 1
        LP COMM    / 30 DAYS / CS
        COMP:    LAW:    LOSS OF COMMISSARY FOR 30 DAYS. MAT PURCHASE STAMP
                         AND PHONE CREDITS.
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 741511 - SANCTIONED  INCIDENT DATE/TIME: 12-24-1999 1445
DHO HEARING DATE/TIME: 01-13-2000 1405
FACL/CHAIRPERSON.....: THA/KILLION
REPORT REMARKS.......: N/A
   206  MAKING SEXUAL PROPOSAL/THREAT - FREQ: 1 ATI: SN1
        DS         / 30 DAYS / CS
        COMP:    LAW:    DIS SEG




G0002      MORE PAGES TO FOLLOW . . .
```

```
  BUTB5           *        INMATE DISCIPLINE DATA      *      08-27-2020
PAGE 009 OF 009 *    CHRONOLOGICAL DISCIPLINARY RECORD    *      07:48:23


REGISTER NO: 32922-083 NAME..: TIPTON, RICHARD
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 08-27-2020


DHO HEARING DATE/TIME: 01-13-2000 1405 REPORT 741511 CONTINUED
        LP OTHER   / 60 DAYS / CS
        COMP:    LAW:    LOSS OF TELEVISION PRIVLEGES
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 710972 - SANCTIONED  INCIDENT DATE/TIME: 09-03-1999 0715
DHO HEARING DATE/TIME: 09-13-1999 1315
FACL/CHAIRPERSON.....: THA/KILLION, V
REPORT REMARKS.......: N/A
   218  DESTROYING PROP OVER $100 - FREQ: 1
        DS          / 30 DAYS / CS / SUSPENDED 180 DAYS
        COMP:    LAW:     SUSPENDED, PENDING CLEAR CONDUCT
        LP OTHER   / 30 DAYS / CS / SUSPENDED 180 DAYS
        COMP:    LAW:    LOSS OF TELEVISION PRIVLEGES
        MON REST   / 15.00 DOLLARS / CS
        COMP:    LAW:     RESTITUTION FOR A SPRINKLER HEAD.
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 707967 - SANCTIONED  INCIDENT DATE/TIME: 08-24-1999 1730
UDC HEARING DATE/TIME: 08-27-1999 0915
FACL/UDC/CHAIRPERSON.: THA/SCU/QUINTANA
REPORT REMARKS.......: INMATED ADMITTED TO CHARGE
   307  REFUSING TO OBEY AN ORDER - FREQ: 2
        LP COMM    / 15 DAYS / CS
        COMP:    LAW:    LOSS OF COMMISSARY PRIVILEGES FOR 15 DAYS.
        LP OTHER   / 7 DAYS / CS
        COMP:    LAW:    LOSS OF TELEVISION PRIVILEGES FOR 7 DAYS BEGINING
                        08-27-99 ENDING 09-02-99.
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 703438 - SANCTIONED  INCIDENT DATE/TIME: 08-09-1999 1435
UDC HEARING DATE/TIME: 08-12-1999 1300
FACL/UDC/CHAIRPERSON.: THA/L/V. BOYER
APPEAL CASE NUMBER(S): 193342
REPORT REMARKS.......: REFUSE WRK/PRGM ASSGN  AND REFUSE OBEY AN ORDER
   306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
        LP COMM    / 30 DAYS / CC
        COMP:    LAW:    EXCEPT STAMPS AND PHONE CREDITS
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP COMM    / 30 DAYS / CC
        COMP:    LAW:




  G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Case No. 92CR68 |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| RICHARD TIPTON, III. | ) | |

### DEFENDANT TIPTON'S REPLY IN SUPPORT
### OF HIS MOTION FOR REDUCED SENTENCES
### UNDER SECTION 404 OF THE FIRST STEP ACT

Defendant Richard Tipton, III, by and through undersigned counsel,
respectfully submits the following reply in support of his motion for reduced
sentences for the interrelated offenses charged in Counts 3, 24, 25, 32, and 33.[1]
The Government's Opposition provides no authority for precluding reconsideration
of Mr. Tipton's sentences for those counts, which include his sentences of death, as
each charged him with offenses "covered" by the First Step Act of 2018.

---

[1]Counts 3, 24, and 25 each charged crimes pursuant to 21 U.S.C.
§841(e)(1)(a) and 18 U.S.C. §2.  Counts 32 and 33 each charged crimes pursuant
to 18 U.S.C. §841(a)(1) and 18 U.S.C. §2).   The Government concedes that Mr.
Tipton is "likely eligible for a sentence modification on Counts 32 and 33." ECF
54 at 17, n. 2.

## I.    ARGUMENT

### A. The Government's Opposition Relies Upon An Erroneous Reading And Inapposite Authority

The Government devotes the bulk of its Opposition to arguing that Mr. Tipton's convictions under § 848(e)(1)(A) are not "covered offenses" under § 404(a) of the First Step Act.[2]  The Government notes that "§ 848(e)(1)(A) has three prongs," only one of which "requires proof of a violation § 841(b)(1)(A)," while the other two require only that "the murder be in relation to a continuing criminal enterprise under 21 U.S.C. § 848[.]"  ECF at 12.  The Government then argues that because "Tipton was convicted in Count 2 of engaging in a continuing criminal enterprise," his § 848(e)(1)(A) convictions "rested on those findings," and he "did not sustain criminal liability under § 848(e)(1)(A) by having the government rely on the prong requiring a § 841(b)(1)(A) violation."  *Id.*

---

[2]The Government argues almost in passing that this Court should not modify Mr. Tipton's sentences even if it recognizes that his offenses are "covered" by the First Step Act.  ECF at 9.  The Government relies on the Fourth Circuit's decision in *United States v. Wirsing* to argue that "relief may be denied to 'defendants who almost certainly would not have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act.'"  *Id.* (quoting 943 F.3d 175, 179 (4th Cir. 2019)).  Mr. Tipton fits within that category, the Government asserts, because the amount of crack cocaine attributed to him by the *PSR* "far exceeded the new 280-gram threshold imposed by the Fair Sentencing Act."  *Id.* at 9-19 (citing PSR ¶ 57). But the Government's own authority defeats that argument.  *Wirsing* holds that this Court may not make its own finding of a drug quantity unless the defendant admitted to a specific amount in a plea statement or a special jury verdict specified the amount distributed.  *Wirsing*, 943 F.3d at 181.  Mr. Tipton made no such statement, and his jury entered no such verdict; a PSR substitutes for neither.

2

The opinion of the Fourth Circuit on direct appeal demonstrates that the Government is wrong.  In that decision, the Fourth Circuit vacated Mr. Tipton's conviction of conspiracy to distribute cocaine in violation of § 846—a charge detailed in Count One of his indictment.  The Circuit so decided because it concluded that Mr. Tipton's § 846 conspiracy conviction was *a lesser included offense* of his convictions under § 848.  *United States v. Tipton*, 90 F.3d 861, 891, 903 (4th Cir. 1996).  In keeping with Supreme Court precedent, the Circuit could not have so ruled unless it determined that *all of the elements* of his § 846 conspiracy conviction were necessarily encompassed by the elements of his § 848(e)(1)(A) convictions.  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

The record in this case establishes unequivocally that Mr. Tipton's § 846 conviction was based on a conspiracy to violate *§ 841(b)(1)(A).*  That is clear from his indictment, which charges him with conspiracy to "possess with the intent to distribute, and to distribute…at least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, *Section 841(b)(1)(A)(ii),* which contains cocaine base."  It is also clear from the instructions given his jury, which stated that, in order to convict Mr. Tipton of the § 846 conspiracy charged in

3

Count One, they "*must find* beyond a reasonable doubt that the conspiracy distributed or possessed with intent to distribute, or attempted to possess with intent to distribute *at least 50 grams or more of crack cocaine.*"  T. 3203-3204 (emphases added).  Moreover, the Circuit also found that Count Two "identified and incorporated by reference all violations of 21 U.S.C. § § 841 and 846 charged against the appellants elsewhere in the indictment. . . . , including the conspiracy charged [under § 846] in Count 1 [and] the drug distribution jointly charged [under § 841(b)(1)(A)] in Count 32".  *Tipton*, 90 F.3d, 884.  *See also* Count Two of superseding indictment, charging Mr. Tipton with "engag[ing] in a Continuing Criminal Enterprise, that is, . . . violat[ing] Title 21, United States Code, Section 841 and 846" as "part of a continuing series of violations."  In sum, then, Mr. Tipton's § 848(e)(1)(A) convictions rested upon a conspiracy to violate § 841(b)(1)(A), as charged in Count One, and on violations of § 841(b)(1)(A), as charged in Count Two.  Accordingly, the law of the case demonstrates that his § 848(e)(1)(A) convictions are premised upon violations of § 841(b)(1)(A) and, accordingly, covered offenses.

Indeed, in similar cases, the Government has conceded that offenses that rest upon violations of § 841(b)(1)(A) are "covered offenses."  *See, e.g.*, United States' Mot. to Remand at 8, *United States v. Maupin*, No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26 (agreeing RICO conviction was "covered offense" under the

First Step Act where "defendant's statutory maximum was increased to life as a result of racketeering activity involving cocaine base that would no longer carry a maximum penalty of life imprisonment"); *United States v. Davis*, Case No. 5:93CR30025-003, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020) ("The government acknowledges that the defendant is eligible for a sentence reduction under the 2018 FSA for...Count Two due to § 848's requirement of a § 841(b)(1)(A) violation.").

Moreover, even if this Court were to conclude that Mr. Tipton's § 848(e)(1)(A) convictions did not rest upon violations of § 841(b)(1)(A), those convictions would still be "covered offenses" because—as recognized by the Western District of Virginia, this Court's sister jurisdiction--§ 848 *as a whole* constitutes an indivisible covered offense.  *United States v. Brown*, No. 3:08-CR-00011-1, 2020 WL 3106320 *4 (W.D. Va. June 11, 2020).  In *Brown*, the Court held that the most "straightforward" understanding of § 848 is that the "statute of conviction is § 848 as a whole, particularly given the brief nature of the statute and its focus on one type of unlawful activity"—specifically, "continuing criminal enterprises related to controlled substances" —while subsections such as, *inter alia*, § 841(e) "set forth the penalties for specific types of violative conduct." *Brown*, 2020 WL 3106320 at *4 (citing *United States v. Smith*, 954 F.3d 446, 450 (1st Cir. 2020)).  The Court noted this as to § 848(e) *specifically*, observing that it

5

-132-

"even begins with the phrase 'In addition to the other penalties set forth in this section.'" *Id.* Accordingly, the Court concluded that the Defendant was eligible for resentencing under the First Step Act "because at least one of the penalties [included in § 848] was modified by Section 2 or 3 of the Fair Sentencing Act[.]" *Id.* The Government has neither appealed that decision nor addressed it in its Opposition to Mr. Tipton's motion.[3]

## B. The Government's Position Finds No Support Inside or Outside this Circuit

The Government acknowledges that the district courts within this circuit have rejected its argument that § 848 convictions are not covered offenses. ECF 54 at 13, n. 1. In the face of this contrary authority, the Government tries to change the subject, misrepresenting the relief that Mr. Tipton seeks so that it can argue that his motion is foreclosed by the holdings of two cases from the Second and Sixth Circuit, respectively. None of these arguments is availing.

The Government first cites the Second Circuit's 2016 decision in *United States v. Guerrero*—which it characterizes, revealingly, as "a similar attempt to

---

[3]While never mentioning *Brown*, the Government cites *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), to assert that § 848(e) is a "separate substantive offense," rather than a penalty provision within an indivisible § 848 statute, and is therefore severable from its predicates. ECF 54 at 12. This argument ignores *Brown*'s holding that § 848(a), which makes no specific mention of § 841(b)(1)(A), was nevertheless a covered offense. Per *Brown*, then, criminality under § 848(e) does specifically rest on violations of § 841(b)(1)(A).

6

obtain relief under the Fair Sentencing Act from an § 848(e) *conviction.*" ECF 54

at 14 (citing 813 F.3d 462 (2nd Cir. 2016) (emphasis added). *Guerrero*, the

Government argues, establishes that Mr. Tipton's "liability" under § 848(e)(1)(a) is

unchanged because he possessed the quantity of crack cocaine required by §

841(b)(1)(a) at the time of his § 848 offenses.  ECF 54 at 14.  No matter how the

Government stretches *Guerrero*, however, it does not fit Mr. Tipton's motion.  As

the Government acknowledges, the defendant in *Guerrero* was convicted prior to

the enactment of the Fair Sentencing Act but was sentenced after it took effect.

*Guerrero*, 813 F.3d at 464–65.  After the Supreme Court held that the Fair

Sentencing Act "applied retroactively to defendants who committed crack cocaine

offenses before [its enactment], but who were not sentenced until after that date,"

the defendant sought the *vacatur of his conviction*, arguing that the Government,

which had proven only the lesser amount required before the Fair Sentencing Act,

had "failed to establish *an element* of the charged murder offense[.]"  *Id.* at 465

(emphasis added).

The Government conflates "liability" and "conviction" to obscure the fact

that *Guerrero* speaks to none of the questions before this Court.  In the first place,

Mr. Tipton does not seek the *vacatur* of his convictions under § 848(e); as the very

caption of his motion states, he seeks *reduced sentences* only. ECF 24 at 1.[4]

Accordingly, *Guerrero* is fundamentally inapposite. Secondly, *Guerrero* has—and

given the date of its issuance, could have—no relevance for the question of

whether § 848 is a "covered offense" under the First Step Act.

The Government next argues that § 848(e)(1)(A) is not a "covered offense"

by citing the Sixth Circuit's decision in *United States v. Snow*. ECF 54 at 15-16

(citing 967 F.3d 563, 564 (6th Cir. 2020)). In *Snow*, the defendant challenged his §

848(e)(1)(A) conviction on the ground that it required "an offense punishable

under section 841(b)(1)(A)" as a predicate, "and thus partly incorporates the

elements of the latter subsection." *Snow*, 967 F.3d at 564. The § 841(b)(1)(A)

offense in *Snow* was "a conspiracy to distribute at least 50 grams of cocaine base—

the minimum amount then required to trigger [its] penalties," **but now well below**

**the** "threshold quantity" of 280 grams required by the Fair Sentencing Act. *Id.*

The Sixth Circuit denied relief, reasoning that 848(e) could not be a covered

---

[4] The Government's argument also subverts the purpose of the First Step Act, which was enacted "in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses," and in recognition that that sentences for crack cocaine were, prior to the enactment of the Fair Sentencing Act, too severe. *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020)(citing *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). The First Step Act exists to empower Courts to address "disparities between sentences for crack cocaine offenses and powder cocaine offenses [that] remained for defendants sentenced before . . . the effective date of the Fair Sentencing Act." *Id.*; *see also Wirsing*, 943 F.3d at 186 ("Congress's clear intent was to apply the Fair Sentencing Act to pre-Fair Sentencing Act offenders.").

offense because, "*going forward*, a defendant cannot be convicted under §

848(e)(1)(A) for murder while engaged in a conspiracy to distribute less than 280

grams," and the First Step Act contemplated only the modification and not

"the *elimination* of a sentence, as would be required here." *Snow*, 967 F.3d at 565

(emphasis added).

Again, the First Step Act does not permit vacating or addressing the validity

of past *convictions*. The First Step Act entitles a defendant convicted of a covered

offense to have the sentence imposed for that conviction re-examined—no more,

no less. The Act neither anticipates nor provides that a modification of the

sentence imposed for a covered offense would at all alter the defendant's

conviction for that offense. The Sixth Circuit's reasoning would result in offenses

that expressly turn on drug quantities being treated as if they were not "covered

offenses"—particularly in cases in which the minimum amount was proven—as

there, too, "going forward" such a conviction would no longer be possible. That

would defeat the express purpose of the First Step Act.

The Government's purpose in tendering this out-of-circuit authority is the

same: to suggest that granting Mr. Tipton sentencing relief would be tantamount to

vacating his convictions. But that argument depends upon misrepresenting the

nature of Mr. Tipton's motion, as *Snow* is shaped by the prospect of a far broader

relief than he has sought here. Mr. Tipton has never asked this Court to vacate his

9

-136-

§ 848 convictions or suggested that they carry no liability. While he contends that his sentences of death rest upon predicate offenses that would not authorize capital punishment if prosecuted today, he has cited that as a reason *to impose a lesser sentence*, not to remove any altogether.

Further, *Snow* does not grapple with the discretion inherent in the operation of the First Step Act; it seems to assume that the resentencing court would be bound by whatever sentence could or could not be imposed were the defendant convicted today. One misreading of the act begets another, as its conclusion that § 848 is not a covered offense appears motivated by its distaste for the consequences that it has exaggerated through that misunderstanding.

Moreover, attempting to defeat Mr. Tipton's motion requires the Government to argue with itself. Again, the Government has already conceded in similar cases that "covered offenses" include those that were indirectly modified by sections 2 and 3 of the Fair Sentencing Act because they rested on a violation of § 841(b)(1)(A). *See* discussion of the Government's filings in *Maupin* and *Davis*, *supra* at 4.

In short, the Government's arguments turn on putting words in Mr. Tipton's mouth. He asks that his sentences for the interrelated and covered offenses charged in Counts 3, 24, 25, 32, and 33, be reconsidered and reduced, as the statutory penalty for each has been modified by the Fair Sentencing Act; he does

10

not ask that his convictions for these offenses be vacated. In short, he seeks sentencing relief for "covered" offenses, which is precisely what the First Step Act contemplates.

### C. Mr. Tipton Does Not Oppose Capital Resentencing By A Jury

Mr. Tipton has asked that his death sentences, imposed for covered offenses, be reconsidered pursuant to the provisions of the First Step Act. The Government argues at length that the "First Step Act did not displace § 848(e)'s detailed provisions concerning imposition of the death penalty," in an evident attempt to persuade this Court that it cannot merely substitute a lesser sentence in place of Mr. Tipton's death sentence without the involvement of a jury. ECF 54 at 17-19; *see, e.g., id.* at 19 (First Step Act does not "permit[] courts to disturb jury imposed death sentences as an exercise of discretion under § 404(b).") As Mr. Tipton's prayer for relief notes, however, he does not insist upon that; he accepts that the vacatur of his death sentences is merely a precondition to their reconsideration. ECF 24 at 25. As his § 848(e) offenses are "covered" by the First Step Act, however, he requests jury consideration consistent with the provisions of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, which provides: (1) that a sentencing jury be empaneled pursuant to § 848(i); (2) that the sentencing jury receives aggravating and mitigating evidence, pursuant to § 848(j); and (3) that the sentencing jury determines whether the reduction of Mr. Tipton's

11

sentences is appropriate, in keeping with the considerations and provisions of § 848(k). Were the sentencing jury to determine that a reduction was appropriate, this Court would impose the sentence determined by the jury pursuant to § 848(l) (1988) (repealed 2006).

Moreover, the Government errs to the extent that it suggests that the First Step Act does not authorize resentencing in capital cases. The Government points to nothing in the plain language or legislative history of the First Step Act that expresses the intent to exclude capital cases from relief. Nor can the Government offer case law or statutory provisions establishing that defendants are not entitled to a jury resentencing for a capital offense "covered" under the First Step Act. On the contrary—and as the Fourth Circuit has recognized— when Congress confers rights upon all criminal defendants through a statute whose language provides an express mechanism for relief to non-capital defendants alone, the courts must craft relief for capital defendants using established equitable principles. *United States v. Stitt*, 459 F.3d 483, 485 (4th Cir. 2006) ("*Stitt IV*") (where *Andrews v. United States*, 373 U.S. 334 (1963), required resentencing before § 2255 relief could be appealed in non-capital case, same requirement necessarily applied in capital case).

The purpose of the First Step Act is to provide reconsideration of the sentences imposed upon defendants pursuant to a regime that punished those convicted of crack-related offenses with excessive harshness. *See, e.g.*, *Gravatt*,

12

953 F.3d at 260. Per *Stitt IV* and in the absence of contrary legislative intent, the act should not be read as excluding capital offenses "covered" by its provisions; it should be read to require that an appropriate remedy, consistent with capital jurisprudence, be provided.

The very precedent on which the Government relies underscores this point. The Government cites *Epic Systems Corp. v. Lewis* for the proposition that "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'clearly expressed congressional intention' that such a result should follow." ECF 54 at 5, 17-18 (citing 138 S. Ct. 1612, 1624 (2018)). It is the Government, of course, that seeks to suggest that the First Step Act cannot be harmonized with § 848(l) (1988) (repealed 2006) and 18 U.S.C. § 3594. Yet the Government cannot, and does not, point to any expression of congressional intent that even approaches that "heavy burden."

The Government also cites *United States v. Stitt* ("*Stitt V*") to argue that "sentencing provisions are saved as part of the prosecution of a penalty even when a later change alters the availability of a particular sentence"; accordingly, this Court should "continue to apply the original sentencing provisions" of §§ 848(g)-(r) despite their subsequent repeal. ECF 54 at 18 (citing 552 F.3d 345 (4th Cir.

13

2008).  Again, Mr. Tipton does not oppose his resentencing by a jury pursuant to those provisions.

### D. Mr. Tipton Has Made No "Improper" Arguments

The Government accuses Mr. Tipton of raising arguments "improperly" or "improvidently brought in a First Step Act motion."  ECF 54 at 19.  The Government refers to Mr. Tipton's detailing how he was "convicted of additional counts that, while not the subject of this motion, have been vacated or otherwise invalidated," and urging this Court, "[i]n considering whether to reduce Mr. Tipton's sentences," to "account for the effect of these improper convictions on the original sentencing determinations."  ECF 24 at 15-25.  Mr. Tipton has not argued that the First Step Act entitles him to any relief from those convictions; in anticipation of his sentences being re-examined, he has argued that they, and their prejudicial effects, should be excluded from consideration in any resentencing.

### E. A Sentence of Less Than Death Is Not Out of Reach

The Government also suggests that Mr. Tipton's case is too aggravated to justify revisiting his death sentences, claiming that "the nature and circumstances of [his] offenses could hardly be worse."  EECF 54 at 21-22.  But there are numerous examples of federal capital juries returning life sentences in

14

-141-

exceptionally aggravated cases.[5]  Accordingly, the Government's suggestion that a

lesser sentence is necessarily out of reach is not well-taken.

_____

[5]*See, e.g.*, *United States v. Naeem Williams*, D. HI No. 06-00079 (Defendant was convicted of beating to death his 5-year old daughter, whom he had routinely assaulted and tortured); *United States v. Larry Lujan*, D. NM No. 05-924, (Defendant convicted of kidnapping murder of a 16-year-old potential federal witness, whom he beat, forced to perform oral sex, and nearly decapitated with a meat cleaver; DNA also linked defendant to a double murder); *United States v. Steven Northington*, E.D. PA No. 2:07-CR-00550-RBS (Defendant convicted of arson that killed six people, including four children–ages 1, 10, 12 and 15; fire was set to retaliate against a federal informant); *United States v. Coleman Johnson*, W.D. VA No. 3:00CR00026 (Defendant convicted of using pipe bomb to kill pregnant ex-girlfriend to avoid having to pay child support); *United States v. Steven Green*, W.D. KY No. 5:06-CR-00019-TBR (Defendant convicted of murdering a family of four, including two children, and the rape and murder of their daughter); *United States v. Chevie Kehoe*, E.D. AR No. 97-243 (Defendant convicted of murdering of a family of three, including an 8-year old girl, in furtherance of a white supremacist racketeering; defendant disposed of victims by dumping them in a swamp); *United States v. Alexis Candelario-Santana*, D. PR No. 3:09-CR-00427-JAF (Defendant with 13 prior murder convictions convicted of another 20 murders, including the October 17, 2009 "Tombola Massacre," where eight people were killed and twenty wounded in a shooting at a bar); *United States v. Thomas Pitera*, E.D. NY No. 90-0424 (RR) (Defendant, a contract killer for the Mafia, convicted of six murders involving torture and dismembering); *United States v. Mohamed Rashed Daoud Al-'Owhali*, S.D. NY No. S6-98-cr-1023 (Defendant, an accomplice of Osama Bin Laden, convicted of organizing two bombings of American embassies in Africa, collectively killing 224 people and injuring more than 5,000); *United States v. Tommy Edelin*, D. D.C. No. 98-264 (Defendant ordered four murders as "drug kingpin" of DC-area gang known as the "1-5 Mob"; two victims were 14 and 19);  *United States v. Kenneth A. Tatum*, E.D. TX No. 2:99-CR-5 (Defendant, a member of the "Crips" gang, convicted of murdering three people, including a 63-year old retired minister; *United States v. Samuel Stephen Ealy*, W.D. VA No. 00-CR-104 (Defendant convicted of 1989 murder of a family of three); *United States v. Tyrone Williams*, S.D. TX No. 03-CR-221 (Defendant convicted of alien smuggling operation that led to 19 deaths of dehydration, overheating and suffocation in the back of the truck trailer he drove); *United States v. Zacarias Moussaoui*, E.D. VA No. 01-CR-455 (Defendant

15

## II.    CONCLUSION

For the reasons set forth herein and in his original motion, Mr. Tipton respectfully requests that this Court conclude that his convictions under Counts 3, 24, 25, 32, and 33 are covered offenses under Section 404 of the First Step Act and grant him reconsideration of his sentence in a manner consistent with capital jurisprudence.

---

conspired in the September 11, 2001, terrorist attacks on the World Trade Center and Pentagon, which killed more than 3,000); *United States v. John Richard Mayhew*, S.D. OH CR No. 0203-165 (Defendant murdered his ex-wife, her boyfriend, and his own 18-year old daughter, with whom he had incestuous relationship); *United States v. Michael Antonio Natson*, M.D. GA No. 4:05-CR-00021-CDL-GMF (Defendant, a military police officer, convicted of 2003 murder of a pregnant 23-year old Georgia Southern University student and leaving her remains in a remote part of Fort Benning, Georgia); *United States v. Jessie Con-Ui*, M.D. Pa. 13-CR-00123 (Defendant killed a federal correctional officer at the United States Penitentiary, while serving a life term for another murder).

16

-143-

Respectfully submitted on this, the 20th day of October, 2020.

*/s/Frederick R. Gerson*
Frederick R. Gerson
Durrette, Arkema, Gerson & Gill, PC
VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219
fgerson@dagglaw.com

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Gerald W. King, Jr.
Ga. Bar No. 140981
Jeffrey Lyn Ertel
Ga. Bar No. 249966
Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Admitted pro hac vice

Counsel for Richard Tipton, III.

17

## CERTIFICATE OF SERVICE

I certify that on this, the 20th day of October, 2020, the foregoing document

was served on all parties or their counsel of record though the CM/ECF system and

will be served electronically via email on the attorney listed below:

> Richard Cooke, Esq.
> U.S. Attorney's Office
> Eastern District of Virginia
> 2100 Jamison Avenue
> Alexandria, Virginia 22314
> Richard.Cooke@usdoj.gov

This 20th day of October, 2020.

*/s/Frederick R. Gerson*
Frederick R. Gerson
Counsel for Richard Tipton, III

18

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.                                                      Criminal No. 3:92cr68 (DJN)

JAMES H. ROANE, JR.,
Defendant.

**MEMORANDUM OPINION**

Convicted serial killer James H. Roane, Jr. ("Defendant" or "Roane") comes before the

Court with a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First

Step Act (ECF No. 17) in a last ditch effort to avoid the just punishment imposed on him for his

role in killing multiple people in furtherance of his drug enterprise. Defendant has challenged

his convictions and sentences on numerous occasions throughout the years. But each time they

survived appellate review. Defendant now seeks to latch onto laws passed to reduce the

sentencing disparities between non-violent crack and powder cocaine offenses as a vehicle to

reduce his sentences imposed for multiple drug-related murders. But those murders, and the

statute under which a jury convicted Defendant for them, have nothing to do with the penalties

for drug quantities that the First Step Act addressed. Because the First Step Act does not cover

the offenses for which a jury convicted Defendant, the Court will deny his Motion.

**I.    BACKGROUND[1]**

**A.    Factual Background**

Defendant, along with Richard Tipton ("Tipton") and Cory Johnson ("Johnson")

---

[1]    The Court takes these background facts from the Fourth Circuit's opinion in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), which recited the factual summary *in haec verba* from *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), the opinion on the defendants' direct appeal.

(collectively, the "partners"), ran a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. *Roane*, 378 F.3d at 389. The partners in the conspiracy obtained wholesale quantities of powder cocaine from suppliers in New York City, converted it into crack cocaine, divided it among themselves and then distributed it through a network of 30-40 street level dealers. *Id.* at 389-90. Typically, the partners took two-thirds of the proceeds realized from the street-level sales of their product. *Id.* at 390.

Over a short time in early 1992, the partners took part, in some form, in the murders of ten persons in the Richmond area. *Id.* These murders occurred "in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Id.* The murders described below directly implicated Defendant.

On January 4, 1992, Roane and Tipton drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. *Id.* Roane grabbed Talley and Tipton stabbed him repeatedly for three to five minutes. *Id.* Talley died from eighty-four stab wounds to his head, neck and upper body. *Id.*

On January 13, 1992, Roane and Tipton went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, and Tipton shot Moody twice in the back. *Id.* Roane chased down the fleeing Moody and stabbed him eighteen times, killing him. *Id.*

On January 14, 1992, Roane and Johnson located Peyton Johnson, another rival drug dealer, at a tavern. *Id.* Shortly after Roane left the tavern, Cory Johnson entered and fatally shot Peyton Johnson. *Id.*

On January 29, 1992, Roane pulled his car around the corner of an alley, got out and shot

2

Louis Johnson, who had threatened one of the partners while acting as a bodyguard for a rival drug dealer. *Id.* Roane first shot Louis Johnson, and then Cory Johnson and Lance Thomas ("Thomas") got out of Roane's car and shot Louis Johnson again. *Id.* Louis Johnson died from these gunshot wounds. *Id.*

On February 1, 1992, Roane, Johnson and Thomas went to the apartment of Torrick Brown, who had given Roane trouble. *Id.* After the three men knocked on the apartment door, Brown's half-sister opened the door and summoned Brown. *Id.* The three men opened fire with semiautomatic weapons, killing Brown and critically wounding his half-sister. *Id.*

### B.    Verdict and Sentencing

In January and February of 1993, United States District Judge James R. Spencer presided over the trial of Defendant and his co-conspirators. Defendant[2] faced capital murder charges for Murder in Furtherance of a Continuing Criminal Enterprise ("CCE") under 21 U.S.C. § 848(e)(1)(A) for three of these killings — Moody (Count Five), Peyton Johnson (Count Eight) and Louis Johnson (Count Eleven) (collectively, the "Capital Murder Counts" or "Capital Murder Convictions"). *Id.* at 391; (Second Superseding Indictment ("Indictment") (Dkt. No. 115) at 7-10). On February 3, 1993, the jury convicted him of all three Capital Murder Counts. 378 F.3d at 391. The jury also convicted Defendant of participating in a Conspiracy to Possess Cocaine Base with the Intent to Distribute, in violation of 21 U.S.C. § 846 (Count One), and engaging in a CCE, in violation of 21 U.S.C. § 848(a) (Count Two). *Id.*; (Indictment at 1-6.) Additionally, the jury convicted Defendant of five counts of Committing Acts of Violence in Aid of Racketeering ("VICAR"), in violation of 18 U.S.C. § 1959 (Counts Seven, Ten, Thirteen, Fourteen, Sixteen), and four counts of Using a Firearm in Relation to a Crime of Violence or a

---

[2]    The Court tried Roane, Tipton and Johnson along with four other defendants on a thirty-three-count superseding indictment.

3

-148-

Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Counts Six, Nine, Twelve, Fifteen). 378 F.3d at 392; (Indictment at 8-13). Finally, the jury convicted Defendant of one count of Possession of Cocaine Base with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Thirty-Two (the "Drug Distribution Count" or the "Drug Distribution Conviction")). 378 F.3d at 392; (Indictment at 21). Defendant's First Step Act Motion pertains only to the Capital Murder Counts and the Drug Distribution Count.

On February 16, 1993, following a penalty hearing on the Capital Murder Counts, the jury recommended that Defendant be sentenced to death for the murder of Moody. 378 F.3d at 392. On June 1, 1993, pursuant to 21 U.S.C. § 848(l), the Court sentenced Roane to death for Count Five. *Id.* Relevant here, the Court also sentenced Defendant to life imprisonment for each of the Capital Murder Convictions that he did not receive a death sentence — Counts Eight and Eleven. *Id.* Defendant also received a life imprisonment sentence for the CCE conviction in Count Two, life sentences for Counts Seven, Ten, Thirteen and Fourteen, and a forty-year term of imprisonment on Count Thirty-Two, the Drug Distribution Count, all to run concurrently with the other sentences imposed. *Id.*; (Dkt. No. 594).[3] [4]

---

[3]    The jury convicted Richard Tipton of six counts of Murder in Furtherance of a CCE (Counts Three, Seventeen, Eighteen, Nineteen, Twenty-Four, Twenty-Five); one count of participating in a Conspiracy to Possess Cocaine Base with Intent to Distribute (Count One); one count of engaging in a CCE (Count Two); eight counts of VICAR (Counts Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty); two counts of Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Offense (Counts Twenty, Twenty-Six); and two counts of Possession with Intent to Distribute Crack Cocaine (Counts Thirty-Two, Thirty-Three). (Dkt. No. 592.)

The jury recommended a death sentence as to each of Counts Three, Twenty-Four and Twenty-Five. In addition to the death sentences, the Court sentenced Tipton to sentences of life imprisonment for Counts Two, Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven and Twenty-Eight. Tipton received a sentence of forty years' imprisonment for Count Thirty-Two, thirty years' imprisonment for each of Counts Twenty-Nine and Thirty, twenty years' imprisonment for each of Counts Twenty-Six and Thirty-Three and five years' imprisonment for

4

The Court refused to order the execution on the grounds that Congress had neither directly authorized the means to carry out the death sentences, nor properly delegated to the Attorney General the authority to issue the implementing regulations that the Government invoked. *Id.* As a result, the Court stayed the execution of the death sentences until such time as Congress had authorized the means of execution. *Id.*

## C.      Post-Trial Proceedings

The defendants appealed their convictions and sentences and the Government cross-appealed the stay of the death sentences. *Id.* at 392. In a lengthy opinion, the Fourth Circuit analyzed and disposed of approximately sixty issues, including challenges by the defendants to aspects of the jury-selection process and both the guilt and penalty phases of the trial. *Tipton*, 90 F.3d 861. The Fourth Circuit rejected nearly all of the claims, affirming the convictions and sentences of all of the defendants, except that it vacated on double jeopardy grounds the drug conspiracy convictions under 21 U.S.C. § 846, finding that the CCE convictions in Count Two

---

Count Twenty. (Dkt. No. 592.)

4       The jury convicted Cory Johnson of seven counts of Murder in Furtherance of a CCE (Counts Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-Four, Twenty-Five); one count of participating in a Conspiracy to Possess Cocaine Base with Intent to Distribute (Count One); one count of engaging in a CCE (Count Two); eleven counts of VICAR (Counts Ten, Thirteen, Fourteen, Sixteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty); five counts of Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Offense (Counts Nine, Twelve, Fifteen, Twenty, Twenty-Six); one count of Distribution of Crack Cocaine (Count Thirty-One); and one count of Possession with Intent to Distribute Crack Cocaine (Count Thirty-Two). (Dkt. No. 593.)

The jury recommended a death sentence for all seven of Johnson's capital convictions. In addition to the death sentences, the Court sentenced Johnson to sentences of life imprisonment for Counts Two, Ten, Thirteen, Fourteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven and Twenty-Eight. Johnson received a sentence of forty years' imprisonment for Count Thirty-Two, thirty years' imprisonment for each of Counts Twenty-Nine and Thirty, twenty years' imprisonment for each of Counts Twelve, Fifteen, Sixteen, Twenty, Twenty-Six and Thirty-One and five years' imprisonment for Count 9. (Dkt. No. 593.)

5

-150-

precluded sentences for the drug conspiracy offenses. *Id.* at 903. Additionally, the Fourth

Circuit vacated the stay of the death sentences and remanded for the executions to proceed in

accordance with regulations promulgated by the Attorney General. *Id.* at 901-03.

Defendant continued to press his appeals. On June 1, 1998, Defendant filed a motion

under 28 U.S.C. § 2255 to vacate and set aside his sentences. *Roane*, 378 F.3d at 392. Chief

among his habeas claims, Defendant advanced an actual innocence claim with respect to the

Moody murder and argued that his trial attorney had rendered ineffective assistance of counsel in

his investigation and defense of the Moody murder charges. *Id.* at 393. The district court held

an evidentiary hearing on the habeas claims before issuing an opinion denying Defendant's

actual innocence claim, but granting his ineffective assistance of counsel claim. *Id.*

Consequently, the district court vacated Defendant's convictions on the Moody murder charges

— Counts Five (Murder in Furtherance of CCE), Six (Use of a Firearm in Relation to Crime of

Violence or Drug Trafficking Crime) and Seven (VICAR). *Id.* at 394. The Government

appealed the ineffective assistance of counsel ruling and Defendant cross-appealed certain claims

resolved against him. *Id.* Notably, Defendant did not appeal the denial of his actual innocence

claim. *Id.* at 394 n.3.

The Fourth Circuit ruled against Defendant on all accounts. Specifically, the court

affirmed on all of the grounds raised by Defendant and reversed the grant of relief based on

ineffective assistance of counsel. *Id.* at 408-12. In so ruling, it reversed the vacatur of

Defendant's convictions on Counts Five, Six and Seven. *Id.* at 412.

In 2009, Defendant filed an application with the Fourth Circuit to file a successive

§ 2255 petition on actual innocence grounds. The Fourth Circuit denied his request. *In re James

Roane, Jr.,* No. 09-8 (4th Cir.), ECF No. 24. On May 22, 2020, Defendant filed yet another

6

application with the Fourth Circuit for a successive § 2255 petition pursuant to the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). The application remains pending, as the Fourth Circuit placed the case in abeyance pending its decision in *United States v. Taylor*. *In re James Roane, Jr.*, No. 20-7 (4th Cir.), ECF Nos. 2, 18.[5]

## D.    Defendant's First Step Act Motion

On July 22, 2020, Defendant filed the instant motion under § 404 of the First Step Act, asking the Court to reduce his sentences for the Capital Murder Counts and the Drug Distribution Count. (Def.'s Mot. for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act ("Def.'s Mot.") (ECF No. 17).) Defendant argues that these convictions constitute covered offenses under the First Step Act, because the Fair Sentencing Act modified the statutory penalties for §§ 841 and 848, and the First Step Act allows the Court to retroactively impose those modified statutory penalties. (Def.'s Mot. at 2-5.) Defendant argues that the statutory maximum under § 848 "was increased to a death sentence as a result of his possession with intent to distribute cocaine base conviction that would no longer subject him to the death penalty." (Def.'s Mot. at 3-4.) Further, Defendant claims that, because his Count Two CCE conviction rested on his Drug Distribution Conviction, and his Capital Murder Convictions

---

[5]    On October 14, 2020, the Fourth Circuit decided *United States v. Taylor*, holding that attempted Hobbs Act robbery does not a "crime of violence" upon which a § 924(c) conviction can be predicated. __ F.3d __, 2020 WL 6053317, at *5 (4th Cir. Oct. 14, 2020). However, the Fourth Circuit has not yet ruled on Defendant's application to file a successive § 2255 petition.

In any event, *Taylor* has no impact on Defendant's First Step Act Motion. Neither the Capital Murder Convictions nor the Drug Distribution Convictions were predicated on an attempted robbery or, more generally, a crime of violence. Indeed, Defendant does not attack the counts at issue here in his proposed successive § 2255 petition. *In re James Roane, Jr.*, Case No. 20-7 (4th Cir.), ECF No. 2-2 (moving to vacate his convictions under 18 U.S.C. § 924(c) in Counts Six, Nine, Twelve and Fifteen). Although in his proposed § 2255 petition he argues that his Capital Murder Convictions cannot form the predicates for his § 924(c) convictions, he does not attack the convictions or sentences for the Capital Murder Counts. *Id.*

7

rested on his CCE conviction, then his Capital Murder Convictions must be covered offenses under the First Step Act. (Def.'s Reply in Supp. of Mot. for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act ("Def.'s Reply") (ECF No. 60) at 2-3.) At bottom, then, Defendant claims that his Drug Distribution Conviction pervades his Capital Murder Convictions, bringing his Capital Murder Convictions under the coverage of the First Step Act.

Because his convictions constitute covered offenses under the First Step Act, Defendant claims that this entitles him to "complete review on the merits," which includes a consideration of the sentencing factors in 18 U.S.C. § 3553(a). (Def.'s Mot. at 5.) To that end, Defendant devotes the bulk of his brief to arguing that the sentencing factors warrant a reduced sentence. Specifically, Defendant advances his actual innocence claim with respect to the murder of Douglas Moody, the subject of Count Five. (Def.'s Mot. at 9-16.) Further, Defendant argues that his history militates in favor of a sentence reduction, specifically his neglectful and abusive childhood. (Def.'s Mot. at 17-33.) Additionally, Defendant argues that he suffers from brain damage, warranting a reduced sentence. (Def.'s Mot. at 33-40.) Finally, Defendant argues that he has changed for the good in prison and his discipline record reflects good conduct over the course of his incarceration, weighing in favor of a sentence reduction. (Def.'s Mot. at 40-45.) Because some of his sentences warrant reduction, and his multiple sentences constitute a complete sentencing package, Defendant claims that the entire sentencing package contains fatal deficiencies. (Def.'s Mot. at 45-49.) To reach this conclusion, Defendant argues that several of his convictions are invalid, despite the Fourth Circuit only invalidating one conviction to date following multiple appeals. (Def.'s Mot. at 45-49.) Because these invalid convictions infect the entire sentencing package, Defendant argues that the Court must conduct a full and complete resentencing. (Def.'s Mot. at 50-52.) Accordingly, Defendant requests that the Court grant an

8

evidentiary hearing regarding the imposition of a reduced sentence on the Drug Distribution Conviction and the two Capital Murder Convictions that carry life sentences. (Def.'s Mot. at 53.) Additionally, Defendant asks the Court to order a resentencing hearing before a jury on Count Five — the Capital Murder Conviction for which he received the death penalty. (Def.'s Mot. at 53.)

On August 28, 2020, the Government filed its opposition to Defendant's Motion, primarily arguing that his convictions under § 848(e) do not constitute covered offenses and, therefore, the Court may not reduce his sentence. (Govt's Opp. to Def.'s First Step Act Mot. ("Govt's Resp.") (ECF No. 43).) On October 2, 2020, Defendant filed his reply, rendering this matter now ripe for review.

## II.    STATUTORY BACKGROUND

Defendant's motion relies on the interplay between three statutes, each of which plays a role in the Court's analysis. First, 18 U.S.C. § 3582(c)(1)(B) grants the Court the authority to consider modifying Defendant's sentence. Second, the Fair Sentencing Act provides the substantive relief sought in Defendant's motion. Third, the First Step Act allows the Court to apply the Fair Sentencing Act retroactively. Essentially, the Fair Sentencing Act altered the sentences applicable to certain offenses and the First Step Act provides the vehicle by which the Court may apply those altered sentences.

Neither party has identified any binding authority from the Fourth Circuit or the Supreme Court (or persuasive authority from other circuit courts) interpreting the relevant portions of these statutes and their interplay with each other as applied to these facts and counts of conviction. Thus, the Court must primarily engage in an exercise of statutory interpretation. "The starting point of any issue of statutory interpretation . . . is the language of the statute

9

itself." *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007). "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). Because none of the three statutes at issue suffers from ambiguity, and because their relationships to each other and the statutes under which the jury convicted Defendant lack ambiguity as well, the Court's analysis begins and ends with the text.

## A.    18 U.S.C. § 3582(c)(1)(B)

Courts operate under a "baseline rule of sentence finality," which states that "sentences may not be modified once imposed." *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). Congress has provided a "narrow exception to finality" in 18 U.S.C. § 3582(c)(1)(B). *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019). This statute provides that "[t]he court may not modify a term of imprisonment once it has been imposed except that, in any case, the court may modify an imposed term of imprisonment *to the extent otherwise expressly permitted by statute*." 18 U.S.C. § 3582(c)(1)(B) (emphasis added).

This general rule of finality guides the Court in its interpretation of the scope of the other specific statutes in this case. By the plain language of § 3582(c)(1)(B), the Court may modify Defendant's sentences only as *expressly permitted* by the Fair Sentencing Act and the First Step Act. *See Wirsing*, 943 F.3d at 184 ("The First Step Act thus fits under the narrow exception to finality provided in § 3582(c)(1)(B) because it expressly permits the court to modify a term of imprisonment." (quotations omitted)). Accordingly, the Court turns to those statutes.

## B.    The Fair Sentencing Act

The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), provided

10

the substantive change that Defendant claims entitles him to a reduction of his sentences for his murder convictions. The Fair Sentencing Act addressed a sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger mandatory minimum sentences. *Wirsing*, 943 F.3d at 178. The disparity originated in a statute passed in 1986 titled the Anti-Drug Abuse Act of 1986. *Kimbrough v. United States*, 552 U.S. 85, 95 (2007) (citing Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207). The Anti-Drug Abuse Act introduced mandatory minimums for drug offenses tied to specific weights of particular drugs. Anti-Drug Abuse Act § 1002, 100 Stat. at 3207-2 to -4 (codified at 21 U.S.C. § 841(b)(1)). A defendant convicted of an offense involving 5 kilograms of cocaine or 50 grams of crack cocaine faced a ten-year mandatory minimum. *Id.* § 1002, 100 Stat. at 3207-2. Similarly, the statute mandated a five-year minimum sentence for a conviction of 500 grams or more of powder cocaine or 5 grams or more of crack cocaine. *Id.* § 1002, 100 Stat. at 3207-3. Thus, the Anti-Drug Abuse Act provided that "a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine." *Kimbrough*, 552 U.S. at 91.

This "100-to-1 ratio came under heavy criticism." *Wirsing*, 943 F.3d at 177 (citing *Dorsey v. United States*, 567 U.S. 260, 268 (2012) and *Kimbrough*, 552 U.S. at 97-100). Such criticism stemmed from the fact that "research showed the relative harm between crack and powder cocaine [was] less severe than 100 to 1." *Dorsey*, 567 U.S. at 268. Additionally, "the public had come to understand sentences embodying the 100-to-1 ratio as reflecting unjustified race-based differences." *Id.* Finally, the disparity "mean[t] that a major supplier of powder cocaine [could] receive a shorter sentence than a low-level dealer who b[ought] powder from the supplier but then convert[ed] it to crack." *Kimbrough*, 552 U.S. at 95.

11

-156-

In 2010, Congress passed the Fair Sentencing Act to reduce this disparity. *See United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013) ("Congress enacted the Fair Sentencing Act [] in response to extensive criticism about the disparity in sentences between crack offenses and powder cocaine offenses."). In § 2, the Fair Sentencing Act reduced the statutory minimums for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums. *Id.* Specifically, Section 2 amended 21 U.S.C. § 841(b)(1) to raise the amount from 5 grams to 28 grams for the 5-year minimum, and from 50 grams to 280 grams for the 10-year minimum sentence. Fair Sentencing Act § 2, 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)). Additionally, in Section 3, the Fair Sentencing Act eliminated the mandatory minimum sentence for "simple possession" of crack cocaine. *Id.* § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

Although the Fair Sentencing Act reduced the sentencing disparity in offenses involving the possession, production or distribution of crack cocaine, it did not amend the statutory penalties for violent crimes in furtherance of trafficking crack cocaine. On the contrary, rather than reducing the statutory penalties for violent drug offenses, Congress instructed the United States Sentencing Commission to amend the sentencing guidelines to increase the offense levels "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense." *Id.* § 5, 124 Stat. at 2373. Likewise, Congress directed the Sentencing Commission to increase the offense levels based on the defendant's role and other aggravating factors, including that the "defendant committed the drug trafficking offense as part of a pattern of criminal conduct engaged in as a livelihood." *Id.* at § 6, 124 Stat. at 2373-4. The statute's language clearly demonstrates Congress' intent to reduce the penalties for non-violent crack cocaine offenses without commensurate reductions for violent crack

12

cocaine offenses.

Later, the Supreme Court held that the new penalty provisions in the Fair Sentencing Act applied to all crack cocaine offenders sentenced on or after August 3, 2010, even for offenses committed before that date. *Dorsey*, 567 U.S. at 264. However, the modifications to the statutory minimum sentences did "not apply retroactively to defendants who both committed crimes and were sentenced for those crimes before August 3, 2010." *Black*, 737 F.3d at 287.

### C.    The First Step Act

In December 2018, Congress remedied the non-retroactivity of the Fair Sentencing Act with the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. "On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act." *Wirsing*, 943 F.3d at 180. Specifically, Section 404 made the Fair Sentencing Act's modifications to crack cocaine offenses retroactive for defendants convicted before its enactment.

Section 404 has three subsections. Subsection 404(a) defines which offenses the First Step Act's imposition of retroactivity covers:

> (a) DEFINITION OF COVERED OFFENSE.— In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (citation omitted), that was committed before August 3, 2010.

First Step Act, § 404(a), 132 Stat. at 5222. For those defendants sentenced for a covered offense, the next subsection provides how the Court may reduce that sentence:

> (b) DEFENDANTS PREVIOUSLY SENTENCED.— A court that imposed a sentence for a covered offense, may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (citations omitted) were in effect at the time the covered offense was committed."

*Id.* § 404(b), 132 Stat. at 5222. The final subsection of § 404 limits those defendants who may

13

bring a motion and makes clear that the Court retains discretion whether to grant a motion for a

sentence reduction:

> (c) LIMITATIONS.— No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act (citations omitted) or if a previous motion made under this section to reduce the sentence was, after the date of the enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.* § 404(c), 132 Stat. at 5222. Thus, Section 404 of the First Step Act defines which sentences

the Court may reduce and provides the procedure and authority to apply the Fair Sentencing

Act's crack cocaine penalties retroactively for defendants who committed their covered offenses

before August 3, 2010.

### III.    ANALYSIS

Defendant argues that the First Step Act grants the Court authority to modify his

sentences for offenses committed under § 848(e) and § 841. The Court entertains this request for

a modified sentence mindful of the "baseline rule of sentence finality," *Chambers*, 956 F.3d at

671, and that "[t]he law closely guards the finality of criminal sentences against judicial 'change

of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010); 18 U.S.C. §3582(b).

Clearly, Defendant's desire to have the sentences reduced for his Capital Murder Convictions

drives his request, so those offenses likewise will direct the Court's analysis. Thus, Defendant's

motion first and foremost requires the Court to determine whether Defendant's convictions for

Murder in Furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C.

§ 848(e)(1)(A), constitute covered offenses under the First Step Act.

The Court must first address the threshold covered offense question, because "eligibility

[for a sentence modification] turns on the proper interpretation of a 'covered offense.'" *Wirsing*,

14

943 F.3d at 185; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) ("[T]he existence of a 'covered offense' is a threshold requirement under the [First Step] Act."). By its own terms, the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Sections 2 or 3 of the Fair Sentencing Act of 2010." First Step Act, § 404(a), 132 Stat. 5222. Accordingly, eligibility turns on which statute Defendant violated and whether Section 2 or 3 of the Fair Sentencing Act modified the statutory penalties for that statute. *See United States v. Woodson*, 962 F.3d 812, 816 (4th Cir. 2020) (emphasizing that "covered offense" inquiry turns on change to statutory penalties for the defendant's statute of conviction). In conducting its covered offense inquiry, the Court first will analyze Defendant's particular convictions; then, it will conduct a textual analysis of the statute of those convictions; and, finally, it will analyze the potential application of Defendant's reading of the statute.

Because the Court ultimately finds that Defendant's Capital Murder Convictions do not constitute covered offenses, the Court will then determine whether Defendant's Drug Distribution Conviction nevertheless warrants a sentence reduction.

## A.      Defendant's Capital Murder Convictions under § 848(e).

Defendant argues that his Capital Murder Counts qualify as covered offenses under the First Step Act. In each of those counts, the jury convicted Defendant of violating 21 U.S.C. § 848(e)(1)(A). To determine whether Defendant's statute of conviction for these counts constitutes a covered offense, the Court will first examine which statutes the relevant provisions of the Fair Sentencing Act affected. Section 2 of the Fair Sentencing Act, titled "Cocaine Sentencing Disparity Reduction," amended 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(iii), 960(b)(1)(C) and 960(b)(2)(C). Additionally, Section 3 of the Fair Sentencing Act, titled "Elimination of Mandatory Minimum Sentences for Simple Possession," amended 21 U.S.C.

15

§ 844(a). Thus, together, Sections 2 and 3 expressly affected three criminal statutes: 21 U.S.C. § 841(b)(1), 21 U.S.C. § 960(b) and 21 U.S.C. § 844(a). Violations of these three statutes constitute "covered offenses" under § 404(a) of the First Step Act. However, § 848 proves conspicuously absent from Sections 2 and 3 of the Fair Sentencing Act. And for good reason: as § 848 targets dangerous drug kingpins while the Fair Sentencing Act seeks to address the sentencing disparity between low-level crack dealers and large-scale powder cocaine distributors.

Given that § 3582(c)(1)(B) permits modifications to a sentence only when "expressly permitted" by statute or Rule 35, and only then "to the extent" that the statute expressly provides, this absence provides strong evidence that a violation of § 848(e)(1)(A) does not constitute a "covered offense." 18 U.S.C. § 3582(c)(1)(B); *see United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."). However, because some parts of the CCE statute reference the statutes that the Fair Sentencing Act did modify, the Court will make further inquiry into the question. Armed with an understanding of what statutes the Fair Sentencing Act affected, the Court can now turn to an analysis of whether the Fair Sentencing Act affected the statutory penalties for Defendant's statute of conviction. Specifically, the Court must identify with particularity Defendant's statute of conviction and then address Defendant's arguments as to why his particular convictions qualify as covered offenses.

i.     **Section 848(e)(1)(A) as a Standalone Offense Constitutes Defendant's Statute of Conviction.**

In identifying with particularity Defendant's statute of conviction, the Court must determine whether to analyze § 848 as a whole or specifically § 848(e)(1)(A) as Defendant's

16

statute of conviction. Indeed, the Court's review of § 848 and the relevant case law indicates that the Fair Sentencing Act potentially modified the sentencing penalties for some § 848 convictions, but not all. For the reasons stated below, the Court finds that § 848(e)(1)(A) constitutes Defendant's statute of conviction, rendering the case law regarding other sections of § 848 inapposite.

Section 848 penalizes engaging in a "continuing criminal enterprise," which occurs if:

(1) he violates a provision of this subchapter or subchapter II the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c). Section 848 contains three substantive provisions, each of which provides for its own criminal liability and penalties. 21 U.S.C. § 848(a), (b), and (e). Section 848(a) provides for a 20-year mandatory-minimum sentence for "any person who engages in a continuing criminal enterprise," and increases that mandatory-minimum to 30 years if the person has a previous drug conviction. 21 U.S.C. § 848(a). Section 848(b) mandates a life sentence for any principal of a sufficiently large continuing criminal enterprise, as measured in terms of either drug quantity or gross receipts. 21 U.S.C. § 848(b). Notably, the drug quantity necessary to trigger the mandatory life sentence hinges on the amount in 21 U.S.C. § 841(b)(1)(B). Thus, Section 2 of the Fair Sentencing Act may have an indirect effect on the statutory penalties of 21 U.S.C. § 848(b).

However, the possibility that the First Step Act may implicate § 848(b) does not help

17

Defendant, because the jury convicted Defendant of violating § 848(e). And under Fourth Circuit precedent, § 848(e) acts as an entirely self-contained subsection of the statute. *See United States v. NJB*, 104 F.3d 630, 635 (4th Cir. 1997) ("In sum, because § 848(e) clearly sets forth a separate substantive violent offense, the Government's certification of this fact did not constitute error."). Indeed, § 848(e)(1)(a) clearly defines the conduct that it prohibits and the penalties for violating it. Moreover, other provisions in a previous version of the statute referenced § 848(e) as a distinct offense, which the Fourth Circuit has determined "clearly expresses Congress' intent that § 848(e) be a separate crime." *Id.* at 633. Thus, for purposes of Defendant's First Step Act motion, the Court finds that § 848(e)(1)(A) — and not § 848 broadly — constitutes his statute of conviction.

Focusing then on Defendant's statute of conviction, the Court finds that § 848(e)(1)(A) does not constitute a covered offense within the meaning of the First Step Act. Section 848(e)(1)(A) provides that:

> any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

21 U.S.C. § 848(e)(1)(A). This statute clearly defines the conduct that it prohibits — killing in furtherance of any one of three distinct predicate offenses — and the statutory penalties for engaging in the prohibited conduct — death or life imprisonment with a mandatory minimum of 20 years' imprisonment. The Fair Sentencing Act did not change either. Accordingly, the Court starts with the premise that, on its face, neither sections 2 nor 3 of the Fair Sentencing Act directly altered the statutory penalties in § 848(e) and, therefore, the First Step Act does not directly apply. However, in arguing that his Capital Murder Convictions constitute covered

18

-163-

offenses, Defendant relies on the specific facts underlying his convictions. Yet, the facts underlying Defendant's convictions cut against a finding that his Capital Murder Convictions constitute covered offenses under the First Step Act.

ii.    **Defendant's Conviction Under § 848(e)(1)(A) Did Not Directly Rely on a Violation of § 841(b)(1)(A).**

Defendant argues that the First Step Act covers his convictions under § 848(e), because his "statutory maximum under § 848 was increased to a death sentence as a result of his possession with intent to distribute cocaine base conviction that would no longer subject him to the death penalty." (Def.'s Mot. at 3-4.) Defendant further claims that "[b]ecause conviction of an offense punishable under § 841(b)(1)(A) is incorporated as an element of § 848(e)(1)(A), Mr. Roane's § 848 convictions would no longer be subject to the death penalty." (Def.'s Mot. at 4.) In addition to the fact that his argument stretches the First Step Act well beyond Congress' intended reach, as discussed below, his argument plainly misstates the facts of his § 848(e)(1)(A) convictions. In truth, Defendant's § 848(e)(1)(A) convictions had no basis in § 841(b)(1)(A) and did not incorporate § 841(b)(1)(A) as an element.

As the statute itself makes clear and the Fourth Circuit has noted, §848(e)(1)(A) has three distinct prongs. *United States v. Hager*, 721 F.3d 167, 179-80 (4th Cir. 2013). A review of the record clearly demonstrates that Defendant's convictions rested on the first prong — engaging in or working in furtherance of a continuing criminal enterprise. First, in the Indictment, the Capital Murder Counts all charge Defendant with a specific killing "while engaged in and working in furtherance of a Continuing Criminal Enterprise." (Indictment at 7, 9-10.) The Counts make no mention of § 841(b)(1)(A). Second, the Court's instructions to the jury with respect to these Counts make no reference to § 841(b)(1)(A). Instead, the Court informed the jurors that the Indictment charged Defendant with a killing "while engaged in or working in

19

-164-

furtherance of a continuing criminal enterprise." (Instruction No. 20.) Importantly, the jury instruction providing the statute of offense appears below, exactly as the jury received it:

Title 21, United States Code, Section 848(e)(1)(A) provides in pertinent part that:

any person engaging in or working in the furtherance of a continuing criminal enterprise . . . who intentionally kills or counsels, commands, induced, procures, or causes the intentional killing of an individual and such killing results

is guilty of an offense against the United States.

(Instruction No. 21.) Indeed, the jury instructions *expressly omitted* the statute's reference to § 841(b)(1)(A). The Court further instructed the jury on the elements of the offense, referencing only the continuing criminal enterprise and, again, omitting any reference to § 841(b)(1)(A). Finally, on the verdict form returned by the jury for the Capital Murder Counts, the jury found Defendant guilty of "Killing of [victim's name] while Engaged In or Working In Furtherance of a Continuing Criminal Enterprise." (Instruction No. 21.) Again, no mention of § 841(b)(1)(A) existed. Simply put, Defendant's convictions in no way rest on the second prong — engaging in an offense punishable under § 841(b)(1)(A).

As the record makes clear, Defendant's conviction on Count Two for engaging in a CCE served as the predicate offense for his Capital Murder Convictions. And, neither the Fair Sentencing Act nor the First Step Act extinguished his criminal liability for his CCE conviction under § 848(a). A CCE conviction requires proof that the defendant "violate[d] any provision of this subchapter or subchapter II the punishment for which is a felony." 21 U.S.C. § 848(c). In finding Defendant guilty of the CCE violation in Count Two, the jury found that Defendant had committed felony violations of federal narcotics laws, including § 841(a). That is, in Count Thirty-Two, the jury found beyond a reasonable doubt that Defendant had possessed with the intent to distribute, and conspired to possess with the intent to distribute, more than 50 grams of

20

crack cocaine. The jury's findings would still lead to convictions of felony federal narcotics laws, including § 841(a), even after the Fair Sentencing Act. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (providing for a sentence of 5 to 40 years' imprisonment for more than 28 grams of crack cocaine); *United States v. Venable*, 943 F.3d 187, 193 (4th Cir. 2019) (noting how the offenses reclassified under Fair Sentencing Act remain felonies). The Fair Sentencing Act did not change the fact that Defendant would still have been found guilty of federal narcotics laws, only that the statutory penalties for such stand-alone convictions based on those violations would have differed.

The verdicts in this case make clear that the jury found beyond a reasonable doubt that Defendant had committed the predicate offenses for both § 848(a) and § 848(e)(1)(A), and any modification to the statutory penalties of the underlying offenses does not change that finding. *Cf. United States v. Hopkins*, 310 F.3d 145, 153 (4th Cir. 1997) ("Moreover, a defendant's conviction under § 924(c) does not depend on his being convicted — either previously or contemporaneously — of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt." (internal quotations omitted)). In short, Defendant's possession with intent to distribute more than 50 grams of crack can still serve as a predicate for his CCE conviction, regardless of his sentencing exposure for a separate charge for that conduct. Consequently, the jury necessarily found beyond a reasonable doubt that Defendant had committed all of the elements of an offense for engaging in a continuing criminal enterprise, in violation of § 848(a), regardless of the statutory penalties for each element. Likewise, the jury found that Defendant had committed all of the elements necessary to prove a violation § 848(e)(1)(A), regardless of the statutory penalties for each element standing alone. And Defendant received the challenged sentences for murdering individuals in furtherance of a

21

continuing criminal enterprise, not for violating the federal narcotics laws. Thus, the statutes modified by the Fair Sentencing Act did not form the predicate for Defendant's convictions under § 848(e)(1)(A).

### iii. Defendant's § 848(e)(1)(A) Convictions Did Not Indirectly Rely on a Violation of § 841(b)(1)(A).

Aside from incorrectly arguing that § 841(b)(1)(A) formed the predicate for his Capital Murder Convictions, Defendant also asks the Court to connect several dots to find that his convictions under § 848(e)(1)(A) constitute covered offenses. (Def.'s Reply at 2.) Specifically, Defendant offers two alternative paths for the Court to reach this conclusion. First, Defendant argues that the Fourth Circuit found that Defendant's § 848(e)(1)(A) conviction included as a lesser offense his conviction under § 846 in Count One, vacating his Count One conviction on Double Jeopardy grounds.[6] (Def.'s Reply at 2.) His § 846 conviction, in turn, rested on a conspiracy to violate § 841(b)(1)(A). According to Defendant, because the Fair Sentencing Act modified the statutory penalties for violations of § 841(b)(1)(A), it modified the statutory penalties for violations of § 846 and, therefore, modified the statutory penalties for violations of § 848(e)(1)(A). In sum, Defendant argues that his "§ 848(e)(1)(A) convictions did indeed rest on proof of a violation of § 841(b)(1)(A)." (Def.'s Reply at 2.)

Alternatively, Defendant argues that his § 848(e)(1)(A) conviction relied on his § 848(a) conviction in Count Two.[7] (Def.'s Reply at 2.) His § 848(a) conviction, in turn, rested on violations of § 841(b)(1)(A). (Def.'s Reply at 2.) Again, according to Defendant, this modified the statutory penalties for violations of § 848(a) and, therefore, modified the statutory penalties

---

[6]   Notably, the Fair Sentencing Act did not expressly modify the statutory penalties for violations of § 846.

[7]   Likewise, the Fair Sentencing Act did not expressly modify the statutory penalties for violations of § 848(a).

22

for violations of § 848(e)(1)(A). (Def.'s Reply at 2.) In essence, Defendant argues that his Capital Murder Convictions necessarily flow from his Drug Distribution Convictions, rendering them covered by the First Step Act.

However, this argument ignores the fact that § 848(e)(1)(A) operates as a stand-alone offense. *See NJB*, 104 F.3d at 633 (holding that the statute "clearly expresses Congress' intent that § 848(e) be a separate crime"). Importantly, this also ignores the fact that Congress created distinct penalties for violations of § 841 on the one hand, and violations of § 848 on the other. *Garrett v. United States*, 471 U.S. 773, 794-95 (1985) (allowing cumulative sentences for § 841 and § 848 convictions). Indeed, the Supreme Court in *Garrett* held "that Congress intended separate punishments for the underlying substantive predicates and for the CCE offense." *Id.* at 795. Because Congress created separate punishments, modifications to the statutory penalties in § 841 do not necessarily result in modifications to the statutory penalties in § 848. Moreover, as described above, the jury found beyond a reasonable doubt that Defendant had committed all of the elements of § 848(e)(1)(A), regardless of the statutory penalties that those elements could expose Defendant to when charged as separate offenses.

Defendant's argument attempts to rewrite the definition of a covered offense to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, or a violation of a Federal criminal statute that rests on the violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." Congress did not write the First Step Act this broadly. Instead, Congress limited covered offenses to those discreet offenses whose statutory penalties the Fair Sentencing Act modified. The following textual analysis of the statute confirms the conclusion that Congress did not intend the First Step Act to reach so broadly as to

23

cover all offenses related to crack cocaine, especially deadly offenses.

**B.      A Textual Analysis of the Statutes at Issue Demonstrates That Congress Did Not Intend to Cover § 848(e)(1)(A) Convictions Under the First Step Act.**

In analyzing the texts of the statutes at issue, it becomes clear that Congress did not intend for the First Step Act to cover offenses under § 848(e)(1)(A). The structure of the Fair Sentencing Act further evinces this intent. Likewise, the general Savings Statute confirms that the First Step Act does not cover Defendant's murder convictions.

**i.      Congress Clearly Did Not Intend for the First Step Act to Cover Convictions Under § 848(e).**

Congress' clearly expressed intent with respect to both § 848(e)(1)(A) and the Fair Sentencing Act directly contradicts Defendant's argument for application of the First Step Act to § 848(e)(1)(A). Congress enacted § 848 to combat violent drug traffickers. "A common-sense reading of [the definition of a continuing criminal enterprise] reveals a carefully crafted prohibition aimed at a special problem. This language is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett*, 471 U.S. at 781. Conversely, the Fair Sentencing Act aimed to ameliorate a disparate sentencing scheme for those lieutenants and foot soldiers (but not the top brass) serving sentences for possession and distribution (but not for violence). *See, e.g., Kimbrough*, 552 U.S. at 98 (noting that the disparate sentencing scheme ran contrary to the "goal of punishing major drug traffickers more severely than low-level dealers"); *Dorsey*, 567 U.S. at 269-70 (noting that Congress enacted the Fair Sentencing Act in response to, among other problems, the disproportionate treatment of low-level dealers and major drug traffickers). And in passing the First Step Act, "Congress's clear intent was to apply the Fair Sentencing Act to pre-Fair Sentencing Act offenders, including those who were heretofore ineligible for such relief." *Wirsing*, 943 F.3d at 186.

Defendant did not simply deal drugs. Defendant dealt drugs, managed other drug dealers

24

and *murdered others in furtherance of his drug dealing.* Nothing in the three statutes above indicates that Congress intended to reduce the sentences for lethal drug dealers. In fact, the Fair Sentencing Act's instructions to *increase* the guidelines for violent drug crimes clearly demonstrates the opposite intent of that which Defendant seeks.

This conclusion becomes even stronger in light of the fact that Congress must "expressly" provide for any exceptions to the narrow rule of sentencing finality. Defendant asks the Court to shoehorn a stretched implication into a narrow exception to allow a serial murderer to use the First Step Act to reduce his murder sentences, all in contradiction of the Fair Sentencing Act's clear intent. *See Chambers*, 956 F.3d at 676 (Rushing, J., dissenting) ("As the text makes clear, Congress's concern in Section 404 was to extend the cocaine sentencing provisions of the Fair Sentencing Act retroactively, not to provide a general opportunity to collaterally attack a final sentence.").

### ii. The Structure of The First Step Act Demonstrates that It Does Not Apply to Defendant's Convictions.

The First Step Act's structure directs its application in a manner that demonstrates its inapplicability to Defendant's convictions. The text indicates that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act, § 404(b). Put simply, if a defendant received a sentence before the Fair Sentencing Act that was subject to shorter statutory penalties after the Fair Sentencing Act, then the Court may now — in its discretion — impose a shorter sentence. Here, that is not possible.

If Defendant had been convicted of § 848(e)(1)(A) after the passage the Fair Sentencing Act, his sentences on the Capital Murder Counts still would have subjected him to either a sentence of death or life imprisonment with a mandatory minimum of 20 years' imprisonment.

25

The Fair Sentencing Act did not alter that a jury would render his sentence on these Counts. And, nothing in sections 2 or 3 of the Fair Sentencing Act would have changed the instructions or evidence given to the jury in the penalty phase. Moreover, unlike a covered offense under § 841, the Court here would have no new statutory penalties on which to base a reduced sentence. In sum, nothing in sections 2 or 3 of the Fair Sentencing Act would have changed Defendant's sentencing exposure on his § 848(e)(1)(A) convictions. This precludes the Court from imposing a reduced sentence "as if" the Fair Sentencing Act had been in effect. If the possibility of a reduced sentence for an offense does not exist, then the "reduced sentence" and "as if" provisions in the First Step Act have no meaning. But Congress chose to include these provisions, and this Court must "give effect to Congress' choice" to include the provisions. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 354 (2013); *United States v. Menasche*, 348 U.S. 528 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section."). Consequently, the Court will not interpret the statute in a way that essentially reads the "reduced sentence" and "as if" provisions out of the statute. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 137 (2007) (rejecting an interpretation that would render a statutory provision "a dead letter"). The fact that the Court cannot impose a reduced sentence under the Fair Sentencing Act supports the conclusion that Defendant's § 848(e)(1)(A) convictions do not constitute covered offenses.

### iii.    The Savings Statute Renders the Penalties for Defendant's § 848(e)(1)(A) Convictions Unchanged.

The Government argues that the Savings Statute precludes a finding that Defendant's Capital Murder Convictions constitute covered offenses. (Govt's Resp. at 23.) The Court agrees.

26

The general Savings Statute provides in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. First, neither the First Step Act nor the Fair Sentencing Act expressly provided for the release or elimination of any penalty or liability incurred under § 848(e)(1)(A), so the Court starts with the presumption that neither Act had the effect of doing so. Yet, even under Defendant's theory that the modifications of the penalties in § 841(a)(1) work their way up the chain to modify the penalties of § 848(e), the chain breaks under the weight of the Savings Statute.

The Savings Statute comes into play with respect to the reduced penalties for crack offenses, because "[c]ase law makes clear that the word 'repeal' applies when a new statute simply diminishes the penalties that the older statute set forth." *Dorsey*, 567 U.S. at 272; *see also United States v. Bullard*, 645 F.3d 237, 248 (4th Cir. 2011) ("But we have squarely held that although § 109 specifically refers only to repealed statutes, it also applies to statutes changed by amendment." (internal quotations omitted)). Accordingly, the Fair Sentencing Act "repealed" § 841(a)(1) and § 841(b)(1) and replaced them with different statutory penalties.

In examining the effect of a later statute under the Savings Statute, Congress need not use any particular magic words to extinguish liability or penalties, because the Savings Statute "cannot justify a disregard of the will of Congress as manifested either expressly or by *necessary implication* in a subsequent enactment." *Dorsey*, 567 U.S. at 274 (internal quotations omitted) (emphasis in original). Neither the Fair Sentencing Act nor the First Step Act expressly provided

27

-172-

that it would extinguish liability incurred under § 841(a)(1). Likewise, neither necessarily implied that they would extinguish liability incurred under § 841(a)(1). Instead, they altered the statutory penalties but not criminal liability. Thus, under the Savings Statute, neither statute could have the effect of extinguishing criminal liability for violations of § 841(a)(1). *See United States v. Stitt*, 552 F.3d 345, 353 (4th Cir. 2008) (explaining that "under the Savings Statute, a liability that arises under a later-repealed statute is preserved despite repeal and may be enforced by a post-repeal action." (internal quotations omitted)).

Consequently, Defendant's criminal liability incurred for violations of § 841(a)(1) in Count Thirty-Two stands. Defendant's criminal liability incurred for violations of § 848(a) for engaging in a continuing criminal enterprise in Count Two — based in part on conduct that violated § 841(a) — stands. And his criminal liability for murders — based in part on conduct that violates § 848(a) — stands.

Indeed, Defendant correctly concedes that his convictions under all of these statutes remain intact. (Def.'s Reply at 5.) Defendant completed each crime at the time of the murder, and no adjustments to the penalties of the offenses in § 841 have altered his criminal liability or the penalties for § 848. *See Dorsey*, 567 U.S. at 272 ("Case law also makes clear that penalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.*, commits the underlying conduct that makes the offender liable."); *see also United States Guerrero*, 813 F.3d 462, 466 (2d Cir. 2016) ("Because the [Fair Sentencing Act] did not expressly extinguish any criminal liability under § 848(e)(1)(A), the law's enactment did not retroactively invalidate Guerrero's convictions."). Accordingly, the Savings Statute pushes Defendant's § 848(e)(1)(A) conviction farther beyond the reach of the First Step Act than even a straightforward reading of the statutes suggests.

28

**C.     Application of the Fair Sentencing Act Demonstrates that It Does Not Apply to Defendant's Convictions.**

Not only would the conclusion that the First Step Act covers Defendant's convictions contravene the intent of Congress as clearly expressed in the text of the statutes, but attempting to apply that conclusion proves untenable. This result further demonstrates the defect in Defendant's argument.

**i.      Section 848(e) Differs from the Other Statutes Found to Have Been Indirectly Modified by the Fair Sentencing Act.**

The Court recognizes that the Fourth Circuit has found that the First Step Act can cover offenses not directly amended by sections 2 or 3 of the Fair Sentencing Act. *See, e.g., Woodson*, 962 F.3d at 816 (finding a conviction under § 848(b)(1)(C) a "covered offense" although the Fair Sentencing Act did not amend the text). The Fourth Circuit's analysis in *Woodson* as to why "Congress did not need to amend the text of Subsection 841(b)(1)(C) to make this change" supports the conclusion that Defendant's convictions under § 848(e)(1)(A) do not constitute covered offenses. *Id.* In *Woodson*, the Fourth Circuit used a before-and-after approach to determine whether the Fair Sentencing Act modified § 841(b)(1)(C), the statute at issue there. *Id.* In answering in the affirmative, the court noted:

> Before the Fair Sentencing Act, Subsection 841(b)(1)(C)'s penalty applied only to offenses involving less than 5 grams of crack cocaine (or an unspecified amount). But because of the changes rendered by Section 2 of the Fair Sentencing Act, the penalty in Subsection 841(b)(1)(C) now covers offenses involving between 5 and 28 grams of crack cocaine as well.

962 F.3d at 816. Continuing, "Subsection 841(b)(1)(C) set forth the penalty for quantities of crack cocaine between zero and 5 grams (or an unspecified amount) before the Fair Sentencing Act, and between zero and 28 grams (or an unspecified amount) after. This is a modification." *Id.* The court went on to note that Woodson's conviction of 0.41 grams of crack cocaine amounted to 8.2% of the upper end of Subsection 841(b)(1)(C)'s range before the Fair

29

-174-

Sentencing Act, but only 1.5% of the upper end after the Fair Sentencing Act, which a sentencing judge could find relevant. *Id.* at 817. Because of the calculable differences in the penalties associated with Woodson's conviction before and after the Fair Sentencing Act, the Fourth Circuit found the offense covered by the First Step Act. The conclusion in *Woodson* falls squarely in line with Congress' intent to reduce the crack cocaine-to-powder cocaine disparity for non-violent offenses, even if it did not directly amend the text of § 841(b)(1)(C).

Applying the same before-and-after analysis here to Defendant's convictions leads to the opposite result. Before the Fair Sentencing Act, § 848(e)(1)(A)'s penalties applied to killings in furtherance of a continuing criminal enterprise. After the changes rendered by Section 2 of the Fair Sentencing Act, the penalty in § 848(e)(1)(A) still covers killings in furtherance of a continuing criminal enterprise. In other words, § 848(e)(1)(A) set forth the penalty for killing in furtherance of a continuing criminal enterprise both before and after the Fair Sentencing Act. No modification exists. The penalties in § 848(e)(1)(A) simply do not depend on a specific quantity of drugs. Both before and after the passage of the Fair Sentencing Act Defendant's convictions for killing Douglas Moody, Peyton Johnson and Louis Johnson in furtherance of a continuing criminal enterprise remain punishable by death or life imprisonment with a mandatory minimum of 20 years' imprisonment. As a result, this case differs from *Woodson*, where the Fourth Circuit found that by modifying the conduct at issue under § 841(b)(1)(C), the Fair Sentencing Act also modified the statutory penalties for § 841(b)(1)(C). Here, unlike in *Woodson*, Congress did not modify the conduct at issue in § 848(e)(1)(A) and, therefore, did not modify the statutory penalties. Accordingly, the suggestion that Congress amended § 848(e)(1)(A) to reduce the penalties for lethal drug traffickers finds itself far afield of any intent expressed by Congress.

30

ii.    **The First Step Act Cannot Override the Sentencing Statutes Applicable to Defendant's Convictions.**

Even if the Fair Sentencing Act could have indirectly modified the statutory penalties for convictions under § 848(e)(1)(A), the Court could not reduce Defendant's death sentence. A comparison of the language between the statutes at issue reveals that Congress did not intend for the First Step Act to authorize courts to reduce death sentences imposed under § 848(e)(1)(A). First, Defendant's sentencing statute mandated the imposition of the death penalty upon the jury's recommendation.[8] 21 U.S.C. § 848(l) (repealed 2006) ("Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death."). The statute that would govern sentencing if Defendant were convicted for similar crimes today likewise contains mandatory language. *See* 18 U.S.C. § 3591(a) (mandating that a defendant "shall be sentenced to death" if the jury recommends such a sentence following a hearing). That mandatory language contrasts starkly with the First Step Act, which contains undeniably permissive language in two of its three sections: "A court that imposed a sentence for a covered offense *may*, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act, § 404(b) (emphasis added). The next subsection reinforces the discretion granted the courts: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.*, § 404(c).

The Court must give effect to both statutes. "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the

---

[8]    Congress repealed §§ 848(g)-(r) in 2006 and made § 848(e)(1)(A) offenses subject to the death penalty provisions of the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.* ("FDPA"). Pub. L. 109-177, 120 Stat. 231, 232. However, the Fourth Circuit has held that §§ 848(g)-(r) continue to apply to defendants sentenced before the repeal of those sections. *Stitt*, 552 F.3d at 354 ("We think this case law leads inexorably to the conclusion that §§ 848(g)-(r) are saved by the Savings Statute.").

31

contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Regarding both as effective leads the Court to follow the mandate set forth in the sentencing statutes and sentence Defendant to death as the jury recommended. The permissive language of the First Step Act cannot overrule the mandatory language in the sentencing statutes. And, instead of "clearly expressed congressional intention to the contrary" of this conclusion, Congress' definitively expressed intent supports this conclusion. With the Fair Sentencing Act, Congress intended to increase the sentences of violent drug offenders. *See* Fair Sentencing Act, § 5, 124 Stat. at 2373 (directing the Sentencing Guideline Commission to increase the Sentencing Guidelines "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense."). Thus, it defies logic to suggest that Congress intended the First Step Act to grant discretion to the courts in sentencing the most violent drug offenders when none previously existed. Allowing the Court to override the jury's death recommendation to reduce Defendant's sentences for his § 848(e)(1)(a) convictions would run contrary to the intent of the Fair Sentencing Act and result in giving the sentencing statutes no effect. This the Court cannot do.

Defendant's specific request with respect to Count Five highlights the difficulty in squaring the two statutes in the manner that he suggests. Although the First Step Act only gives courts the discretion to impose a reduced sentence for a covered offense, Defendant does not (and cannot) request that the Court impose a reduced sentence for Count Five. Defendant instead asks the Court to impanel a new sentencing jury. But the First Step Act did not expressly vest the courts with the discretion or authority to impanel a new sentencing jury, because Congress did not intend the statute to cover violent offenses for which a jury could sentence a defendant to death. Therefore, the Court cannot grant Defendant's request.

32

-177-

### iii.   The Sentencing Guidelines Demonstrate that Defendant's Convictions Do Not Fall Under the First Step Act.

The Sentencing Guidelines further support the conclusion that Defendant's sentencing exposure under his § 848(e)(1)(A) remained unchanged by the First Step Act.[9] The Fair Sentencing Act did not result in changes to the guidelines for convictions under § 848(e). Those convictions currently fall under the "First Degree Murder" section of the Sentencing Guidelines, which suggest a guideline sentencing range of life imprisonment.[10] U.S.S.G. § 2A1.1. Likewise, before the Fair Sentencing Act, and at the time of Defendant's sentencing, convictions under § 848(e) fell under the "First Degree Murder" section of the Sentencing Guidelines. *See, e.g.,* U.S.S.G. § 2A1.1 (U.S. Sentencing Comm'n 1993); (PSR at 42). Moreover, unlike other sections of the Sentencing Guidelines that take into account the drug quantity in the underlying offense, the "First Degree Murder" section contains no such provision. *Compare, e.g.,* U.S.S.G. § 2D1.1 (taking into account drug quantity in calculating base offense level for various offenses), *with* U.S.S.G. § 2A1.1 (no reference to drug quantities in calculating base offense level for first degree murder). This provides further support for the conclusion that the Fair Sentencing Act had no effect on the penalties applicable to Defendant's Capital Murder Convictions.

---

[9]   The Court recognizes that the First Step Act concerns changes to the statutory penalties rather than the Sentencing Guidelines. *See Wirsing,* 943 F.3d at 186 ("The First Step Act specifies that it is 'statutory penalties' that are at issue to avoid any ambiguity that might arise in the sentencing context between penalties specified by statute or by the Guidelines."). Nevertheless, this brief analysis of the relevant Sentencing Guidelines highlights the lack of change to Defendant's sentencing exposure produced by the First Step Act and illustrates that Congress did not intend to reduce the statutory penalties for violent drug offenders.

[10]   "This guideline applies when a sentence of death is not imposed under [21 U.S.C. § 848(e)]." U.S.S.G. § 2A1.1 cmt. 3. And, of course, the Fair Sentencing Act did not change the fact that the death penalty (or a sentence of life imprisonment) may still be imposed under 21 U.S.C. § 848(e).

33

**D.    Other Courts Have Considered Similar, But Not Identical, Issues.**

Defendant further argues that other courts have found that § 848 convictions qualify as covered offenses. (Def. Mem. at 5.)  However, Defendant cites only non-binding and inapposite cases.  The Fourth Circuit has not spoken on the issue.  Yet, in the only published circuit court opinion to address an § 848(e) conviction under the First Step Act, the Sixth Circuit came to the same conclusion as the Court does here.  In *United States v. Snow*, the Sixth Circuit held that Defendant's conviction under § 848(e)(1)(a) for conspiracy to kill a person while engaged in a conspiracy to distribute at least 50 grams of cocaine base did not constitute a covered offense for purposes of the First Step Act.  967 F.3d 563, 564 (6th Cir. 2020).  The defendant argued that the increase in the threshold quantity to trigger § 841(b)(1)(A), combined with § 848(e)(1)(A)'s requirement of an offense punishable under § 841(b)(1)(A), qualified his § 848(e)(1)(A) conviction as a covered offense.  *Id.* at 564.  The Sixth Circuit rejected this argument: "We disagree and hold that the First Step Act's text and structure do not support extending resentencing relief to Snow's § 848(e)(1)(A) conviction."  *Id.*

This rejection relied on two main reasons.  First, the court determined that under the defendant's theory, the previous elements of the defendant's conviction — murder in furtherance of a conspiracy to distribute at least 50 grams of cocaine base — "*no longer amount to an offense under § 848 at all* and there is *no* applicable statutory sentencing range" after the Fair Sentencing Act.  *Id.* at 565 (emphasis in original).  The Sixth Circuit determined that this constituted an elimination of statutory penalties, not a modification, and, therefore, the First Step Act did not apply.  Second, and relatedly, the district court could not impose a reduced sentence as if the Fair Sentencing Act had been in effect, because the First Step Act "simply does not contemplate the *elimination* of a sentence, as would be required here."  *Id.* (emphasis in original).  Therefore, it

34

concluded that "Snow's § 848(e)(1)(A) conviction is not a covered offense and he is ineligible for a reduction in his sentence for Count 2." *Id.* For the reasons stated above, the Court agrees with the Sixth Circuit's conclusion.

The cases cited by Defendant for the proposition that "courts have consistently found that a conviction under § 848 is a covered offense under the First Step Act" fail to persuade the Court. (Def.'s Mot. at 5.) For example, in *United States v. Davis*, the court found that "a defendant's § 848(e)(1)(A) conviction is a covered offense because it relies on the drug quantity thresholds set by § 841 and, therefore, requires a jury finding that the defendant committed a murder in furtherance of a drug conspiracy to sell 280 or more grams of cocaine base." 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020). Here, however, as described above, Defendant's § 848(e)(1)(A) conviction does not rely on the drug quantity thresholds set by § 841. Moreover, for the reasons stated above, the Court disagrees with the reasoning in *Davis*.[11]

The remaining cited cases are inapposite. In *United States v. Brown*, the Court found that the defendant's convictions under § 848 (a) and (b) constituted covered offenses under the First Step Act. 2020 WL 3106320 (W.D. Va. June 11, 2020). It did not address a conviction under § 848(e)(1)(A). In any event, its finding that § 848 as a whole constituted the statute of conviction contradicts Fourth Circuit precedent that § 848(e)(1)(A) stands by itself apart from the rest of § 848. *See NJB*, 104 F.3d at 633 (holding that the statute "clearly expresses Congress' intent that § 848(e) be a separate crime"). Likewise, in *United States v. Kelly*, the Court addressed the defendant's convictions under § 848(c) and sentence under § 848(a) and (b). No. 2:94cr163 (E.D. Va. June 5, 2020). It did not address a conviction under § 848(e)(1)(A).

---

[11]     Despite the faulty eligibility analysis, the court in *Davis* did find that the First Step Act did not alter the § 848(e)(1)(A) conviction and instead only made him eligible for a sentence reduction. And the court denied him such a reduction. 2020 WL 1131147, at *2-3.

Finally, in *Wright v. United States*, the Court addressed the defendant's § 841 convictions, but excluded the defendant's § 848(c) conviction when listing the counts covered by the First Step Act. 425 F. Supp. 3d 588, 592-94 (E.D. Va. 2019). It did not address a conviction under § 848(e)(1)(A) or any other section of § 848 and, therefore, has no bearing on the instant analysis. The other unpublished, out-of-district and out-of-circuit cases cited by Defendant similarly fail to convince this Court that it may modify Defendant's sentences for convictions for murder in furtherance of a continuing criminal enterprise in violation of § 848(e)(1)(A).

At bottom, Defendant comes before the Court with unaltered convictions under a statute with unaltered statutory penalties and asks the Court to alter his sentence. Defendant received a death sentence and life imprisonment sentences for drug-related murders. However, these sentences had no foundation in the type or quantity of drug that led to the murders. Instead, they were predicated on the fact that Defendant killed multiple people to advance his drug enterprise. Yet, Defendant attempts to use the Fair Sentencing Act and First Step Act — enacted to correct disparate sentences that had a foundation only in the type and quantity of the drug at issue — to reduce his sentences for these murders. Congress plainly did not intend for those Acts to apply to Defendant's deadly drug crimes.

Because the statutory penalties for his statute of conviction remain unchanged, the First Step Act does not reach Defendant's sentences under § 848(e)(1)(A). *See United States v. Woodson*, 962 F.3d at 816-17 (holding that "the relevant change for purposes of a 'covered offense' under the First Step Act is a change to the statutory penalties for a defendant's statute of conviction"). Accordingly, the Court holds that Defendant's convictions under § 848(e)(1)(A) for the Capital Murder Counts do not constitute "covered offenses" for purposes of the First Step Act. The Court's decision on these counts does not end the analysis, as Defendant also moves

36

for a reduction of his sentence imposed for his Drug Distribution Conviction.

**E.      Count Thirty-Two's Status as a Covered Offense Will Not Result in a Sentence Reduction.**

Although the First Step Act does not cover Defendant's convictions under § 848(e)(1)(A), it does cover his Drug Distribution Conviction in Count Thirty-Two for violations of § 841(a)(1). Under Count Thirty-Two, Defendant received a sentence of forty years' imprisonment for a violation of § 841(a)(1), to run concurrently with any other sentence imposed. Defendant argues that this sentence makes up part of a larger sentencing package that the Court must revisit.[12] Therefore, the combination of a covered offense with non-covered offenses presents two issues that the Court must resolve. First, does a conviction of one covered offense entitle Defendant to reconsideration of his sentences for all convictions? And second, should the Court reduce Defendant's sentence for his Drug Distribution Conviction? For both questions, the Court answers in the negative.

**i.      The Court Cannot Impose a Reduced Sentence for Non-Covered Offenses.**

First, the statute's text demonstrates that the First Step Act does not permit the Court to impose a reduced sentence for non-covered offenses. By its operative language, section 404(b) provides, "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act, § 404(b), 132 Stat. 5194. In deciphering the meaning of the term "sentence," the Court must keep in mind the "normal rule of statutory

---

[12]    Defendant also attacks the other convictions that comprise his sentencing package. (Def.'s Mot. at 47-50.) However, only Counts Five, Eight, Eleven and Thirty-Two form the basis of his First Step Act Motion, as only those counts could arguably fall under the First Step Act. Because a First Step Act motion does not provide the proper vehicle for the attacks on Defendant's other convictions that he raises, the Court will not entertain those arguments here. *See Chambers*, 956 F.3d at 676 (Rushing, J., dissenting) (noting that the First Step Act does not "provide a general opportunity to collaterally attack a final sentence").

37

interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 33-34 (2005). Giving the word "sentence" a consistent meaning in Section 404(b), the Court can impose a "reduced sentence" only to replace the "sentence for a covered offense." Along these same lines, the Court must read section 404(b) in conjunction with the narrow limitations placed on sentence modifications by 18 U.S.C. § 3582(c)(1)(B). And, section 404(b) did not expressly permit the Court to modify a defendant's sentence for a non-covered offense. Accordingly, the Court finds that it cannot reduce Defendant's sentences for the Capital Murder Convictions based solely on the fact that Defendant received a sentence for a covered offense for the Drug Distribution Count.

### ii.    The Calculation of Defendant's Sentence and the Concurrent Sentences Imposed Weigh Against a Sentence Reduction.

Although the First Step Act covers Defendant's offense in Count Thirty-Two, the Court need not reduce his sentence. Even if a defendant meets the eligibility criteria for a sentence reduction under the First Step Act, the Court retains discretion over whether to grant the reduction. *Wirsing*, 943 F.3d at 180 ("Among other limitations, Congress left the decision as to whether to grant a sentence reduction to the district court's discretion."); FSA § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Here, the Court will exercise that discretion and deny Defendant's request for a reduction below forty years' imprisonment.

In exercising this discretion, the Court notes that Defendant's sentence appears to have been imposed as if the Fair Sentencing Act were in effect at the time of his sentencing. In Count Thirty-Two, the jury convicted Defendant of Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of §§ 841(a)(1) and (b)(1)(A)(ii). At the time of Defendant's

38

-183-

sentencing, before the Fair Sentencing Act, Defendant's conviction for more than 50 grams of cocaine base mandated a sentence of ten years to life imprisonment. *Wirsing*, 943 F.3d at 180-81. Today, after the Fair Sentencing Act, possession of 50 grams of cocaine base mandates a sentence of imprisonment of five to forty years. 21 U.S.C. § 841(b)(1)(B)(iii). However, in preparing Defendant's Presentence Investigation Report (("PSR") ECF No. 27-1), the Probation Officer calculated Defendant's statutory penalty range for Count Thirty-Two as five to forty years' imprisonment. (PSR at 36, 53.) The Court sentenced Defendant within this range, albeit at the top of this range — forty years. Accordingly, due to a potential miscalculation, it would appear as if Defendant already received the benefit of the Fair Sentencing Act with respect to the Drug Distribution Conviction.

The concurrent sentence doctrine further counsels against reducing Defendant's sentence for the Drug Distribution Conviction. The concurrent sentence doctrine generally provides that where a defendant receives concurrent sentences on plural counts, a reviewing court need not pass on the validity of a sentence where the sentence runs concurrently with an equal or longer sentence. *United States v. Charles*, 932 F.3d 153, 160-61 (4th Cir. 2019). The doctrine "has continuing force as a species of harmless-error review where a defendant seeks to challenge the legality of a *sentence* that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration." *Id.* (emphasis in original). Here, Defendant received a forty-year sentence for his covered offense to run concurrently with his death sentence and five other life imprisonment sentences. These other sentences clearly eclipse his sentence on the Drug Distribution Conviction, such that the Court need not pass on imposing a new sentence for Count Thirty-Two.

39

### iii.    The § 3553(a) Factors Weigh Against A Sentence Reduction.

Even absent these factors, the Court would not exercise its discretion to reduce

Defendant's sentence.  In declining to reduce Defendant's sentence, the Court has considered the

factors set forth in 18 U.S.C. § 3553(a), which include:

1.    the nature and circumstances of the offense and the history and characteristics of the defendant;

2.    the need for the sentence imposed –

   a.    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b.    to afford adequate deterrence to criminal conduct;

   c.    to protect the public from further crimes of the defendant; and

   d.    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.    the kinds of sentences available;

4.    the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines];

5.    any pertinent policy statement . . . by the Sentencing Commission;

6.    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The applicable factors weigh against granting Defendant's motion.

First, "the nature and circumstances of the offense and the history and characteristics of

the defendant" weigh heavily against Defendant.  Defendant murdered multiple people on

different occasions in cold blood in furtherance of his drug trafficking.  Even before these

convictions, Defendant committed several other violent and drug-related crimes, leading to a

criminal history category of V.  (PSR at 50-52.)  The Court has considered Defendant's good

40

-185-

conduct and rehabilitative efforts while in prison, which factor in his favor. Moreover, the Court has considered the evidence of the mitigating factors that Defendant has raised in his Motion, including his abusive childhood and his brain damage. However, these mitigating factors do not outweigh the heinous nature and circumstances of his offenses.[13]

Next, the Court believes that reducing Defendant's sentence would not reflect the seriousness of the offense, promote just punishment for the offense, provide respect for the law or afford adequate deterrence to criminal conduct. Indeed, reducing the sentence of a lethal drug dealer would undermine these goals. Defendant has proven himself as the ultimate danger to the community. Defendant led an extremely violent drug enterprise that killed at least ten people, with Defendant personally implicated in at least five killings. The jury recognized Defendant's status as a highly dangerous individual in sentencing him to the death penalty — a penalty reserved for only the most vicious and dangerous criminals. Defendant's rehabilitative efforts, although substantial and commendable, pale in comparison to the dangers that he poses to society. A reduced sentence would fail to reflect the seriousness of Defendant's crimes. Nor would a reduced sentence provide for a just punishment for Defendant's horrific acts. Likewise, reducing the sentence of a serial killer would undermine respect for the law and detract from adequate deterrence to criminal conduct.

---

[13] In his First Step Act Motion, Defendant advances claims of actual innocence for the murder of Douglas Moody in arguing that the circumstances of the offense militate in favor of a reduced sentence. (Def.'s Mot. at 8-16.) However, his actual innocence claim has received multiple exhaustive reviews by this Court and the Fourth Circuit. Each review has resulted in a rejection of the actual innocence claim. In any event, a First Step Act Motion does not provide the proper vehicle to litigate this claim yet again.

Notably, his insistence on pressing his rejected actual innocence claim undermines his argument that he has accepted responsibility for his actions and changed his life. Nevertheless, the Court has considered the evidence supporting Defendant's claim of actual innocence and his rehabilitation, but it finds that this evidence does not outweigh the reprehensible nature and circumstances of the offense.

41

-186-

The kinds of sentences and sentencing range weigh in favor of not reducing Defendant's sentence, as he has already received a sentence in the applicable Guideline Range for the Drug Distribution Conviction. Likewise, no policy statement from the Sentencing Commission weighs in favor of reducing Defendant's sentence, as the Guidelines for both offenses remain unchanged with respect to the Drug Distribution Conviction and the Capital Murder Convictions. Finally, the Court finds that reducing Defendant's sentence could lead to unwarranted sentence disparities, as defendants with similar records who have been convicted of similar conduct would likely not receive sentences below what Defendant has received here.

The applicable § 3553(a) factors, taken as a whole, counsel against reducing Defendant's term of imprisonment for Count Thirty-Two below forty years.

## IV.    CONCLUSION

Throughout both the guilt and penalty phases, the jury in this case heard all of the evidence relating to Defendant's role in this drug enterprise and the five individuals that he killed to protect his enterprise. Beyond evidence of the atrocious crimes for which it convicted Defendant, the jury heard evidence relating to his character. That jury — speaking on behalf of the community — unanimously decided that this heinous serial killer deserved to die for his actions. The Court refuses to overturn the will of the community. It is not the Court's role to revisit the jury's determination, especially when doing so would run contrary to the goals of the First Step Act.

For the reasons stated above, the Court finds that Defendant's convictions on Counts Five, Eight and Eleven do not constitute covered offenses under the First Step Act. Although Defendant's conviction on Count Thirty-Two does constitute a covered offense, the Court declines to exercise its discretion to reduce Defendant's sentence. Therefore, Defendant's

42

Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act (ECF

No. 17) will be denied.

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all

counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated:  October 29, 2020

43

**-188-**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.                                          Criminal No. 3:92cr68 (DJN)

RICHARD TIPTON, III,
    Defendant.

## MEMORANDUM ORDER
### (Denying First Step Act Motion)

Convicted serial killer Richard Tipton, III ("Defendant" or "Tipton") comes before the

Court with a Motion for the Imposition of a Reduced Sentence Under Section 404 of the First

Step Act (ECF No. 24) in a last-ditch effort to avoid the just punishment imposed on him for his

role in killing multiple people in furtherance of his drug enterprise. The Court has already

rejected a nearly identical effort from one of Defendant's co-conspirators.[1] Defendant has

challenged his convictions and sentences on numerous occasions throughout the years. But each

time they survived appellate review. Defendant now seeks to latch onto laws passed to reduce

the sentencing disparities between non-violent crack and powder cocaine offenses as a vehicle to

reduce his sentences imposed for running a drug enterprise and committing multiple murders in

furtherance of the drug enterprise. But that enterprise and those murders, and the statutes under

which a jury convicted Defendant for them, have nothing to do with the penalties for drug

quantities that the First Step Act addressed.

---

[1] The Court hereby expressly incorporates into this Memorandum Order the Memorandum Opinion (the "*Roane* Mem. Op." (ECF No. 67)) denying Roane's First Step Act Motion, entered on October 29, 2020. The instant Memorandum Order supplements the *Roane* Memorandum Opinion to address the new or individualized arguments raised by Defendant.

-189-

## I.    BACKGROUND[2]

### A.    Factual Background

Defendant, along with Corey Johnson ("Johnson") and James Roane, Jr. ("Roane") (collectively, the "partners"), ran a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. *Roane*, 378 F.3d at 389. The partners in the conspiracy obtained wholesale quantities of powder cocaine from suppliers in New York City, converted it into crack cocaine, divided it among themselves and then distributed it through a network of 30-40 street level dealers. *Id.* at 389-90. Typically, the partners took two-thirds of the proceeds realized from the street-level sales of their product. *Id.* at 390.

Over a short time in early 1992, the partners took part, in some form, in the murders of ten persons in the Richmond area. *Id.* These murders occurred "in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Id.* The murders described below directly implicated Defendant.

On January 4, 1992, Roane and Tipton drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. *Id.* Roane grabbed Talley and Tipton stabbed him repeatedly for three to five minutes. *Id.* Talley died from eighty-four stab wounds to his head, neck and upper body. *Id.*

On January 13, 1992, Roane and Tipton went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, and Tipton shot Moody twice in the back. *Id.*

---

[2]    The Court takes these background facts from the Fourth Circuit's opinion in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), which recited the factual summary *in haec verba* from *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), the opinion on the defendants' direct appeal.

2

-190-

Tipton and Roane pursued the fleeing Moody before Roane caught him and stabbed him eighteen times, killing him. *Id.*

In late January 1992, after Johnson threatened Dorothy Armstrong for not paying for a supply of crack cocaine, Armstrong went to live with her brother, Bobby Long. *Id.* On February 1, 1992, Johnson, Tipton and Jerry Gaiters ("Gaiters") went to Long's house. *Id.* at 391. While Tipton waited in the car, Johnson and Gaiters approached the front door. *Id.* When Long opened the door, Johnson opened fire, killing Dorothy Armstrong and Anthony Carter. *Id.* As Bobby Long fled out the front door, Johnson shot him dead in the front yard. *Id.*

On February 19, 1992, Johnson arranged to meet with Linwood Chiles, who Johnson suspected of cooperating with the police. *Id.* That night, Chiles and Johnson drove off together in Chile's station wagon, with Curtis Thorne and sisters Priscilla and Gwen Greene also in the car. *Id.* Chiles parked in an alley before Tipton parked behind the station wagon and walked up beside it. *Id.* With Tipton standing by, Johnson told Chiles to place his head on the steering wheel before shooting him twice at close range. *Id.* The partners fired additional shots, killing Thorne and critically wounding the Greene sisters in the station wagon. *Id.* The autopsy report indicated that bullets fired from two different directions had hit Thorne. *Id.*

## B.   Verdict and Sentencing

In January and February of 1993, United States District Judge James R. Spencer presided over the trial of Defendant and his co-conspirators. Defendant[3] faced capital murder charges for Murder in Furtherance of a Continuing Criminal Enterprise ("CCE") under 21 U.S.C. § 848(e)(1)(A) for eight of these killings — Talley (Count Three), Moody (Count Five), Louis Johnson (Count Eleven), Armstrong (Count Seventeen), Carter (Count Eighteen), Long (Count

---

[3]   The Court tried Roane, Tipton and Johnson along with four other defendants on a thirty-three-count superseding indictment.

3

Nineteen), Thorne (Count Twenty-Four) and Chiles (Count Twenty-Five) (collectively, the "Capital Murder Counts"). *Id.* at 391; (Second Superseding Indictment ("Indictment") (Dkt. No. 115) at 6-18). On February 3, 1993, the jury convicted him of six of the Capital Murder Counts — Counts Three, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five (the "Capital Murder Convictions"). One of the other two Capital Murder Counts was dismissed (Count Eleven) and the other resulted in an acquittal (Count Five). *Id.* The jury also convicted Defendant of one count of participating in a Conspiracy to Possess Cocaine Base with Intent to Distribute, in violation of 21 U.S.C. § 846 (Count One); one count of engaging in a CCE, in violation of 21 U.S.C. § 848(a) (Count Two); eight counts of Committing Acts of Violence in Aid of Racketeering ("VICAR"), in violation of 18 U.S.C. § 1959 (Counts Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty) and two counts of Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Counts Twenty and Twenty-Six). 378 F.3d at 391; (Dkt No. 592). Finally, the jury convicted Defendant of two counts of Possession with Intent to Distribute Crack Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts Thirty-Two and Thirty-Three (the "Drug Distribution Counts" or the "Drug Distribution Convictions")). 378 F.3d at 391; (Dkt Nos. 465, 592.) Defendant's First Step Act Motion pertains only to the Capital Murder Convictions and the Drug Distribution Convictions.

On February 16, 1993, following a penalty hearing on the Capital Murder Counts, the jury recommended that Defendant be sentenced to death for the murders of Talley, Chiles and Thorne. 378 F.3d at 392. Consequently, on June 1, 1993, pursuant to 21 U.S.C. § 848(l), the Court sentenced Defendant to death for Counts Three, Twenty-Four and Twenty-Five. *Id.* Relevant here, the Court also sentenced Defendant to life imprisonment for each of the Capital

4

Murder Convictions that he did not receive a death sentence — Counts Seventeen, Eighteen and Nineteen. Defendant also received a life imprisonment sentence for the CCE conviction in Count Two, life sentences for Counts Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven and Twenty-Eight. (Dkt No. 592.) Additionally, Defendant received a sentence of forty years' imprisonment for Count Thirty-Two, thirty years' imprisonment for each of Counts Twenty-Nine and Thirty, twenty years' imprisonment for each of Counts Twenty-Six and Thirty-Three and five years' imprisonment for Count Twenty. (Dkt. No. 592.)

The Court refused to order the execution on the grounds that Congress had neither directly authorized the means to carry out the death sentences, nor properly delegated to the Attorney General the authority to issue the implementing regulations that the Government invoked. 378 F.3d at 392. As a result, the Court stayed the execution of the death sentences until such time as Congress had authorized the means of execution. *Id.*

C.    **Post-Trial Proceedings**

The defendants appealed their convictions and sentences and the Government cross-appealed the stay of the death sentences. *Id.* at 392. In a lengthy opinion, the Fourth Circuit analyzed and disposed of approximately sixty issues, including challenges by the defendants to aspects of the jury-selection process and both the guilt and penalty phases of the trial. *Tipton*, 90 F.3d at 861. The Fourth Circuit rejected nearly all of the claims, affirming the convictions and sentences of all of the defendants, except that it vacated on Double Jeopardy grounds the drug conspiracy convictions under 21 U.S.C. § 846, finding that the CCE convictions in Count Two precluded sentences for the drug conspiracy offenses. *Id.* at 903. Additionally, the Fourth Circuit vacated the stay of the death sentences and remanded for the executions to proceed in accordance with regulations promulgated by the Attorney General. *Id.* at 901-03.

5

-193-

Defendant continued to press his appeals. On June 1, 1998, Defendant filed a motion under 28 U.S.C. § 2255 to vacate and set aside his sentences. *Roane*, 378 F.3d at 392. The Court granted the Government's summary judgment motion, and Defendant appealed. *Id.* at 393. The Fourth Circuit affirmed, ruling against Defendant on all accounts. *Id.* at 398-407.

In 2016, Defendant filed an application with the Fourth Circuit to file a successive § 2255 petition to invalidate his § 924(c) convictions. The Fourth Circuit denied his requests. *In re Tipton*, No. 16-7 (4th Cir. 2016), ECF No. 13. On June 8, 2020, Defendant filed yet another application with the Fourth Circuit for a successive § 2255 pursuant to the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). *In re Tipton*, No. 20-10 (4th Cir. 2020), ECF No. 2. On November 17, 2020, the Fourth Circuit placed the case in abeyance pending its decision in *United States v. Ortiz-Orellana. Id.*, ECF No. 24.[4]

### D.    Defendant's First Step Act Motion

On August 31, 2020, Defendant filed the instant motion under § 404 of the First Step Act, asking the Court to reduce his sentences for the Capital Murder Counts and the Drug Distribution Counts. (Def.'s Mot. for Imposition of a Reduced Sentence Under Section 404 of the First Step Act ("Def.'s Mot.") (ECF No. 24).) Defendant argues that these convictions constitute covered offenses under the First Step Act, because the Fair Sentencing Act modified the statutory penalties for §§ 841 and 848, and the First Step Act allows the Court to retroactively impose those modified statutory penalties. (Def.'s Mot. at 4-7.) Because of the modifications,

---

[4]    Defendant's proposed successive § 2255 petition has no impact on his First Step Act motion. In his proposed petition, he attacks his convictions under § 924(c) and does not attack the counts at issue here. *In re Tipton*, No. 20-10 (4th Cir. 2020), ECF No. 2-2 (moving to vacate his convictions under 18 U.S.C. § 924(c) in Counts Twenty and Twenty-Six). Although in his proposed § 2255 petition he argues that his Capital Murder Convictions cannot form the predicates of his § 924(c) convictions, he does not attack the convictions or sentences for the Capital Murder Counts. *Id.*

6

Defendant claims that he is no longer eligible for the death penalty and that he deserves a new sentencing hearing. (Def.'s Mot. at 9-11.) Further, Defendant argues that his abusive and neglectful childhood counsels mitigates against imposition of the death penalty. (Def.'s Mot. at 12-15.) Finally, Defendant attacks his other convictions as invalid, thus warranting reconsideration of his entire sentencing package. (Def.'s Mot. at 21.) To reach this conclusion, Defendant argues that his § 846, § 924(c) and VICAR convictions are all invalid, despite the Fourth Circuit only invalidating the § 846 conviction to date (on Double Jeopardy grounds) following multiple appeals. (Def.'s Mot. at 15-24.)

On September 21, 2020, the Government filed its opposition to Defendant's Motion, primarily arguing that his convictions under § 848 do not constitute covered offenses and, therefore, the Court may not reduce his sentence. (Govt's Opp. to Def.'s First Step Act Mot. ("Govt's Resp.") (ECF No. 54).) On October 20, 2020, Defendant filed his reply (ECF No. 65), rendering this matter now ripe for review.

## II.    DISCUSSION

The Court must first address whether Defendant's convictions for which he seeks a reduction constitute covered offenses. *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) ("[T]he existence of a 'covered offense' is a threshold requirement under the [First Step] Act."). Defendant's desire to have his death sentences reduced for his Capital Murder Convictions clearly drives his request, but the Court has recently determined that those convictions do not constitute covered offenses under the First Step Act. Thus, the Court need not engage in that analysis again. However, the Court must determine whether to reduce Defendant's sentences for the Drug Distribution Counts, which do constitute covered offenses.

## A.     Defendant's Capital Murder Convictions under § 848(e) Do Not Constitute Covered Offenses.

Defendant argues that his Capital Murder Convictions qualify as covered offenses under the First Step Act. The Court has recently rejected this identical argument as advanced by his co-conspirator, James Roane. On October 29, 2020, the Court denied Roane's First Step Act Motion. (ECF Nos. 66.) In the accompanying Memorandum Opinion, the Court thoroughly analyzed the question of whether the defendants' murder convictions under § 848(e)(1)(A) constitute covered offenses under the First Step Act. (*Roane* Mem. Op. at 15-37.) The Court concluded that they do not. (*Id.*). That analysis applies equally to Defendant's Capital Murder Convictions, and Defendant has offered no compelling arguments to reach a different result. Therefore, the Court hereby incorporates its previous Memorandum Opinion and finds that Defendant's Capital Murder Convictions under Counts Three, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five do not constitute covered offenses for purposes of the First Step Act.

## B.     The Court Will Not Reduce Defendant's Sentences for the Drug Distribution Convictions.

Although the First Step Act does not cover Defendants convictions under § 848(e), it does cover his Drug Distribution Convictions in Counts Thirty-Two and Thirty-Three for violations of § 841(a)(1). However, even if a defendant meets the eligibility requirement for a sentence reduction under the First Step Act, the Court retains discretion over whether to grant the reduction. *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019) ("Among other limitations, Congress left the decision as to whether to grant a sentence reduction to the district court's discretion."). The Court imposed a sentence of forty years' imprisonment for Count Thirty-Two and twenty years' imprisonment for Count Thirty-Three. (Dkt. No. 592.) As Defendant notes, under the current statutory penalties, the Court may impose a sentence up to

8

-196-

forty years' imprisonment for each count. (Def.'s Mot. at 11); 21 U.S.C. § 841(b)(1)(B)(iii).

Thus, Defendant received sentences in 1993 that remain within the statutory penalties today.

However, the Court could still exercise its discretion and reduce Defendant's sentences for the

Drug Distribution Convictions.[5]

The Court will not exercise its discretion to reduce Defendant's sentence. In declining to

reduce Defendant's sentence, the Court has considered the factors set forth in 18 U.S.C.

§ 3553(a), which include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant; and

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines];

5. any pertinent policy statement . . . by the Sentencing Commission;

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The applicable factors weigh against granting Defendant's motion.

---

[5]    As the Court previously decided, the fact that Defendant received sentences for covered offenses does not permit the Court to impose a reduced sentence for his non-covered offenses. *See Roane* Mem. Op. at 37-38.

9

First, "the nature and circumstances of the offense and the history and characteristics of the defendant" weigh heavily against Defendant. Defendant murdered multiple people on different occasions in cold blood in furtherance of his drug trafficking. Defendant maimed several others in the commission of those murders. Defendant did not limit his violence to others engaged in drug trafficking — innocent bystanders fell victim to Defendant simply as a result of finding themselves in the wrong place at the wrong time. The Court has considered the evidence of the mitigating factors that Defendant has raised in his Motion, including his neglectful and abusive childhood. However, these mitigating factors do not outweigh the heinous nature and circumstances of his offenses.

Next, the Court believes that reducing Defendant's sentence would not reflect the seriousness of the offense, promote just punishment for the offense, provide respect for the law or afford adequate deterrence to criminal conduct. Indeed, reducing the sentence of a lethal drug dealer would undermine these goals. Defendant has proven himself as the ultimate danger to the community. Defendant led an extremely violent drug enterprise that killed at least ten people, with Defendant personally implicated in at least six killings. The jury recognized Defendant's status as a highly dangerous individual in sentencing him to the death penalty — a penalty reserved for only the most vicious and dangerous criminals. Defendant's rehabilitative efforts pale in comparison to the dangers that he poses to society. Moreover, Defendant's lengthy disciplinary record (ECF No. 54-1) does not demonstrate a respect for the law and weighs against a reduce sentence. Moreover, a reduced sentence would fail to reflect the seriousness of Defendant's crimes. Nor would a reduced sentence provide for a just punishment for Defendant's horrific acts. Likewise, reducing the sentence of a serial killer would undermine respect for the law and detract from adequate deterrence to criminal conduct.

10

The kinds of sentences and sentencing range weigh in favor of not reducing Defendant's sentence, as he has already received sentences in the applicable Guideline Range for the Drug Distribution Convictions. Likewise, no policy statement from the Sentencing Commission weighs in favor of reducing Defendant's sentences, as the Guidelines for both offenses remain unchanged.

Finally, the Court finds that reducing Defendant's sentence could lead to unwarranted sentence disparities, as defendants with similar records who have been convicted of similar conduct would likely not receive sentences below what Defendant has received here. Importantly, an individualized inquiry into whether the specific defendant deserves the death penalty constitutes the hallmark of the penalty phase in death penalty litigation. *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (holding that the Eighth and Fourteenth Amendment require the sentencer to make an individualized consideration of mitigating factors); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) ("[T]he fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense."). And here, the jury made that individualized determination, finding that Defendant deserved the death penalty after hearing the evidence relating to Defendant's character and record and the circumstances of the murders. Moreover, with respect to the Drug Distribution Convictions that the First Step Act covers, Defendant received the same sentences as his co-conspirators, and those sentences do not diverge from other similarly-situated defendants such that the Court should reduce them.

The applicable § 3553(a) factors, taken as a whole, counsel against reducing Defendant's term of imprisonment for Count Thirty-Two below forty years or Count Thirty-Three below twenty years.

11

### III.    CONCLUSION

Throughout both the guilt and penalty phases, the jury in this case heard all of the evidence relating to Defendant's role in this drug enterprise and the six individuals that he killed to protect his enterprise. Beyond evidence of the atrocious crimes for which it convicted Defendant, the jury heard evidence relating to his character. That jury — speaking on behalf of the community — unanimously decided that this heinous serial killer deserved to die for his actions. The Court refuses to overturn the will of the community. It is not the Court's role to revisit the jury's determination, especially when doing so would run contrary to the goals of the First Step Act.

For the reasons stated above and in the Court's *Roane* Memorandum Opinion, the Court finds that Defendant's convictions on Counts Three, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five do not constitute covered offenses under the First Step Act. Although Defendant's convictions on Counts Thirty-Two and Thirty-Three do constitute covered offenses, the Court declines to exercise its discretion to reduce Defendant's sentence. Therefore, Defendant's Motion for Imposition of a Reduced Sentence Under Section 404 of the First Step Act (ECF No. 24) will be denied.

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 19, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Richmond Division

UNITED STATES OF AMERICA      )

                                  )     Criminal Case No. 92CR68

v.                              )     **CAPITAL CASE**

                                  )

RICHARD TIPTON, III.            )

### NOTICE OF APPEAL

Notice is hereby given that the defendant in the above-captioned case hereby appeals to the United States Court of Appeals for the Fourth Circuit from the Memorandum Order denying Defendant's Motion for a Reconsideration of Sentence Hearing Pursuant to the First Step Act entered in this case on the 19th day of November 2020.

-201-

Respectfully submitted on this, the 24th day of November, 2020.


/s/Frederick R. Gerson

Frederick R. Gerson

Durrette, Arkema, Gerson & Gill, PC

VSB #39968

Bank Of America Center

1111 East Main Street, 16th Floor

Richmond, VA 23219

fgerson@dagglaw.com

Stephen Northup

VSB #16547

Troutman Sanders LLP

P.O. Box 1122

Richmond, Virginia 23218-1122

(804) 697-1240

(fax) (804) 698-5120

steve.northup@troutmansanders.com

Jeffrey Lyn Ertel

Ga. Bar No. 249966

Federal Defender Program, Inc.

101 Marietta Street, Suite 1500

Atlanta, Georgia 30303

404-688-7530

(fax) 404-688-0768

Gerald_King@fd.org

Jeff_Ertel@fd.org

Admitted pro hac vice.


Counsel for Richard Tipton, III.

2

## CERTIFICATE OF SERVICE

I certify that on this, the 24th day of November, 2020, the foregoing document was served on all parties or their counsel of record though the CM/ECF system and will be served electronically via email on the attorney listed below:

Richard Cooke, Esq.
U.S. Attorney's Office
Eastern District of Virginia
2100 Jamison Avenue
Alexandria, Virginia 22314
Richard.Cooke@usdoj.gov

This 24th day of November, 2020.

/s/Frederick R. Gerson
Frederick R. Gerson
Counsel for Richard Tipton, III