IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-16

UNITED STATES OF AMERICA,

*Appellee*,

v.

RICHARD TIPTON,

*Appellant*.

Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond
*The Honorable David J. Novak, District Judge*

CORRECTED AMENDED RESPONSE BRIEF OF THE UNITED STATES

Jessica D. Aber
United States Attorney

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400

*Attorneys for the United States of America*

**Table of Contents**

**Page**

Table of Authorities ................................................................................... iii

Introduction ..................................................................................................1

Issues Presented ...........................................................................................8

Statement of the Case...................................................................................8

      A.      Tipton is indicted, convicted, and sentenced. .......................................8

      B.      Tipton's motion under § 404 of the First Step Act .............................13

      C.      The district court denies relief under the First Step Act. ....................15

Summary of Argument.................................................................................21

Argument.....................................................................................................26

I.      The district court correctly concluded that Tipton was not entitled to First Step Act relief....................................................................................26

      A.      Tipton's murder convictions under § 848(e) are not "covered offenses" under § 404(b) of the First Step Act. ...................................26

              1. An offense cannot be deemed a covered offense under § 404 because other crimes defined in the same statute qualify as covered offenses .................................................................................29

              2. The provision in § 848(e)(1)(A) that creates criminal liability for a murder by a person engaging in an offense punishable under § 841(b)(1)(A) creates a distinct crime with different elements...............................................................................................31

              3. Even if this Court were to conclude that whether Tipton's § 848(e)(1)(A) offenses count as covered offenses turns on the provision covering a murder by a person engaging in an offense

under § 841(b)(1)(A), Tipton's offenses still would not count as covered offenses under § 404...........................................................34

4. Section 404 does not authorize a capital resentencing and cannot be said to override the more specific statutory provision in 21 U.S.C.§ 848(*l*), requiring a district court to adhere to a jury verdict imposing a death sentence ...............................................37

5. Tipton's request for relief conflicts with § 404(b)'s requirement that a sentence reduction be imposed "as if" the Fair Sentencing Act had applied.. .......................................................42

6. Even if Tipton's § 848(e)(1)(A) offenses were deemed covered offenses, and a discretionary sentencing reduction were available, the district court did not abuse its discretion in declining to grant a reduction as an alternative ground for denying relief.....................................................................................43

7. This Court should not create a disparity with the denial of relief to Tipton's codefendant, Cory Johnson, who raised the same claim in seeking a stay of his execution and was denied relief by the Supreme Court.. ...............................................50

Conclusion .......................................................................................51

Statement Regarding Oral Argument ......................................................52

Certificate of Compliance ...................................................................52

ii

**Table of Authorities**

**Page**

**Cases**

*Appeal of U.S. by Atty. Gen.*, 887 F.2d 465 (4th Cir. 1989) ...................................40

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) ...................................................39

*Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018) ...........................................48

*Dorsey v. United States*, 567 U.S. 260 (2012) .........................................................37

*Epic Systems Corp.v. Lewis*, 138 S. Ct. 1612 (2018) ...............................................41

*Hall v. United* States, 566 U.S. 506 (2012) .............................................................38

*Hurst v. Florida*, 577 U.S. 92 (2016) .......................................................................38

*In re McDonald*, 205 F.3d 606 (3d Cir. 2000) .................................................... 8, 51

*Johnson v. United States*, 141 S. Ct. 1233 (2021) ...................................................50

*Kimbrough v. United States*, 552 U.S. 85 (2007) .....................................................21

*MCI Telecommunications Corp. v. American Telephone & Telegraph
    Co.*, 512 U.S. 218 (1994) ..................................................................... 3, 31

*Medina v. United States*, 259 F.3d 220 (4th Cir. 2001) ...........................................39

*Morton v. Mancari*, 417 U.S. 535 (1974) ................................................................40

*Pepper v. United States*, 562 U.S. 476 (2011) .........................................................47

*Richardson v. United States*, 526 U.S. 813 (1999) ............................................. 5, 32

*Ring v. Arizona*, 536 U.S. 584 (2002) ......................................................................38

*Terry v. United States*, 141 S. Ct. 1858 (2021) ................................................. *passim*

*United States v. Black*, 737 F.3d 280 (4th Cir. 2013) ...............................................49

*United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998) ......................................... 8, 51

*United States v. Brown*, 835 F. App'x 698 (4th Cir. 2021) ......................................47

*United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020) .......................................47

*United States v. Charles*, 932 F.3d 153 (4th Cir. 2019) ..........................................43

*United States v. Croft*, 987 F.3d 93 (4th Cir. 2021) .................................................42

*United States v. Davis*, 139 S. Ct. 2319 (2019) .......................................................14

*United States v. Denson*, 963 F.3d 1080 (11th Cir. 2020)........................................41

*United States v. Easter*, 975 F.3d 318 (3d Cir. 2020)...............................................41

*United States v. Fletcher*, 997 F.3d 95 (2d Cir. 2021)................................... *passim*

*United States v. Flowers*, 963 F.3d 492 (6th Cir. 2020)...........................................50

*United States v. Guerrero*, 813 F.3d 462 (2d Cir. 2016).........................................31

*United States v. Haas*, 986 F.3d 467 (4th Cir. 2021)...............................................39

*United States v. Hager*, 721 F.3d 167 (4th Cir. 2013)................................. 4, 23, 31

*United States v. Ismel*, 1998 WL 486356 (4th Cir. Aug. 7, 1998)
    (unpublished) ................................................................................. 4, 32

*United States v. Jackson*, 945 F.3d 315 (5th Cir. 2019) ..........................................41

*United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020) ..........................................48

*United States v. Jeffery*, 631 F.3d 669 (4th Cir. 2011) ...........................................45

*United States v. Johnson*, 32 F.3d 82 (4th Cir. 1994)..............................................39

*United States v. Johnson*, 833 F. App'x 522 (4th Cir. 2021) .................................50

*United States v. Johnson*, 838 F. App'x 765 (4th Cir. 2021) .................................50

*United States v. Jones*, 962 F.3d 1290 (11th Cir. 2020).........................................27

*United States v. Judge*, 447 F. App'x 409 (3d Cir. 2011) ................................. 4, 32

*United States v. Kelley*, 962 F.3d 470 (9th Cir. 2020)..............................................41

*United States v. Mannie*, 971 F.3d 1145 (10th Cir. 2020).......................................41

*United States v. McDonald*, 986 F.3d 402 (4th Cir. 2021).......................................47

*United States v. Moore*, 975 F.3d 84 (2d Cir. 2020) ...............................................41

*United States v. Nance*, 957 F.3d 204 (4th Cir. 2020).............................................45

*United States v. Norman*, 935 F.3d 232 (4th Cir. 2019)..........................................33

*United States v. Reyes*, 51 F. App'x 488 (6th Cir. 2002) ................................. 4, 32

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004)................................. 2, 13, 46

*United States v. Savillon-Matute*, 636 F.3d 119 (4th Cir. 2011) ...........................50

*United States v. Smalls*, 720 F.3d 193 (4th Cir. 2013) ...........................................48

*United States v. Smith*, 958 F.3d 494 (6th Cir. 2020).............................................41

*United States v. Smith*, 982 F.3d 106 (2d Cir. 2020)...............................................50

*United States v. Snow*, 967 F.3d 563 (6th Cir. 2020) .................................... 6, 23, 35

*United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008)....................................................40

*United States v. Thomas*, 32 F.3d 420 (4th Cir. 2022) .................................... *passim*

*United States v. Ward*, 770 F.3d 1090 (4th Cir. 2014) ..............................................36

*United States v. Ware*, 964 F.3d 482 (6th Cir. 2020) ................................................49

*United States v. White*, 984 F.3d 76 (D.C. Cir. 2020) ...............................................49

*United States v. Whitehead*, 986 F.3d 547 (5th Cir. 2021).......................................50

*United States v. Williams*, 943 F.3d 841 (8th Cir. 2019).........................................41

*United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019) ...........................................27

*United States v. Woodson*, 962 F.3d 812 (4th Cir. 2020) .........................................27

*Whitfield v. United States*, 543 U.S. 209 (2005).......................................................39

**Statutes**

§ 404(b) of the First Step Act ......................................................................... *passim*

1 U.S.C. § 109 .............................................................................................. 8, 26, 40, 42

18 U.S.C. § 1959(a)(1)....................................................................................................2

18 U.S.C. § 1959(a)(2)....................................................................................................2

18 U.S.C. § 3553(a) .......................................................................................... *passim*

21 U.S.C. § 841(b)(1)(C) .................................................................................. *passim*

21 U.S.C. § 848................................................................................................. *passim*

**Introduction**

In 1993, defendant Richard Tipton was convicted for his role in a drug organization that was responsible for numerous murders and maimings between January and February 1992. The jury found Tipton responsible for six murders—the killings of Douglas Talley, Dorothy Mae Armstrong, Bobby Long, Anthony Carter, Curtis Thorne, and Linwood Chiles—and the evidence demonstrated that he was involved in additional violent crimes as well.

In early January 1992, Tipton brutally killed Douglas Talley, a colleague in the drug trade whom Tipton suspected of being a snitch. JA221. Codefendant James Roane restrained Talley inside a car and Tipton stabbed him repeatedly in the head, neck, and upper body. *United States v. Tipton*, 90 F.3d 861, 868 (4th Cir. 1996). The attack, which lasted only three to five minutes, resulted in the infliction of eighty-four stab wounds. *Id*. On February 1, 1992, Tipton participated in the murders of Dorothy Mae Armstrong, Bobby Long, and Anthony Carter. JA225. Armstrong was murdered over a $400 drug debt and because she was believed to be cooperating with police; Long and Carter were shot to death because they witnessed Armstrong's murder. *Id*. A little over two weeks later, on February 19, 1992, Tipton murdered Curtis Thorne and Linwood Chiles. Tipton, along with codefendant Cory Johnson, shot Chiles at close range after instructing him to place his head on the steering wheel of his car. *Tipton*, 90 F.3d at 869; *United States v. Roane*, 378 F.3d 382, 389

1

n.6 (4th Cir. 2004). Tipton and Johnson also murdered Thorne by gunfire. His body was later found on the ground outside the rear passenger door of Chiles' car. *Id*.; JA226. Two other passengers in the car, Gwen and Priscilla Greene, were also shot, likely due to being in the wrong place at the wrong time. JA226.

Tipton was convicted of the murders of Talley, Armstrong, Long, Carter, Thorne, and Chiles under 21 U.S.C. § 848(e)(1)(A) (Counts 3, 17, 18, 19, 24, 25), which criminalizes murders committed in furtherance of a continuing criminal enterprise (CCE). For those same murders, the jury also convicted him under 18 U.S.C. § 1959(a)(1) (Counts 4, 21, 22, 23, 27, 28), which criminalizes murder in aid of racketeering activity and at the time carried a sentence of any term of years up to life, but not death. The jury imposed the death sentence on Counts 3, 24, and 25 for the murders of Douglas Talley, Curtis Thorne, and Linwood Chiles. Tipton received terms of life imprisonment for all of his other murder convictions. The jury convicted Tipton under 18 U.S.C. § 1959(a)(2) for his attack on Gwen and Priscilla Greene (Counts 29 and 30).

Tipton's convictions and sentences have withstood the test of direct appeal and collateral review. Tipton's latest challenge, and the subject of this appeal, seeks a sentence reduction under § 404 of the First Step Act, a statute Congress passed in 2018 to rectify the disparity between certain crack- and powder-cocaine trafficking offenses. Tipton argues that his six convictions under § 848(e)(1)(A) (Counts 3, 17,

18, 19, 24, 25) are "covered offenses" under the First Step Act. Based on this theory, Tipton seeks a capital resentencing before a jury on Counts 3, 24, and 25, the counts on which a jury imposed death sentences in 1993.

As explained below, the text, structure, and purpose of § 404 of the First Step Act all demonstrate that he is not entitled to relief. *First*, in construing the definition of a covered offense under § 404(a) of the First Step Act, the Supreme Court has held that a court must look to the elements of the offense. *Terry v. United States*, 141 S. Ct. 1858, 1863 (2021). Section 404(a) "directs our focus to the statutory penalties for petitioner's *offense*, not the statute or statutory scheme." *Id*. *Terry* forecloses treating a conviction under § 848(e)(1)(A) as a covered offense because some other offense defined by § 848 might be deemed a covered offense. *Terry* therefore rejects a central argument Roane makes. *See also United States v. Thomas*, 32 F.3d 420 (4th Cir. 2022) (in light of *Terry* offense under 21 U.S.C. § 848(a) and (c) not covered offense).

*Second*, under § 404, a covered offense is defined as one where the Fair Sentencing Act "modified" the "statutory penalties" for an offense, and "[t]o 'modify' means 'to change moderately.'" *Terry*, 141 S. Ct. at 1863 (quoting *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218, 225 (1994)). But the Fair Sentencing Act did not modify in any respect the statutory penalties for Roane's § 848(e)(1)(A) convictions. The statutory penalties for his

3

§ 848(e)(1)(A) offense remain the same before and after the Fair Sentencing Act and § 404—20 years to life or death. Moreover, the government did not have to prove any particular quantity of crack to trigger Roane's liability under § 848(e)(1)(A). Roane's § 848(e)(1)(A) convictions are therefore indistinguishable from the crack offenses under 21 U.S.C. § 841(b)(1)(C) that the Supreme Court held not to be covered offenses in *Terry*.

Although there are three different avenues to establish criminal liability under § 848(e)(1)(A), and one of those avenues requires proof that a defendant committed a violation of § 841(b)(1)(A), *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013), Roane's case did not require proof of a § 841(b)(1)(A) violation. And when an offense under § 848(e)(1)(A) relies on establishing a § 841(b)(1)(A) violation in relation to the murder, the proof of the § 841(b)(1)(A) offense is an offense element. Every court of appeals to address that question, including this Court, has agreed. *See, e.g., United States v. Fletcher*, 997 F.3d 95, 97 n.2 (2d Cir. 2021) ("a violation of § 841(b)(1)(A) is an element of a drug-related murder" under the relevant prong of § 848(e)(1)(A)); *United States v. Ismel*, 1998 WL 486356, *5 (4th Cir. Aug. 7, 1998) (unpublished) (same); *United States v. Judge*, 447 F. App'x 409, 413 (3d Cir. 2011) (same); *United States v. Reyes*, 51 F. App'x 488, 495–96 (6th Cir. 2002) (same).

Conversely, when an offense under § 848(e)(1)(A) does not require proof of

4

a violation of § 841(b)(1)(A) and instead relies on proof of a continuing criminal enterprise (CCE) under 21 U.S.C. § 848(a) and (c), the CCE is an offense element. The Supreme Court has held that a jury must be unanimous about the series of violations needed to prove a CCE, *Richardson v. United States*, 526 U.S. 813 (1999), so necessarily, a jury must be unanimous that a CCE exists (and a portion of the jury could not rely on a § 841(b)(1)(A) offense) when proof of a CCE is an element of a § 848(e)(1)(A) offense. In short, § 848(e)(1)(A) creates distinct offenses with different elements, and only one of those offenses would require proof of a particular quantity of crack under § 841(b)(1)(A). As a result, under *Terry*, the different offenses under § 848(e)(1)(A) must be analyzed separately as a covered offense because each offense involves different elements. *Cf. Thomas*, 32 F.4th at 427 (evaluating offense under § 848(a) and (c) separately from other offenses defined in § 848).

*Third*, although Roane's § 848(e)(1)(A) offenses did not require proof of a § 841(b)(1)(A) offense, even such an offense fails to qualify as covered offense, as every court of appeals to address the question has concluded. As the Second Circuit has explained, "the penalty in § 848(e)(1)(A) is independent of that in § 841(b)(1)(A); § 848(e)(1)(A) imports only the substantive conduct required to violate § 841(b)(1)(A), not its penalty range." *Fletcher*, 997 F.3d at 97 n.2. In addition, "the effect of the Fair Sentencing Act on § 848(e)(1)(A) would not be to

'modify' its penalty range [when proof of a § 841(b)(1)(A) violation is required] but, in circumstances where the predicate drug crime does not charge the involvement of 280 grams or more of crack cocaine, eliminate criminal liability altogether." *Id*. (citing *United States v. Snow*, 967 F.3d 563, 565 (6th Cir. 2020) (per curiam)). Anticipating the Supreme Court's conclusion that "[t]o 'modify' means 'to change moderately,'" *Terry*, 141 S. Ct. at 1863, the Second and Sixth Circuits observed that eliminating criminal liability for certain conduct constitutes more than "a change in degree" and instead results in "a change in kind," that goes beyond "modifying" the penalty range that applies. *Fletcher*, 997 F.3d at n.2 (quoting *Snow*, 967 F.3d at 565).

Similarly, § 404(b) authorizes a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." That provision authorizes a sentence reduction, *not* the elimination of criminal liability. If the Fair Sentencing Act and § 404 retroactively destroyed criminal liability retroactively under § 848(e)(1)(A), it would make no sense to "impose a reduced sentence" on a conviction that no longer exists. And any elimination of criminal liability—in conflict with the text of § 404—could not be reconciled with the Saving Statute, 1 U.S.C. § 109, which requires a statute to "expressly provide" for eliminating criminal liability that had been incurred.

*Fourth*, nothing in § 404 authorizes a capital resentencing, further weakening

6

Roane's claim to relief. By statute, under 21 U.S.C. § 848(*l*), a court must impose a death sentence that a jury returns. The First Step Act neither authorizes courts to invalidate a death sentence nor permits reimpaneling a new jury for a capital resentencing. Again, § 404 cannot reach as far as Roane claims.

*Fifth*, even if Roane's § 848(e)(1)(A) offenses were deemed to be covered offenses, Roane would not be entitled to relief under § 404(b), for applying the Fair Sentencing Act "as if" it had been in effect at the time of Roane's prosecution would not have changed anything at all about his death sentence, his life sentences, or his consecutive firearm sentences. Even apart from the definition of a covered offense, Roane's claim to relief under § 404 fails.

*Sixth*, if § 848(e)(1)(A) were deemed a "covered offense" under the Act, and a sentence reduction were somehow deemed permissible, the district court has already indicated that it would not reduce Roane's sentence, and a district court does not abuse its discretion in denying discretionary relief to a defendant who was convicted of murdering four people, particularly when the Fair Sentencing Act would have no effect on the case.

*Seventh*, in the related case of Cory Johnson, one of Roane's codefendants, this Court denied en banc review of the denial of a stay of execution raising the same questions presented in this appeal. The Supreme Court then declined to grant a stay by a 7-2 vote and permitted Johnson's execution to proceed. Courts should not

"frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there." *In re McDonald*, 205 F.3d 606, 613 (3d Cir. 2000) (quoting *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998)). Here, it is more than "likely" that the Supreme Court would deny relief; the Court has already denied relief for an identical claim by a defendant involved in Roane's crimes.

This Court should affirm the district court's denial of First Step Act relief.

### Issues Presented

1.      Did the district court err in concluding that the 21 U.S.C. § 848(e)(1)(A) is not a covered offense under § 404(b) of the First Step Act?

2.      Did the district court abuse its discretion in declining to reduce the defendant's sentence as a discretionary matter?

### Statement of the Case

**A.      Tipton is indicted, convicted, and sentenced.**

On July 20, 1992, Tipton, along with six others, was charged as part of a 33-count indictment with:

- Conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count 1);

- Engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) (Count 2);

- Capital murder in furtherance of a criminal enterprise, in

8

violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2 (Counts 3, 5, 11, 17, 18, 19, 24, 25);

- Commission of violent crimes in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Counts 4, 7, 13, 14, 16, 21, 22, 23, 27, 28, 29, 30);

- Use of a firearm in relation to a crime of violence or a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts 12, 15, 20, 26); and

- Possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Counts 32 and 33).

JA36–67. These charges stemmed from Tipton's leadership role, along with Cory Johnson and James Roane, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

The facts relevant to Tipton's prosecution were summarized by this Court on direct appeal as follows:

Tipton, Roane, and Cory Johnson were principal "partners" in a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. The conspiracy's operations began in Trenton, New Jersey where Johnson and Tipton, both from New York City, became members. In August of 1990, the conspiracy expanded its operations to Richmond, Virginia where Roane joined the conspiracy in November of 1991. The Trenton-based operation came to an end on June 4, 1991 when police confiscated a large quantity of crack cocaine and firearms. In late 1991, the conspiracy's operations were expanded from the Central Gardens area of Richmond to a second area in Richmond called Newtowne.

During the period of the conspiracy's operation, its "partners", including appellants, obtained wholesale quantities of powdered cocaine from suppliers in New York City, converted it by "cooking"

9

into crack cocaine, then packaged it, divided it among themselves, and distributed it through a network of 30–40 street level dealers, "workers." Typically, the appellants and their other partners in the conspiracy's operations took two-thirds of the proceeds realized from street-level sales of their product.

Over a short span of time in early 1992, Tipton, Cory Johnson, and Roane were variously implicated in the murders of ten persons within the Richmond area—all in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the "partners."

On January 4, 1992, Tipton and Roane drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. Once there, Roane grabbed Talley from the rear while Tipton stabbed him repeatedly. The attack lasted three to five minutes and involved the infliction of eighty-four stab wounds to Talley's head, neck, and upper body that killed him.

On the evening of January 13, 1992, Tipton and Roane went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, where Tipton shot Moody twice in the back. After Moody fled by jumping through a window, both Tipton and Roane pursued. Roane, armed with a military-style knife retrieved from an apartment where the knife was kept for co-conspirator Curtis Thorne, caught up with Moody in the front yard of the apartment where he stabbed him eighteen times, killing him.

On the night of January 14, 1992, Roane, Cory Johnson, and a third person retrieved a bag of guns that they had left at an apartment earlier that day. Roane then located Peyton Johnson, another rival drug dealer, at a tavern. Shortly after Roane left the tavern, Cory Johnson entered with another person and fatally shot Peyton Johnson with a semi-automatic weapon.

\*       \*       \*

In late January, 1992, after being threatened by Cory Johnson for not paying for a supply of crack cocaine, Dorothy Armstrong went to live

10

with her brother, Bobby Long. On February 1, Cory Johnson learned from Jerry Gaiters the location of Long's house. Thereafter, Tipton and an unidentified "young fellow" picked up Gaiters and Cory Johnson who were then driven by Tipton to a house where the group obtained a bag of guns. After dropping off the unidentified third party, the group proceeded to Long's house. Upon arriving at Long's house, Cory Johnson and Gaiters got out of the car and approached the house. While Tipton waited in the car, Cory Johnson and Gaiters went to the front door. When Long opened the door, Cory Johnson opened fire, killing both Dorothy Armstrong and one Anthony Carter. Bobby Long fled out the front door, but was fatally shot by Cory Johnson in the front yard.

In early February 1992, Cory Johnson began to suspect that Linwood Chiles was cooperating with the police. On February 19, 1992, Johnson borrowed Valerie Butler's automobile and arranged to meet with Chiles. That night, Chiles, Curtis Thorne, and sisters Priscilla and Gwen Greene met Cory Johnson and drove off together in Chiles's station wagon. Chiles parked the car in an alley, and Tipton soon drove in behind it in another car, got out, and came up alongside the stationwagon. With Tipton standing by, Cory Johnson told Chiles to place his head on the steering wheel and then shot Chiles twice at close range. Additional shots were fired, killing Thorne and critically wounding both of the Greene sisters. The autopsy report indicated that Thorne had been hit by bullets fired from two different directions.

*United States v. Tipton*, 90 F.3d 861, 868–69 (4th Cir. 1996).

In February 1993, a jury convicted Tipton of six capital murders under § 848(e) (Counts 3, 17, 18, 19, 24, 25); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, 30); using a firearm in relation to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 20 and 26); and possession of cocaine base with the intent to distribute under § 841(a)(1)

11

(Counts 32 and 33). JA192. Following a penalty hearing on the capital murder counts, the jury recommended that Tipton be sentenced to death for three of the six murders for which he was convicted under § 848(e) (Counts 3, 24, 25). *See Tipton*, 90 F.3d at 870.

In accordance with the jury's recommendation, the Honorable James R. Spencer, then the presiding district judge, sentenced Tipton to death. *Id*. The jury also sentenced Cory Johnson to death on all seven of the § 848(e)(1)(A) murders for which he was convicted, and sentenced James Roane to death for one of the three § 848(e)(1)(A) murders for which he was convicted. *Id*.

After sentencing, the district court refused to orders the defendants' execution on the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect. *Id*.

All three defendants appealed their convictions and sentences and the government cross-appealed the district court's stay of execution. *Id*. This Court affirmed the defendants' convictions and sentences, with the exception of the Count One § 846 cocaine conspiracy, which it vacated as being a lesser included offense of the § 848 continuing criminal enterprise convictions. *Id*. at 891, 903. As to the district court's refusal to execute the defendants' death sentences, this Court reversed the order and "remand[ed] with instructions to enter appropriate orders for the

executions in accordance with regulation promulgated by the Attorney General." *Id.* at 903.

**B.    Tipton's Motion under § 404 of the First Step Act**

Upon completion of his direct appeal, Tipton moved for habeas relief, which this Court ultimately denied. *See Roane*, 378 F.3d 382. Thereafter, Tipton filed additional collateral challenges to his convictions and sentences, the last of which resulted in an authorized successive motion under 28 U.S.C. § 2255, challenging his convictions under 18 U.S.C. § 924(c). *See* Order, *In re Richard Tipton*, No. 20-10, ECF No. 42 (4th Cir. Jan. 24, 2022) (granting authorization to file successive habeas petition); Order, *In re Richard Tipton*, No. 19-2, ECF No. 9 (4th Cir. May 14, 2019) (denying authorization to file successive habeas petition); *In re Richard Tipton*, No. 16-7, ECF No. 13 (4th Cir. June 6, 2016) (denying authorization to file successive habeas petition).

On July 31, 2020, Tipton filed a motion for a sentence modification under § 404(b) of the First Step Act. JA9. In that motion, Tipton advanced one central argument: that his capital murder convictions under § 848(e) (Counts 3, 17, 18, 19, 24, 25), and his cocaine distribution convictions (Count 32 and 33) are "covered offenses" under § 404(b) of the First Step Act, and that, consequently, his death sentence should be vacated and that he should receive a resentencing. JA12–17. Tipton also sought resentencing on the § 848(e) convictions for which he received

13

terms of life imprisonment (Counts 17, 18, 19). In sum, Tipton sought vacatur of his sentences on Counts 3, 24, and 25 and an evidentiary hearing regarding the imposition of new sentences for both the capital and non-capital § 848(e) convictions. JA33.

Tipton also advanced a number of additional arguments having little to do with the First Step Act. Tipton first noted that his conviction on Count 1 was vacated by this Court on direct appeal and that he should be resentenced "without the influence of this superadded, unconstitutional conviction on the sentencing decision." JA110. Tipton also stated that his § 924(c) convictions (Counts 20 and 26) were invalid in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). JA24–27. And finally, Tipton claimed that his eight convictions for committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, 30) were improperly charged and therefore invalid. JA27–29.

14

In response, the government argued that § 848(e) is not a covered offense under § 404(b) of the First Step Act. JA125–33. The government also argued that even if § 848(e) were a covered offense under the Act, the district court should, given the seriousness nature of Tipton's offense, decline to exercise its discretion to reduce his sentence. JA112–14. The government further argued that a § 404(b) reduction proceeding was not a substitute for collateral review and that therefore, Tipton's additional arguments were improperly raised in a First Step Act motion. JA110–12.

## C.    The district court denies relief under the First Step Act.

On October 29, 2020, the district court denied Tipton's First Step Act motion, determining that the "laws passed to reduce the sentencing disparities between non-violent crack and powder cocaine offenses" did not apply to the defendant's "sentences imposed for multiple drug-related murders." JA146.[1]

The district court explained that Congress passed the Fair Sentencing Act in 2010 to reduce the sentencing disparity between certain crack- and powder-cocaine

---

[1] In denying Tipton's First Step Act motion, the district court incorporated its earlier, more comprehensive opinion in *United States v. Roane*, No. 92-cr-68, 2020 WL 6370984 (E.D. Va. Oct. 29, 2020), which denied relief along the same lines for one of Tipton's codefendants. *See* JA189 n.1. As relevant, this brief refers to both the opinion in *Roane* (JA146–88), and the district court's individualized order in *Tipton* (JA189–200). The defendant in *Roane* appealed the district court's denial of relief in *United States v. Roane*, No. 20-14. The government's response brief here substantially mirrors its response brief in that case. *See United States v. Roane*, No. 20-14 (4th Cir. gov't brief filed Feb. 16, 2021), ECF No. 24.

15

trafficking offenses. JA155–57. It further explained that the Fair Sentencing Act did not, however, "amend the statutory penalties for violent crimes in furtherance of trafficking crack cocaine"; to the contrary, Congress instructed the Sentencing Commission to increase the offense levels for purposes of Guidelines calculations for such violent defendants. JA157.

In December of 2018, Congress passed the First Step Act, which allowed the retroactive application of the Fair Sentencing Act's reduced-sentencing provisions. JA158. Subsection 404(a) of the First Step Act defines which offenses are "covered" by that retroactivity provision: "the term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." *Id*. (quoting First Step Act, § 404(a), 132 Stat. at 5222). The First Step Act provides that a "court that imposed a sentence for a covered offense, may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id*. (quoting First Step Act, § 404(b), 132 Stat. at 5222). Such a sentencing reduction is discretionary, however, as the First Step Act also states that "[n]othing in this section shall be construed to require a court to reduce any sentence." *Id*. (quoting First Step Act, § 404(c), 132 Stat. at 5222).

The district court determined that Tipton's capital murder convictions under § 848(e)(1)(A) were not "covered offenses" under the First Step Act. Sections 2 and

16

3 of the Fair Sentencing Act, the court explained, "expressly affected three criminal statutes: 21 U.S.C. § 841(b)(1), 21 U.S.C. § 960(b) and 21 U.S.C. § 844(a)." JA161. The Fair Sentencing Act did not explicitly mention 21 U.S.C. 848, the court stated, "for good reason: as § 848 targets dangerous drug kingpins while the Fair Sentencing Act seeks to address the sentencing disparity between low-level crack dealers and large-scale powder cocaine distributors." *Id*. The court observed that some provisions of § 848—in particular, § 848(b)—do cross-reference other statutes that were modified by the Fair Sentencing Act, but that Tipton's own capital convictions were pursuant to § 848(e)(1)(A), which creates "'a separate crime'" of "killing in furtherance of any one of three distinct predicate offenses." JA162–63. The statutory penalty for that crime, the court explained, was unchanged by the Fair Sentencing Act: it was, and remains, death or life imprisonment with a statutory minimum of 20 years of imprisonment. JA171–72.

The district court rejected Tipton's contention that his § 848(e)(1)(A) convictions were nonetheless "covered" on the theory that they included a covered offense—"engaging in an offense punishable under section 841(b)(1)(A)"—as a predicate. JA172. Instead, the district court explained, the indictment, jury instructions, and verdict form all made it clear that the predicate for Tipton's capital murder convictions under § 848(e)(1)(A) was his engagement in a continuing criminal enterprise, and "neither the Fair Sentencing Act nor the First Step Act

17

extinguished his criminal liability for his CCE conviction." JA165–66. Although the CCE conviction, "in turn, rested on violations of § 841(b)(1)(A)," the district court explained that the Fair Sentencing Act's modifications of the statutory penalties in § 841 did not affect Tipton's own substantive liability or his statutory penalty under § 848. JA167–68. In these circumstances, the district court determined, the First Step Act would only apply to Tipton's capital convictions if it defined a covered offense not only as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010," but also to include "a violation of a Federal criminal statute that rests on the violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." JA168. But "Congress did not write the First Step Act this broadly." *Id*.

The district court also observed that following the First Step Act's instruction to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed" would be nonsensical as applied to Tipton's capital murder conviction, because the Fair Sentencing Act—which adjusted the penalty scheme for offenses involving certain quantities of crack cocaine—had no effect on the penalty or any other aspects of Tipton's sentencing for those crimes.  JA170–71. And the court further observed that resentencing Tipton pursuant to the First Step Act would be in conflict with the

18

statute under which he was convicted, which "mandated the imposition of the death penalty upon the jury's recommendation." JA176 (citing 21 U.S.C. § 848(*l*)). The First Step Act did not, the district court noted, "expressly vest the courts with the discretion or authority to impanel a new sentencing jury." JA177. Especially given the First Step Act's permissive language about resentencing, the district court declined to find that it authorizes reopening a capital sentencing proceeding for "the most violent drug offenders." *Id*. The district court also observed that while several courts had considered "similar, but not identical" issues, "the only published circuit court opinion to address an § 848(e) conviction under the First Step Act," an opinion by the Sixth Circuit, "came to the same conclusion as the Court does here." JA179 (citing *United States v. Snow*, 967 F.3d 563, 564 (6th Cir. 2020)).

Finally, the district court agreed that Tipton's conviction under Counts 32 and 33 for possession with intent to distribute cocaine base were "covered offenses" under the First Step Act, but declined to exercise its discretion to reduce his sentence on those counts. JA197. As relevant here, the district court concluded that "[t]he applicable [18 U.S.C. § 3553(a)] factors weigh against granting [Tipton's] motion." *Id*. First addressing the nature and circumstances of the offense, the district court held that these factors "weigh heavily against" Tipton. JA198. As it stated, Tipton "murdered multiple people on different occasions in cold blood in furtherance of his drug trafficking. Defendant maimed several others in the commission of those

19

murders. Defendant did not limit his violence to others engaged in drug trafficking—innocent bystanders fell victim to Defendant simply as a result of finding themselves in the wrong place at the wrong time." *Id*. The Court noted that it had considered Tipton's mitigation evidence, "including his neglectful and abusive childhood," but that "these mitigating factors do not outweigh the heinous nature and circumstances of his offenses." *Id*.

The district court then concluded "that reducing [Tipton's] sentence would not reflect the seriousness of the offense, promote just punishment for the offense, provide respect for the law or afford adequate deterrence to criminal conduct." As the court put it, "reducing the sentence of a lethal drug dealer would undermine these goals." *Id*. The court then elaborating on its rationale:

> Defendant has proven himself as the ultimate danger to the community. Defendant led an extremely violent drug enterprise that killed at least ten people, with Defendant personally implicated in at least six killings. The jury recognized Defendant's status as a highly dangerous individual in sentencing him to the death penalty—a penalty reserved for only the most vicious and dangerous criminals.

*Id*. The district court acknowledged Tipton's rehabilitative efforts, but concluded that these efforts "pale in comparison to the dangers that he poses to society." *Id*. Relatedly, the district court noted that Tipton's substantial disciplinary record demonstrated a lack of respect for the law and "weigh[ed] against a reduced sentence." *Id*. The court then continued as follows:

20

a reduced sentence would fail to reflect the seriousness of Defendant's cries. Nor would a reduced sentence provide for a just punishment for Defendant's horrific acts. Likewise, reducing the sentence of a serial killer would undermine respect for the law and detract from adequate deterrence to criminal conduct.

*Id*.

In concluding, the district court observed that the "jury in this case heard all of the evidence relating to [Tipton's] role in this drug enterprise and the six individuals that he killed to protect his enterprise." JA200. In addition to "evidence of the atrocious crimes for which it convicted" Tipton, the jury also "heard evidence relating to his character." *Id*. "That jury—speaking on behalf of the community—unanimously decided that this heinous serial killer deserved to die for his actions. The Court refuses to overturn the will of the community." *Id.*

## Summary of Argument

The district court correctly determined that the text, structure, and history of the Fair Sentencing Act, the First Step Act, and § 848(e)(1)(A) all counseled against concluding that murder in furtherance of a criminal enterprise is a covered offense under the Act. As an initial matter, it is unsurprising that the penalties for murder in furtherance of a continuing criminal enterprise were not modified by the Fair Sentencing Act. The Fair Sentencing Act was passed because of findings like the U.S. Sentencing Commission's that "crack is associated with 'significantly less trafficking-related violence … than previously assumed.'" *Kimbrough v. United States*, 552 U.S. 85, 98 (2007). But § 848(e) requires proof of a murder, and its

21

statutory penalties remain the same before and after the Fair Sentencing Act. In keeping with the elements of § 848(e), Tipton's particular case involved an extremely violent drug organization, and he received the death sentence, the multiple terms of life imprisonment, and the consecutive firearm sentences because of the murders he committed.

Tipton's death sentences and life sentences would not change under the Fair Sentencing Act. This core point is a common thread woven through seven reasons that Tipton cannot prevail in this appeal. *First*, the Supreme Court in *Terry* rejected a core part of Tipton's argument—that his § 848(e)(1)(A) murders are covered offenses because another offense in § 848 could be deemed a covered offense. *Second*, under § 404, a covered offense is defined as one where the Fair Sentencing Act "modified" the "statutory penalties" for an offense, and "[t]o 'modify' means 'to change moderately.'" *Terry*, 141 S. Ct. at 1863. But the Fair Sentencing Act did not modify in any respect the statutory penalties for Tipton's § 848(e)(1)(A) convictions. The statutory penalties for his § 848(e)(1)(A) offense remain the same before and after the Fair Sentencing Act and § 404—20 years to life or death. Moreover, the government did not have to prove any particular quantity of crack to trigger Tipton's liability under § 848(e)(1)(A). Under the definition of a covered offense in § 404(a), Tipton's § 848(e)(1)(A) convictions are therefore indistinguishable from the crack offenses under 21 U.S.C. § 841(b)(1)(C), which

22

*Terry* holds are not covered offenses.

Although one avenue to establish criminal liability under § 848(e)(1)(A) requires proof that a defendant committed a violation of § 841(b)(1)(A), *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013), Tipton's case did not require proof of a § 841(b)(1)(A) violation. When an offense under § 848(e)(1)(A) relies on establishing a § 841(b)(1)(A) violation in relation to the murder, the proof of the § 841(b)(1)(A) offense is an offense element. But the elements of Tipton's § 848(e)(1)(A) offenses did not include that element, and *Terry* requires a court to examine the offense elements to determine when an offense is a covered offense.

*Third*, although Tipton's § 848(e)(1)(A) offenses did not require proof of a § 841(b)(1)(A) offense, even such an offense fails to qualify as a covered offense, as every court of appeals to address the question has concluded. As the Second Circuit has explained, "the penalty in § 848(e)(1)(A) is independent of that in § 841(b)(1)(A); § 848(e)(1)(A) imports only the substantive conduct required to violate § 841(b)(1)(A), not its penalty range." *Fletcher*, 997 F.3d at 97 n.2. In addition, "the effect of the Fair Sentencing Act on § 848(e)(1)(A) would not be to 'modify' its penalty range [when proof of a § 841(b)(1)(A) violation is required] but, in circumstances where the predicate drug crime does not charge the involvement of 280 grams or more of crack cocaine, eliminate criminal liability altogether." *Id*. (citing *United States v. Snow*, 967 F.3d 563, 565 (6th Cir. 2020) (per curiam)).

23

Anticipating the Supreme Court's conclusion that "[t]o 'modify' means 'to change moderately,'" *Terry*, 141 S. Ct. at 1863, the Second and Sixth Circuits observed that eliminating criminal liability for certain conduct constitutes more than "a change in degree" and instead results in "a change in kind," that goes beyond "modifying" the penalty range that applies. *Fletcher*, 997 F.3d at n.2 (quoting *Snow*, 967 F.3d at 565).

Similarly, § 404(b) authorizes a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." That provision authorizes a sentence reduction, *not* the elimination of criminal liability. And any elimination of criminal liability—in conflict with the text of § 404—could not be reconciled with the Saving Statute, 1 U.S.C. § 109, which requires a statute to "expressly provide" for eliminating criminal liability that had been incurred. If the Fair Sentencing Act and § 404 retroactively destroyed criminal liability retroactively under § 848(e)(1)(A), it would make no sense to "impose a reduced sentence" on a conviction that no longer exists. The language of § 404 cannot support such a result.

*Fourth*, nothing in § 404 authorizes a capital resentencing, further undermining Tipton's claims. By statute, under 21 U.S.C. § 848(*l*), a court must impose a death sentence that a jury returns. The First Step Act neither authorizes courts to invalidate a death sentence nor permits reimpaneling a new jury for a capital resentencing. Again, § 404 cannot reach as far as Roane claims.

24

*Fifth*, even if Tipton's § 848(e)(1)(A) offenses were deemed to be covered offenses, Tipton would not be entitled to relief under § 404(b), for applying the Fair Sentencing Act "as if" it had been in effect at the time of Tipton's prosecution would not have changed anything at all about his death sentences, his life sentences, or his consecutive firearm sentences.

*Sixth*, if § 848(e)(1)(A) were deemed a "covered offense" under the Act, and a sentence reduction were somehow deemed permissible, the district court has already indicated that it would not reduce Tipton's sentence, and a district court does not abuse its discretion in denying discretionary relief to a defendant who was convicted of murdering four people, after considering a legislative change that had no effect in the case.

*Seventh*, this Court denied en banc review of the denial of a stay of execution for one of Tipton's codefendants, Cory Johnson, raising the same questions presented in this appeal. The Supreme Court then declined to grant a stay by a 7-2 vote and permitted Johnson's execution to proceed. Roane's case should not be treated differently.

This Court should therefore affirm the district court's denial of First Step Act relief.

25

**Argument**

I.    **The district court correctly concluded that Tipton was not entitled to First Step Act relief.**

A.    **Tipton's murder convictions under § 848(e) are not "covered offenses" under § 404(b) of the First Step Act.**

The First Step Act provides that a sentencing court "may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Under the First Step Act, a "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id*. § 404(a), 132 Stat. at 5222.

The Supreme Court abrogated this Court's precedent interpreting the definition of a covered offse under § 404(c) of the First Step Act. *See Terry v. United States*, 141 S. Ct. 1858 (2021); *United States v. Thomas*, 32 F.4th 420, 425–26 (4th Cir. 2022). *Terry*'s analysis has implications for whether Tipton's offenses under 21 U.S.C. § 848(e)(1)(A) qualify as a covered offense.

Previously, this Court held that "[t]he most natural reading of the First Step Act's definition of 'covered offense' is that 'the statutory penalties for which were modified by [certain sections of the Fair Sentencing Act]' refers to 'a Federal criminal statute' rather than 'a *violation* of a Federal criminal statute.'" *United States*

26

*v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019). *Wirsing* concluded that "[b]ecause 'Federal criminal statute' appears closer to 'statutory penalties for which' than does 'violation,' it is more natural to attach 'penalties' to 'statute' than to 'violation.'" *Id*.

And in *United States v. Woodson*, 962 F.3d 812 (4th Cir. 2020), this Court applied *Wirsing* and concluded that a crack offense under 21 U.S.C. § 841(b)(1)(C) is a "covered offense." To conclude that a crack offense under § 841(b)(1)(C) counts as a covered offense, *Woodson* took into account the entire penalty scheme appearing in 21 U.S.C. § 841(b)(1), rather than evaluating the Fair Sentencing Act's effect on the statutory penalties for a § 841(b)(1)(C) violation.

In this appeal, Tipton sought to build upon the Court's approach in *Wirsing* and *Woodson* and contended that § 848(e)(1)(A) must be a covered offense because other parts of § 848 could be deemed a covered offense. But the Supreme Court rejected the doctrinal framework on which his argument depends. Disagreeing with the reasoning of *Wirsing*, the Supreme Court held that in § 404(a), "'statutory penalties' references the entire, integrated phrase 'a violation of a Federal criminal statute.'" *Terry*, 141 S. Ct. at 1862 (citing *United States v. Jones*, 962 F.3d 1290, 1298 (11th Cir. 2020)). The Supreme Court continued that the full phrase "means 'offense,'" and "[w]e thus ask whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense." *Id*.

27

Applying that standard, the Supreme Court held that a crack offense under 21 U.S.C. § 841(b)(1)(C) is not a covered offense, abrogating *Woodson*. As the Supreme Court explained, the Fair Sentencing Act did not modify the statutory penalties for a crack offense under § 841(b)(1)(C). The Court continued that both before and after the Fair Sentencing Act, the statutory penalties for a crack offense under § 841(b)(1)(C) remained the same—0 to 20 years imprisonment, a fine of up to $1 million, or both, and a period of supervised release. *Terry*, 141 S. Ct. at 1862–63.

In contrast, the Fair Sentencing Act did modify the "statutory penalties" for a crack offense under §§ 841(a), (b)(1)(A)(iii) and §§ 841(a), (b)(1)(B)(iii), provisions that trigger higher mandatory minimums and higher statutory maximums depending on the quantity of crack cocaine involved. "The Fair Sentencing Act plainly 'modified' the 'statutory penalties' for those [offenses]. It did so by increasing the triggering quantities from 50 grams to 280 grams in subparagraph (A) and from 5 grams to 28 in subparagraph (B)." *Terry*, 141 S. Ct. at 1863. These changes are in turn reflected in the elements for those offenses. *Id*. "But no statutory penalty changed for subparagraph (C) offenders." *Id*.

In deciding that a crack offense under § 841(b)(1)(C) is not a covered offense, the Supreme Court rejected that a defendant could claim that a crack offense under § 841(b)(1)(C) is a covered offense by arguing that the Fair Sentencing Act modified

28

the "penalty statute" or "penalty scheme." The Supreme Court explained that the definition of a covered offense in § 404(a) "directs our focus to the statutory penalties for petitioner's *offense*, not the statute or statutory scheme." *Id.* Moreover, the Court added, "[e]ven if the 'penalty statute' or 'penalty scheme' were the proper focus, neither was modified for subparagraph (C) offenders," for even offenders with greater than 5 or 50 grams of crack could have charged and prosecuted under subparagraph (C). *Id.* It "defies common parlance," the Court concluded, "to say that altering a *different* provision modified subparagraph (C). If Congress abolished the crime of possession with intent to distribute, prosecutors would have to bring charges under the lesser included offense of simple possession. But nobody would say that abolishing the first offense changed the second." *Id.* at 1864.

The Supreme Court's reasoning in *Terry* shows that Tipton's offenses under 21 U.S.C. § 848(e)(1)(A) are not covered offenses. There are multiple, converging reasons that Tipton is not entitled to relief under § 404.

> 1.    *An offense cannot be deemed a covered offense under § 404 because other crimes defined in the same statute qualify as covered offenses.*

In determining whether an offense is a covered offense under § 404(a) of the First Step Act, *Terry* held that a court must determine "whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense." *Terry*, 141 S. Ct. at 1862. But because the statutory penalty range for a violation of 21 U.S.C. § 848(e)(1)(A) remains the same before and after the Fair Sentencing Act—20 years

to life imprisonment or death, a fine, and a term of supervised release—defendant's offense is not a covered offense under § 404. Nothing that the Fair Sentencing Act modified the statutory penalty range for an offense under § 848(e)(1)(A), the prerequisite that *Terry* requires for an offense to fall under § 404(a). *Terry* is also clear that a crime is not a "covered offense" merely because some aspect of the overarching statutory scheme, governing other offenses, was modified by the Fair Sentencing Act. Instead, the analysis turns on whether the statutory penalty range was changed for the defendant's actual offense of conviction—and here, that approach forecloses relief.

The statutory text of § 848(e)(1)(A) confirms this point because nothing in that text was modified by the Fair Sentencing Act, and the statutory penalty range remains exactly the same.

The relevant statutory text is as follows: "any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death." 21 U.S.C. § 848(e)(1)(A). The statutory penalties for this offense remain unchanged. *See, e.g., United States v.*

30

*Guerrero*, 813 F.3d 462, 464–65 (2d Cir. 2016) ("The [Fair Sentencing] Act makes no mention of § 848(e)(1)(A)."). And in *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), this Court held that § 848(e) is a separate substantive offense, and not just a penalty enhancement. 104 F.3d at 633.

> 2. *The provision in § 848(e)(1)(A) that creates criminal liability for a murder by a person engaging in an offense punishable under § 841(b)(1)(A) creates a distinct crime with different elements.*

Under § 404, a covered offense is defined as one where the Fair Sentencing Act "modified" the "statutory penalties" for an offense, and "[t]o 'modify' means 'to change moderately.'" *Terry*, 141 S. Ct. at 1863 (quoting *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218, 225 (1994)). In Tipton's case, not only did the statutory penalties in § 848(e)(1)(A) remain unchanged, but also the government did not have to prove any particular quantity of crack to trigger Tipton's liability under § 848(e)(1)(A). Tipton's § 848(e)(1)(A) convictions are therefore indistinguishable from the crack offenses under 21 U.S.C. § 841(b)(1)(C) that the Supreme Court held not to be covered offenses in *Terry*.

Although there are three different avenues to establish criminal liability under § 848(e)(1)(A), and one of those avenues requires proof that a defendant committed a violation of § 841(b)(1)(A), *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013), Tipton's case did not require proof of a § 841(b)(1)(A) violation. When

31

an offense under § 848(e)(1)(A) relies on establishing a § 841(b)(1)(A) violation in relation to the murder, the proof of the § 841(b)(1)(A) offense is an offense element. Every court of appeals to address that question, including this Court, has agreed. *See, e.g., United States v. Fletcher*, 997 F.3d 95, n.2 (2d Cir. 2021) ("a violation of § 841(b)(1)(A) is an element of a drug-related murder" under the relevant prong of § 848(e)(1)(A)); *United States v. Ismel*, 1998 WL 486356, *5 (4th Cir. Aug. 7, 1998) (unpublished) (same); *United States v. Judge*, 447 F. App'x 409, 413 (3d Cir. 2011) (same); *United States v. Reyes*, 51 F. App'x 488, 495–96 (6th Cir. 2002) (same).

Conversely, when an offense under § 848(e)(1)(A) does not require proof of a violation of § 841(b)(1)(A) and instead relies on proof of a continuing criminal enterprise (CCE) under 21 U.S.C. § 848(a) and (c), the CCE is an offense element. Put differently, a defendant could not be convicted under § 848(e)(1)(A) when the government failed to prove that the murder occurred in relation to an offense under § 841(b)(1)(A) *and* failed to prove that the murder was in relation to a CCE. In the absence of the § 841(b)(1)(A) offense, the government must prove the requisite relationship between the murder and a CCE.

The Supreme Court has held that a jury must be unanimous about the series of violations needed to prove a CCE, *Richardson v. United States*, 526 U.S. 813 (1999); *Thomas*, 32 F.4th at 427, so necessarily, a jury must be unanimous that a CCE exists (and a portion of the jury could not rely on a § 841(b)(1)(A) offense)

32

when proof of a CCE is an element of a § 848(e)(1)(A). In short, § 848(e)(1)(A) creates at least two different offenses with different elements, and only one of those offenses would require proof of a particular quantity of crack under § 841(b)(1)(A).[2] As a result, under *Terry*, Tipton's offenses did not require proof of a violation of § 841(b)(1)(A) as an offense element to trigger liability under § 848(e)(1)(A), and under *Terry* the elements that apply to Tipton's case must be analyzed separately.

Nothing in *NJB* undermines the conclusion that § 848(e)(1)(A) has distinct elements depending on whether criminal liability requires proof of a § 841(b)(1)(A) offense. *NJB* did not need to decide that question; there is no evidence that issue was presented to the Court; and a great deal of relevant precedent on determining offense elements has been issued since *NJB* was decided. *Cf. United States v. Norman*, 935 F.3d 232, 240 (4th Cir. 2019) ("a 'passing observation' on an issue neither briefed nor disputed does not constitute a holding").

And again, it is clear that Tipton was convicted of committing murder in furtherance "of a continuing criminal enterprise." *See Tipton*, 90 F.3d at 887 ("The

---

[2] It is unnecessary to decide here whether the two alternatives of "engaging in or working in furtherance of" a CCE in § 848(e)(1)(A) create distinct crimes or merely distinct means. What matters here is that precedent establishes that the statutory text's division of two classes of persons, (1) "any person engaging in or working in furtherance of a continuing criminal enterprise," or (2) "any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1)," create distinct elements and that the jury must be unanimous about which of those two clauses apply.

33

Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances."). As the district court explained, the indictment, jury instructions, and verdict form all specify that the defendants in this case were charged and convicted under the "continuing criminal enterprise" prong of § 848(e)(1)(A). JA171–72 ("Simply put, Defendant's convictions in no way rest on the second prong — engaging in an offense punishable under § 841(b)(1)(A)."). Thus, even if the crime under § 848(e)(1)(A) that incorporates a § 841(b)(1)(A) violation were a "covered offense"—which it is not—it would have no bearing on Tipton's case.

3.    *Even if this Court were to conclude that whether Roane's § 848(e)(1)(A) offenses count as covered offenses turns on the provision covering a murder by a person engaging in an offense under § 841(b)(1)(A), Tipton's offenses still would not count as covered offenses under § 404.*

Although Tipton's § 848(e)(1)(A) offenses did not require proof of a § 841(b)(1)(A) offense, even such an offense fails to qualify as covered offense, as every court of appeals to address the question has concluded. As the Second Circuit has explained, "the penalty in § 848(e)(1)(A) is independent of that in § 841(b)(1)(A); § 848(e)(1)(A) imports only the substantive conduct required to violate § 841(b)(1)(A), not its penalty range." *Fletcher*, 997 F.3d at 97 n.2. In

34

addition, "the effect of the Fair Sentencing Act on § 848(e)(1)(A) would not be to 'modify' its penalty range [when proof of a § 841(b)(1)(A) violation is required] but, in circumstances where the predicate drug crime does not charge the involvement of 280 grams or more of crack cocaine, eliminate criminal liability altogether." *Id.* (citing *United States v. Snow*, 967 F.3d 563, 565 (6th Cir. 2020) (per curiam)). Anticipating the Supreme Court's conclusion that "[t]o 'modify' means 'to change moderately,'" *Terry*, 141 S. Ct. at 1863, the Second and Sixth Circuits observed that eliminating criminal liability for certain conduct goes beyond "a change in degree" and instead results in "a change in kind," that goes beyond "modifying" the penalty range that applies. *Fletcher*, 997 F.3d at n.2 (quoting *Snow*, 967 F.3d at 565). No court of appeals has disagreed with this conclusion. Although a few clauses of the opinion in *Thomas* could be construed as hinting that such an offense might be a covered offense, that issue was not before the Court and cannot be said to have been squarely decided. *Thomas* did not obliquely create a circuit split.

The Second Circuit has properly rejected an attempt to obtain relief from a § 848(e) conviction under the Fair Sentencing Act, in a case where the defendant *was* convicted under the prong of § 848(e)(1)(A) that requires proof of a violation § 841(b)(1)(A). In *Guerrero*, 813 F.3d 462, the defendant argued that the Fair Sentencing Act compelled vacatur of his § 848(e) conviction because after the Act's passage, "§ 848(e)(1)(A)'s drug trafficking element required the jury to find that the

35

conspiracy involved at least 280 grams of crack cocaine" and "[b]ecause only a quantity of 50 grams was alleged and proved, … the Government failed to establish an element of the charged murder offense[.]" *Id*. at 465. The Second Circuit rejected this argument, explaining that the "crime" under § 848(e)(1)(A) "is complete at the time of the murder," when "the threshold quantity of crack cocaine necessary under § 841(b)(1)(A) was 50 grams or more." *Id.* The Fair Sentencing Act was "designed to increase threshold quantities of drugs necessary to trigger certain enhanced penalty schemes, to remove certain mandatory minimum sentences, and to direct the promulgation of new Sentencing Guidelines," but did *not* "extinguish any criminal liability under § 848(e)(1)(A)." *Id.* at 465–66.

The reasoning of *Fletcher* and *Snow* about § 848(e)(1)(A) offenses that depend on proof of a § 841(b)(1)(A) violation is strongly reinforced by some additional statutory provisions. First, § 404(b) authorizes a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." That provision authorizes a sentence reduction, *not* the elimination of criminal liability.

Second, any elimination of criminal liability—in conflict with the text of § 404—could not be reconciled with the Saving Statute, 1 U.S.C. § 109, which requires a statute to "expressly provide" for eliminating criminal liability that had been incurred. *See, e.g., United States v. Ward*, 770 F.3d 1090, 1096 (4th Cir. 2014)

36

(under Saving Statute, new law changing criminal penalties "may be applied retroactively if it is clear that Congress intended this result") (citing *Dorsey v. United States*, 567 U.S. 260, 274–75 (2012)).

In sum, if the Fair Sentencing Act and § 404 retroactively destroyed criminal liability retroactively under § 848(e)(1)(A), it would make no sense to "impose a reduced sentence" on a conviction that no longer exists. The language of § 404 cannot support such a result.

    *4.     Section 404 does not authorize a capital resentencing and cannot be said to override the more specific statutory provision in 21 U.S.C.§ 848(l), requiring a district court to adhere to a jury verdict imposing a death sentence.*

The flaws in Tipton's argument that § 848(e)(1)(A) is a covered offense under the First Step Act are brought into starkest relief when viewed against the actual, tangible relief he seeks from this Court. As he did below, Tipton asks this Court to grant him a capital resentencing before a jury. For this novel proposition, Tipton cites no relevant authority. More critically, Tipton fails to point to a single letter in the First Step Act that would support his extraordinary request for relief. Nor could he. The First Step Act states that the "*court* that imposed a sentence for a covered offense, may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act, § 404(b), 132 Stat. at 5222 (emphasis added). Thus, the First Step Act grants *district courts* the power to impose reduced sentences in a

37

number of circumstances. *See United States v. Chambers*, 956 F.3d 667, 673 (4th Cir. 2020) ("§ 404(b) of the First Step Act expressly allows a court to impose a reduced sentence in order to give retroactive effect to sections 2 and 3 of the Fair Sentencing Act."). Rempaneling a jury for a capital resentencing is clearly not what Congress authorized in § 404. And while § 404 does allow courts to reduce noncapital sentences, the governing capital sentencing procedures require the jury to make the determination about whether to impose a death sentence. This statutory scheme further reinforces that the First Step Act does not permit disturbing Tipton's death sentence. As noted above, the First Step Act's text and animating purpose, indicate that it was not intended to override § 848's more specific provisions governing death sentences.[3]

The Supreme Court cases—*Hurst v. Florida*, 577 U.S. 92 (2016), and *Ring v. Arizona*, 536 U.S. 584 (2002)—and statutes—21 U.S.C. § 848(i)(1)(B)(iv), and 18 U.S.C. § 3593(b)(2)(D)—undermine Tipton's argument.

"Congress is aware of existing law when it passes legislation." *Hall v. United States*, 566 U.S. 506, 516 (2012); *see also Medina v. United States*, 259 F.3d 220,

---

[3] Tipton was convicted prior to the enactment of the Federal Death Penalty Act. His sentence is therefore controlled by the repealed procedures in 21 U.S.C. § 848. *See United States v. Stitt*, 552 F.3d 345, 353 (4th Cir. 2008); *see also Tipton*, 90 F.3d at 902; JA183 n.8. In declining to find § 848(e) a "covered offense," the district court also held that the Saving Statute, 1 U.S.C. § 109, rendered the penalties for Tipton's § 848(e) convictions unchanged.

225 (4th Cir. 2001) ("We must assume that, when Congress amended § 2680(h) in 1974, it was aware of § 2680(a) and its contours." (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97 (1979) ("It is always appropriate to assume that our elected representatives … know the law[.]"))). And, where Congress knows how to say something but chooses not to, its silence is controlling. *See Whitfield v. United States*, 543 U.S. 209, 216 (2005) ("Congress has included an express overt-act requirement in at least 22 other current conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so."). If, as Tipton insists, other statutes exist for the reempaneling of a jury in the capital context, it would have made sense for Congress to have legislated a similar provision in the First Step Act. Congress's decision not to do so should therefore be deemed dispositive. *Cf. United States v. Haas*, 986 F.3d 467, 479 (4th Cir. 2021) ("[W]hen language is used in one part of a Guidelines provision and not in another, the exclusion is presumed intentional."); *United States v. Johnson*, 32 F.3d 82, 86 (4th Cir. 1994) (if Congress intended to change a statutory framework significantly, "it would have said so").

The unsustainability of Tipton's argument that § 404 provides an avenue for a capital resentencing is further reinforced by the statute under which his death penalty was actually imposed. Section 404 specifically provides for a sentence reduction by a court, but by statute and constitutional command, the death sentence

39

must be imposed by a jury. Under 21 U.S.C. § 848(i), a capital sentencing procedure that is saved by the Savings Statute, as this Court held in *United States v. Stitt*, 552 F.3d 345, 353–55 (4th Cir. 2008), must be conducted by a jury. And if the jury returns a death sentence, the court must impose a death sentence: "Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death." 21 U.S.C. § 848(*l*). The mandatory language of § 848(*l*), "contrasts starkly with the First Step Act, which contains undeniably permissive language[.]" JA184 (citing § 404(b) ("A court that imposed a sentence for a covered offense may, … impose a reduced sentence as if…."), and § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.")). And this difference matters. As the district court concluded, "[t]he permissive language of the First Step Act cannot overrule the mandatory language in the sentencing statutes." *Id*.

Moreover, because both statutes—§ 848(*l*) and § 404(b), (c)—are capable of coexisting, they should both be given full effect "absent a clearly expressed congressional intention to the contrary." JA183 (citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). In other words, this Court "must construe" § 848 and the First Step Act, "neither of which refers to the other" "as harmoniously as possible." *Appeal of U.S. by Atty. Gen.*, 887 F.2d 465, 468 (4th Cir. 1989) (applying principle of *Morton v. Mancari* to the Classified Information Procedures and Ethics in Government

40

Acts). The most natural reading of § 404 of the First Step Act is that it does not displace the detailed provisions governing capital sentencings. Nor does it authorize courts to disturb a death sentence, which must be imposed by a jury, not a court. Thus, the First Step Act cannot have overridden the more specific provisions of § 848. *See Epic Systems Corp.v. Lewis*, 138 S. Ct. 1612, 1624 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'clearly expressed congressional intention' that such a result should follow.").

Finally, Tipton's proposed capital resentencing before a jury conflicts with the background principle—accepted by every circuit to have addressed the question—that a § 404 motion does not trigger a de novo resentencing, and instead is a limited proceeding. *See, e.g., United States v. Moore*, 975 F.3d 84, 92 (2d Cir. 2020); *United States v. Easter*, 975 F.3d 318, 326 (3d Cir. 2020); *United States v. Mannie*, 971 F.3d 1145, 1155–56 (10th Cir. 2020); *United States v. Denson*, 963 F.3d 1080, 1086–87 (11th Cir. 2020); *United States v. Kelley*, 962 F.3d 470, 475–76 (9th Cir. 2020); *United States v. Smith*, 958 F.3d 494, 499 (6th Cir. 2020); *United States v. Williams*, 943 F.3d 841, 843 (8th Cir. 2019); *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019). Giving this acknowledged reality, it would be anomalous for defendants sentenced to death for committing murders to receive the

41

benefit of a plenary resentencing while defendants who committed lesser crack cocaine distribution offenses to remain barred from the same sort of proceeding.

At bottom, Tipton's argument is unmoored from both the text of the First Step Act and its practical, on-the-ground implementation. It is also divorced from the statutory context, which is just as important. *See United States v. Croft*, 987 F.3d 93, 98 (4th Cir. 2021) ("Simply put, context matters, and Croft's arguments are divorced from that statutory context."). This Court should reject Tipton's invitation to graft a provision onto the Act that Congress did not enact.

5.    *Tipton's request for relief conflicts with § 404(b)'s requirement that a sentence reduction be imposed "as if" the Fair Sentencing Act had applied.*

Tipton's murder convictions were unaffected by the Fair Sentencing and First Step Acts: those statutes did not affect Tipton's liability, his statutory penalties, or even anything about "the instructions or evidence given to the jury in the penalty phase." JA178. A court conducting a resentencing today "would have no new statutory penalties on which to base a reduced sentence." *Id.* As a result, the First Step Act's mandate to impose "a reduced sentence 'as if' the Fair Sentencing Act had been in effect" has "no meaning" in this context. *Id.*

42

6.      *Even if Tipton's § 848(e)(1)(A) offenses were deemed covered offenses, and a discretionary sentencing reduction were available, the district court did not abuse its discretion in declining to grant a reduction as an alternative ground for denying relief.*

Tipton contends that the district court abused its discretion in declining to reduce his sentence for his "covered" crack cocaine distribution convictions (Counts 32 and 33). Def. Br. 47–50. Despite devoting three pages of its order to the § 3553(a) factors (JA197–99), Tipton claims that the district court "purported to consider" the sentencing factors and that its analysis was "cursory and conclusory[.]" Def. Br. 47–48.

Tipton is mistaken. As a preliminary matter, a reduction in Tipton's "covered" convictions would have no effect on his ultimate sentence. *See United States v. Charles*, 932 F.3d 153, 160 (4th Cir. 2019) ("[T]he [concurrent-sentence] doctrine still has continuing force as a species of harmless-error review where a defendant seeks to challenge the legality of a sentence that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration."). Tipton's death sentences and multiple terms of life imprisonment render any relief he might incur on his covered offenses effectively meaningless.

In any event, Tipton is mistaken that the district court erred in declining to reduce his sentence on Counts 32 and 33. The district court concluded that "[t]he applicable [18 U.S.C. § 3553(a)] factors weigh[ed] against granting [Tipton's]

43

motion." JA197. The district court first noted that the nature and circumstances of the offense "weigh[ed] heavily against" Tipton. JA198. As it stated, Tipton "murdered multiple people on different occasions in cold blood in furtherance of his drug trafficking. Defendant maimed several others in the commission of those murders. Defendant did not limit his violence to others engaged in drug trafficking—innocent bystanders fell victim to Defendant simply as a result of finding themselves in the wrong place at the wrong time." *Id*.

The district court also concluded "that reducing [Tipton's] sentence would not reflect the seriousness of the offense, promote just punishment for the offense, provide respect for the law or afford adequate deterrence to criminal conduct." Its reasoning was simple: "reducing the sentence of a lethal drug dealer would undermine these goals." *Id*. The court then elaborated on its reasoning:

> Defendant has proven himself as the ultimate danger to the community. Defendant led an extremely violent drug enterprise that killed at least ten people, with Defendant personally implicated in at least six killings. The jury recognized Defendant's status as a highly dangerous individual in sentencing him to the death penalty—a penalty reserved for only the most vicious and dangerous criminals.

*Id*. The district court also noted that Tipton's substantial disciplinary record demonstrated a lack of respect for the law and "weigh[ed] against a reduced sentence." *Id*.; *see also* JA119–27 (listing at least 31 disciplinary infractions). The court also concluded that

44

> a reduced sentence would fail to reflect the seriousness of Defendant's cries. Nor would a reduced sentence provide for a just punishment for Defendant's horrific acts. Likewise, reducing the sentence of a serial killer would undermine respect for the law and detract from adequate deterrence to criminal conduct.

*Id*. On this record, Tipton's claim that the district court "purported" to consider the § 3553(a) factors rings hollow.

Still, Tipton appears to argue that the district court ignored his mitigating evidence. Not so. To begin, the district court explicitly stated that it had considered Tipton's mitigation evidence, "including his neglectful and abusive childhood," but that "these mitigating factors d[id] not outweigh the heinous nature and circumstances of his offenses." JA198. The district court made clear that it had considered Tipton's rehabilitative efforts, but that these efforts "pale in comparison to the dangers that he poses to society." *Id*. Neither of these conclusions constitute an abuse of discretion. Indeed, such a balancing of considerations is exactly what courts are expected to do under the vast discretion afforded to them under § 3553(a). *See United States v. Nance*, 957 F.3d 204, 215 (4th Cir. 2020) ("[D]istrict courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors" (quoting *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011))).

Without any supporting evidence, Tipton accuses the district court of effectively barring itself from considering his mitigation evidence. He even asks

45

"this Court to direct the district court to consider *all* evidence offered in mitigation of the sentences[.]" Def. Br. 50. But as noted above, the district court clearly announced its consideration of Tipton's mitigation evidence. It simply concluded that this evidence could not overcome the fact of his multiple murders. Moreover, even a cursory review of Tipton's First Step Act motion in the district court shows that his mitigation evidence was limited. And on appeal, Tipton never actually explains what specific evidence the court ignored. This is unsurprising, given that Tipton offered little by way of true mitigating evidence in the district court. In short, Tipton offered little to offset his extremely aggravated criminal conduct.

Tipton's proffer of "mitigation evidence" in the district court boils down to facts about his upbringing and childhood in New York, evidence readily available to him at his capital sentencing. JA20–22. Tipton even suggests as much. *See* Def. Br. 32–33; *see also Roane*, 378 F.3d at 407 (Tipton's "counsel presented extensive evidence through both lay and expert witnesses, and succeeded in convincing the jurors to find twelve mitigating factors, a number of which pertained to Tipton's difficult childhood and his mental deficiencies. . . . Indeed, the mitigating evidence in the trial's penalty phase was sufficiently compelling to convince the jury to return non-death verdicts on three of the six capital counts against Tipton"). Tipton's brief on appeal alludes to the district court's failure to consider "post-sentencing evidence" (Def. Br. 48), but he never once explains how a new retelling of his

46

troubled background would differ at all from what the jury originally heard in 1993. Presenting a district court with the same sort of information a jury heard—and rejected as insufficient—at an original sentencing proceeding does not constitute "mitigation evidence." Tipton cites this Court's decision in *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020), which in turn, relied on *Pepper v. United States*, 562 U.S. 476 (2011), to hold that "post-sentencing evidence" may be relevant to any assessment of the § 3553(a) factors in the context of a § 404(b) motion. The government agrees. Tipton's problem, however, is that his "mitigation evidence" is not the sort of "post-sentencing evidence" contemplated by the Supreme Court in *Pepper*. *See Pepper*, 562 U.S. at 491 ("[E]vidence of *postsentencing rehabilitation* may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." (emphasis added)).

Nevertheless, the district court considered what Tipton offered. JA198. And on this record, it more than satisfied its obligation under the First Step Act. *Cf. United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (vacating decision not to reduce defendants' sentences under the First Step where "it [was] not at all clear that the district court considered or gave any weight to [their] post-sentencing conduct."); *see also United States v. Brown*, 835 F. App'x 698, 698 (4th Cir. 2021) ("While the court did not give a lengthy discussion of Brown's evidence or circumstances [in declining to grant a First Step Act reduction], the court explicitly

47

stated that, while laudable, Brown's post-sentencing, rehabilitative efforts did not outweigh the seriousness of his criminal conduct and history."). The district court "considered the parties' arguments and [gave] a reasoned basis for exercising [its] own legal decisionmaking authority." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018). Tipton's disagreement notwithstanding, this Court should affirm that decision.[4]

Similarly, even if this Court concludes that § 848(e)(1)(A) is a covered offense under the First Step Act, Tipton would still not be entitled to the relief he seeks. Sentence reductions under § 404(b) are purely discretionary. *See* First Step Act § 404(c). Under the First Step Act, a district court is "not obligated to reduce [the defendant's] sentence at all." *United States v. Jackson*, 952 F.3d 492, 502 (4th Cir. 2020); *Wirsing*, 943 F.3d at 180 ("Congress left the decision as to whether to grant a sentence reduction to the district court's discretion."). This Court has recognized that relief may be denied to "defendants who almost certainly would not

---

[4] In reply, Tipton may argue that the "mitigation evidence" he provided in his motion was just a sampling of what he would have provided had the court granted his request for a hearing. *See* JA33. This argument would fail though because the district court cannot have erred in not considering evidence that was not before it. *See United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013) ("[A]lthough Smalls does not contend that his § 3582(c)(2) motion set forth any new mitigating factors, he maintains that he would have submitted evidence of his exemplary post-sentencing conduct in the reply brief the district court said he could file. … The fundamental problem with this contention is that new arguments cannot be raised in a reply brief. Thus, in failing to consider a reply brief, the district court did not fail to consider all relevant factors properly before it." (internal citation omitted)).

have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act." *Wirsing*, 943 F.3d at 179. And, even when a defendant has a covered offense, a court may consider the drug quantities involved in the offense "in evaluating [the defendant's] motion on the merits." *Gravatt*, 953 F.3d at 264; *see also United States v. White*, 984 F.3d 76, 88 (D.C. Cir. 2020) ("The court may consider both judge-found and jury-found drug quantities as part of its exercise of discretion." (citing *United States v. Ware*, 964 F.3d 482, 488–89 (6th Cir. 2020))).

Here, Tipton would have been subject to the same exact liability and penalty scheme had he been prosecuted after the Fair Sentencing Act. *Cf. Wirsing*, 943 F.3d at 179. Indeed, the drug quantities in this case far exceed the new 280-gram threshold imposed by the Fair Sentencing Act. *See United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). For Tipton in particular, the PSR attributed him with 18.49 kilograms of crack. *See* JA219.

Moreover, the district court concluded that the § 3553(a) factors did not support reducing Tipton's sentences even for the drug-trafficking convictions that were covered offenses under the First Step Act. The district court "refuse[d] to overturn the will of the community" reflected in the jury's "unanimous[] deci[sion] that this heinous serial killer" deserved the death penalty. JA200. The district court clearly manifested its sentencing rationale. Even if § 848(e)(1)(a) is a covered

49

offense under the First Step Act, the district court will not reduce the sentence of a "lethal drug dealer." JA198. Therefore, "it would make no sense to set aside [a] reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) (citation omitted). Ordinary principles of harmless error review apply just as equally in this case as they do in the traditional sentencing context. Other court of appeals have applied similar principles to a variety of factual circumstances in the First Step Act context. *See e.g.*, *United States v. Whitehead*, 986 F.3d 547, 549–51 (5th Cir. 2021); *United States v. Smith*, 982 F.3d 106, 111 n.3 (2d Cir. 2020); *United States v. Flowers*, 963 F.3d 492, 498 (6th Cir. 2020).

> 7.    *This Court should not create a disparity with the denial of relief to Tipton's codefendant, Cory Johnson, who raised the same claim in seeking a stay of his execution and was denied relief by the Supreme Court.*

A panel of this Court denied a stay of execution raising the same question by a 2-1 vote in the case of one of Tipton's codefendants. *See United States v. Johnson*, 838 F. App'x 765 (4th Cir. 2021). The full Court then denied en banc review, *see United States v. Johnson*, 833 F. App'x 522 (4th Cir. 2021), and the Supreme Court declined to grant a stay by a 7-2 vote, *Johnson v. United States*, 141 S. Ct. 1233 (2021), thereby allowing the execution to proceed.

Courts should not "frustrate the evenhanded administration of justice by

50

giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there." *In re McDonald*, 205 F.3d 606, 613 (3d Cir. 2000) (quoting *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998)).

## Conclusion

This Court should affirm the district court's denial of Tipton's § 404 motion.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____ /s/

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys

51

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,983 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
_____

Richard D. Cooke
Assistant United States Attorney