**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 20-14**

---

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

JAMES H. ROANE, JR., a/k/a J.R.,

       Defendant – Appellant.

---

**No. 20-16**

---

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

RICHARD TIPTON, a/k/a Whittey,

       Defendant – Appellant.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  David J. Novak, District Judge.  (3:92-cr-00068-DJN-3; 3:92-cr-00068-DJN-1)

---

Argued:  September 14, 2022                    Decided:  October 18, 2022

Before WILKINSON and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Rushing and Senior Judge Floyd joined.

---

**ARGUED:** Gerald Wesley King, Jr., FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina; Joanne Marie Heisey, FEDERAL COMMUNITY DEFENDER OFFICE, Philadelphia, Pennsylvania, for Appellants. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Jeffrey Lyn Ertel, FEDERAL DEFENDER PROGRAM, INC., Atlanta, Georgia; Stephen Northup, TROUTMAN SANDERS LLP, Richmond, Virginia; Frederick R. Gerson, DURRETTE, ARKEMA, GERSON & GILL PC, Richmond, Virginia, for Appellant Richard Tipton, III. Jessica D. Aber, United States Attorney, Joseph Attias, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

WILKINSON, Circuit Judge:

In this consolidated case, James Roane, Jr. and Richard Tipton appeal the district court's denial of their motion for a sentence reduction under the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). They argue first that their convictions under 21 U.S.C. § 848(e)(1)(A) for drug-related murder are "covered offenses" pursuant to the First Step Act, and therefore their death and life imprisonment sentences can no longer be sustained. They also argue that their convictions for crack cocaine distribution offenses in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) are "covered," and their sentences associated with these convictions should be reduced. We agree with the district court that 21 U.S.C. § 848(e)(1)(A) is not a covered offense under the First Step Act as its penalties were not modified by the Fair Sentencing Act, Pub. L. No. 111-220, §§ 2–3, 124 Stat. 2372, 2372 (2010). We also find the district court was substantively and procedurally reasonable in denying a sentence reduction for appellants' drug distribution offenses. We thus affirm.

I.

A.

As repeat litigants in this court, the underlying facts of this case have been comprehensively set forth by previous panels. *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996); *see also United States v. Roane*, 378 F.3d 382 (4th Cir. 2004). We reemphasize them here. This appeal arises from Roane and Tipton's involvement as principal "partners" in a drug-trafficking conspiracy in the Richmond, Virginia area from 1990 to 1992. *Tipton*, 90 F.3d at 868. The partners "obtained wholesale quantities of powdered cocaine from suppliers in New York City, converted it by 'cooking' [it] into crack cocaine, then

3

packaged it, divided it among themselves, and distributed it through a network of 30-40 street level dealers[.]" *Id.* Appellants both earned substantial profits from this network. *Id.* Over a short period of time beginning in January 1992, appellants were involved in several brutal murders and maimings within the Richmond area. *Id.* Their victims were targeted because of "treachery or other malfeasance [within the gang], or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Id.*

For example, on January 4, 1992, Tipton and Roane met with Douglas Talley, a subordinate in their drug business who had mishandled a drug transaction. *Id.* Roane grabbed him from behind while Tipton stabbed him eighty-four times in the head, neck, and upper body, killing him. *Id.* Nine days later, on January 13, 1992, Tipton and Roane went to Douglas Moody's apartment, a "suspected rival" drug dealer. *Id.* Once there, Tipton shot Moody twice in the back. *Id.* Moody fled, but Roane, armed with a military-style knife, caught up to Moody and fatally stabbed him eighteen times. *Id.* This string of violent homicides perpetrated by appellants and other co-conspirators continued until February 19, 1992, leaving ten dead and several others in critical condition. *Id.* at 868–69.

Following this spree, Roane, Tipton, and other co-conspirators were jointly charged in the Eastern District of Virginia on July 20, 1992, as part of a 33-count indictment for violations of federal drug laws. *See* J.A.T. 36–57.[1] Roane was charged with 15 counts total,

---

[1] As these cases were consolidated after briefing, there are two joint appendices. The appendix originally submitted by Tipton's counsel will be referred to as J.A.T. The appendix originally submitted by Roane's counsel will be referred to as J.A.R.

including three counts of capital murder in furtherance of a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2; one count of possession of 50 or more grams of cocaine base ("crack cocaine") with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) (substantive provision) and (b)(1)(A) (penalty provision); and one count of engaging in a CCE, in violation of 21 U.S.C. § 848(a). J.A.R. 7–27. The jury convicted him on all charged counts. *See Tipton*, 90 F.3d at 870. Following a penalty hearing on the § 848(e)(1)(A) murder convictions, a capital jury recommended a death sentence for Roane on one count and life imprisonment on the other two. *Id.* The district court sentenced Roane in accord with this recommendation and imposed terms of imprisonment for the non-murder convictions, including forty years for the drug distribution offense under 21 U.S.C. § 841(a)(1). *Id.*; J.A.R. 56.

Tipton was charged with 29 counts, including eight counts of capital murder in furtherance of a CCE, two counts of possession of 50 or more grams of crack cocaine with intent to distribute, and one count of engaging in a CCE under the same statutes as Roane. J.A.T. 36–57. The jury convicted Tipton of six of the eight capital murders, both possession counts, and the CCE count, among other crimes. *Tipton*, 90 F.3d at 869. Following a penalty hearing on the murder convictions, a capital jury recommended death sentences for Tipton on three counts and life imprisonment on the other three. *Id.* at 870. The district court sentenced Tipton in accord with this recommendation and imposed terms of imprisonment for the non-murder convictions, including for both drug distribution convictions under 21 U.S.C. § 841(a)(1), forty years for one count and twenty for the other.

5

*Id.*; J.A.T. 19. This court substantially upheld their convictions on appeal. *See Tipton*, 90 F.3d at 903.

B.

Roane and Tipton have since filed numerous unsuccessful collateral attacks on their convictions and sentences. *See, e.g.*, *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004); Order, *In re James Roane, Jr.*, No. 9-8, ECF No. 24 (4th Cir. July 13, 2010); Order, *In re James Roane, Jr.*, No. 16-6, ECF No. 13 (4th Cir. June 6, 2016); Order, *In re James Roane, Jr.*, No. 20-7, ECF No. 44 (4th Cir. Jan. 24, 2022); Order, *In re Richard Tipton*, No. 16-7, ECF No. 13 (4th Cir. June 6, 2016); Order, *In re Richard Tipton*, No. 19-2, ECF No. 9 (4th Cir. May 14, 2019); Order, *In re Richard Tipton*, No. 20-10, ECF No. 42 (4th Cir. Jan. 24, 2022). Most recently, they filed motions for sentence reduction pursuant to section 404(b) of the First Step Act for their 21 U.S.C. § 848(e)(1)(A) murder convictions and their 21 U.S.C. § 841(a)(1) drug distribution convictions. The district court, Judge David J. Novak, denied both motions in their entirety.[2]

In relevant part, the court held that appellants' convictions under 21 U.S.C. § 848(e)(1)(A) for murder in furtherance of a CCE did not constitute "covered offenses" under the First Step Act. J.A.R. 170. It explained that "the Fair Sentencing Act altered the sentences applicable to certain offenses and the First Step Act provides the vehicle to apply

---

[2] In denying Tipton's First Step Act motion, *see* Order, *United States v. Tipton*, No. 3:92-cr-68-DJN-1, ECF No. 76 (E.D. Va. Nov. 19, 2020), the district court incorporated by reference its earlier decision denying Roane's similar motion, *see United States v. Roane*, No. 3:92-cr-68-DJN-3, 2020 WL 6370984 (E.D. Va. Oct. 29, 2020).

6

the Fair Sentencing Act retroactively." J.A.R. 161. But the benefit of this retroactivity only runs to certain "covered offense[s]," which is "a violation of a Federal criminal statute, the statutory penalties of which were modified by Section 2 or 3 of the Fair Sentencing Act…that was committed before August 3, 2010." J.A.R. 165–66 (quoting First Step Act § 404, 132 Stat. at 5222).

The district court stated that sections 2 and 3 of the Fair Sentencing Act expressly modified the penalties associated with the following statutes: 21 U.S.C. § 841(b)(1), 21 U.S.C. § 960(b), and 21 U.S.C. § 844(a). J.A.R. 167–68. Violations of these statutes constituted covered offenses under the First Step Act. J.A.R. 168. The court then found that Roane and Tipton's offense of conviction was 21 U.S.C. § 848(e)(1)(A), which was not expressly altered by the Fair Sentencing Act. J.A.R. 170. The statutory penalties in § 848(e)(1)(A) remained the same both before and after the Fair Sentencing Act– death or life imprisonment with a statutory minimum of 20 years imprisonment. J.A.R. 177. This precluded the court from imposing a reduced sentence "as if" the Fair Sentencing Act had been in effect under § 404(b) of the First Step Act. J.A.R. 178. Further, "Congress' clearly expressed intent with respect to both § 848(e)(1)(A) and the Fair Sentencing Act" shows that drug-related murder is not a covered offense, as the Fair Sentencing Act was meant to apply to low-level drug dealers and not to those offenders who "murdered others in furtherance of [their] drug dealing." J.A.R. 176–77.

The court also rejected Roane and Tipton's argument that their § 848(e)(1)(A) convictions were nonetheless "covered" by the First Step Act because the statute included a covered offense as a predicate. J.A.R. 171. The court found that § 848(e)(1)(A) creates a

7

separate crime of "killing in furtherance of any of one of three distinct predicate offenses," which are engaging in or working in furtherance of a CCE or engaging in conduct punishable under either 21 U.S.C. § 841(b)(1)(A) or 21 U.S.C. § 960(b)(1). J.A.R. 171–72. The court found that the crime appellants committed was the intentional killing of an individual while engaging in and working in furtherance of a CCE in violation of 21 U.S.C. § 848(a), a crime for which they were originally convicted in 1993. J.A.R. 172–74. And though the CCE conviction, "in turn, rested on violations of § 841(b)(1)(A)," the Fair Sentencing Act's modification of the statutory penalties in § 841(b)(1)(A) did not affect the defendants' substantive liability or statutory penalties under § 848(e)(1)(A). J.A.R. 174–75. The court found that Congress intentionally limited First Step Act coverage to those discrete offenses whose statutory penalties the Fair Sentencing Act expressly modified– a modification that did not include § 848(e)(1)(A). J.A.R. 175.

The court agreed with appellants that their convictions for possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) are covered offenses under the First Step Act. J.A.R. 190. However, the court exercised its discretion pursuant to section 404(c) of the First Step Act to decline a sentence reduction. J.A.R. 192; J.A.T. 196. It determined that the sentencing factors in 18 U.S.C. § 3553(a) counseled against reducing Roane and Tipton's terms of imprisonment for their drug distribution convictions. J.A.R. 192–94; J.A.T. 196–99.

## II.

Roane and Tipton appeal the denial of their motions for sentence reduction under section 404(b) of the First Step Act. They argue first that their murder convictions under

8

21 U.S.C. § 848(e)(1)(A) are "covered offenses" pursuant to the First Step Act, and thus they are eligible for a reduction of their death and life imprisonment sentences for these crimes. This is a question of "threshold eligibility for First Step Act relief, which we consider de novo." *United States v. Goodwin*, 37 F.4th 948, 952 (4th Cir. 2022); *see also United States v. Allen*, 716 F.3d 98, 106 (4th Cir. 2013) ("Whether the new threshold amount announced in the Fair Sentencing Act applie[s] to [the appellant] is a question of law which we decide de novo."). For the reasons that follow, we disagree with appellants and hold that 21 U.S.C. § 848(e)(1)(A) is not a covered offense under the First Step Act.

A.

We begin with the relevant statutory text and background. In 1986, concerned about the rise of crack cocaine and its influence on violent crime, Congress passed the comprehensive Anti-Drug Abuse Act, Pub. L. 99-570, 100 Stat. 3207. *See also Terry v. United States*, --- U.S. ---, 141 S. Ct. 1858, 1860 (2021). This act created mandatory-minimum penalties for various offenses involving the possession, distribution, and sale of drugs, with much lower trigger thresholds for crack offenses. *Id.* Relevant here, Congress wrote two base penalty provisions for drug distribution offenses under 21 U.S.C. § 841(b)(1) that depended on drug quantity. *Id.*; *see also* Anti-Drug Abuse Act § 1002, 100 Stat. 3207-2– 3207-4. Under the statute, distribution of 5 grams of crack or 500 grams of powder cocaine triggered a 5-year mandatory minimum sentence, and distribution of 50 grams of crack or 5 kilograms of powder cocaine triggered a 10-year mandatory minimum sentence. *Terry*, 141 S. Ct. at 1860 (citing 100 Stat. at 3207-2, 3207-3). These different

triggers produced a 100-to-1 crack-to-powder ratio for the same statutory penalty. *See Dorsey v. United States*, 567 U.S. 260, 266 (2012).

As time went on, policymakers worried that the 100-to-1 ratio was too high, in substantial part because African Americans were disproportionately convicted of crack offenses at the lower trigger threshold. *See Terry*, 141 S. Ct. at 1861 (citing United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy 153-154, 192 (Feb. 1995)). Congress responded to these concerns through the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, which reduced the statutory penalties for certain crack offenses to produce an 18-to-1 crack-to-powder drug quantity ratio. *See Dorsey,* 567 U.S. at 269. Specifically, section 2 of the Fair Sentencing Act raised the drug quantity trigger for a 10-year minimum sentence under 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 960(b)(1) from 50 grams to 280 grams of crack, and the 5-year minimum trigger under 21 U.S.C. § 841(b)(1)(B) and 21 U.S.C. § 960(b)(2) from 5 grams to 28 grams. § 2, 124 Stat. at 2372. Section 3 also eliminated the mandatory minimum sentence for simple possession of crack under 21 U.S.C. § 844(a). § 3, 124 Stat. at 2372.

While raising the drug quantity ratio, Congress increased financial penalties for major drug traffickers and sentencing enhancements for defendants who committed crimes of violence in carrying out these drug offenses. §§ 4–5, 124 Stat. at 2372–73. As an original sponsor of the bill said, the new sentencing structure aimed to "ensure that limited Federal resources are directed toward the largest drug traffickers and the most violent offenders, not just those guilty of simple possession and a first offense." 155 Cong. Rec. S10488-01, S10491 (daily ed. Oct. 15, 2009) (statement of Senator Durbin).

10

However, the Fair Sentencing Act was not retroactive, and the new drug quantity thresholds did not "apply to a defendant sentenced before the Act's effective date." *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). Thus, the same "disparities between sentences for crack cocaine offenses and powder cocaine offenses remained for defendants sentenced before August 3, 2010[.]" *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020). As a response, Congress enacted the First Step Act of 2018, which allowed district courts to apply the Fair Sentencing Act retroactively to sentences for certain crimes committed prior to its enactment. Pub. L. 115-391, § 404, 132 Stat. 5194, 5222; *see also Gravatt*, 953 F.3d at 260. The First Step Act's sponsors believed that retroactivity "give[s] a chance to thousands of people…still serving sentences for nonviolent offenses involving crack cocaine under the old 100-to-1 rul[e] to petition individually" for a sentencing reduction. 164 Cong. Rec. S7020-02, S7021 (daily ed. Nov. 15, 2018) (statement of Senator Durbin).

Section 404 of the First Step Act governs this appeal, the text of which we present in full:

> (a) DEFINITION OF COVERED OFFENSE– In this section, the term ''covered offense'' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 …, that was committed before August 3, 2010.

> (b) DEFENDANTS PREVIOUSLY SENTENCED– A court that imposed a sentence for a covered offense may, on motion of the defendant, … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed.

> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing

11

> Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404, 132 Stat. at 5222 (citations omitted). Whether appellants are eligible for a sentence reduction thus turns on whether their capital murder convictions under 21 U.S.C. § 848(e)(1)(A) are "covered offenses" under section 404 of the First Step Act. *See United States v. Thomas*, 32 F.4th 420, 423 (4th Cir. 2022); *see also Gravatt*, 953 F.3d at 262.

### B.

As an initial matter, 21 U.S.C. § 848(e)(1)(A), the offense of which appellants were convicted, is nowhere mentioned in the text of the Fair Sentencing Act.  If a "covered offense" is "a violation of a Federal criminal statute" whose statutory penalties were "modified by section 2 or 3 of the Fair Sentencing Act," *see* First Step Act § 404(a), 132 Stat. at 5222, then only five "offenses" are explicitly contemplated by the text. Section 2 of the Fair Sentencing Act modified the penalties associated with 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(iii), 960(b)(1)(C), and 960(b)(2)(C) by increasing the drug quantity thresholds for crack cocaine to trigger each statute's mandatory minimum sentence. § 2, 124 Stat. at 2372. Section 3 modified the penalties associated with 21 U.S.C. § 844(a) by eliminating mandatory minimum sentences for simple possession of crack. § 3, 124 Stat. at 2372. Congress carefully enumerated specific statutes whose penalties it modified in the Fair Sentencing Act– we have no authority to add additional ones. "[W]here a law expressly describes a particular situation to which it shall apply, what was omitted

or excluded was intended to be omitted or excluded." *Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001).

Notably, each of the offenses modified by the Fair Sentencing Act involves the possession, production, or distribution of crack cocaine. 21 U.S.C. § 848(e)(1)(A), on the other hand, covers the intentional killing of another individual by "any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under [21 U.S.C. § 841(b)(1)(A)] or [21 U.S.C. § 960(b)(1)]." As the district court correctly stated, § 848(e)(1)(A) creates "a separate crime" of "killing in furtherance of any one of three predicate offenses" by "defin[ing] the conduct it prohibits…and the statutory penalties for engaging in the prohibited conduct." J.A.R. 170; *see also United States v. NJB*, 104 F.3d 630, 633 (4th Cir. 1997) (holding that an earlier version of § 848(e)(1) is a "separate offense, not merely a penalty enhancement" for substantive CCE offenses under 21 U.S.C. § 848). Prior to August 3, 2010, the statutory penalty range associated with this offense was 20 years to life in prison with death eligibility. After August 3, 2010, and through today, that penalty remains the same. Congress in no way modified the elements or penalties of § 848(e)(1)(A) via the Fair Sentencing Act. The text of the First Step Act therefore suggests it is not a covered offense.

The reason for § 848(e)(1)(A)'s absence from the Fair Sentencing Act is obvious in context: prior to that Act, the U.S. Sentencing Commission found that the 100-to-1 ratio produced sentencing disparities which ran contrary to the "goal of punishing major drug traffickers more severely than low-level dealers." *Kimbrough v. United States*, 552 U.S. 85, 98 (2007); *see also Dorsey*, 567 U.S. at 269 (noting the 100-to-1 ratio failed to "achieve

13

the 'proportionality' goal" of treating low-level dealers and major traffickers differently). Congress accepted these findings and incorporated proportionality objectives into the Fair Sentencing Act. *See Dorsey*, 567 U.S. at 269. While increasing the drug quantity thresholds for mandatory minimums, Congress both increased the financial penalties for major drug traffickers and added additional sentencing enhancements for defendants who used violence during a drug trafficking offense. *See* Fair Sentencing Act §§ 4–5, 124 Stat. at 2372–73. And the First Step Act carried this proportionality rationale forward by authorizing "courts to provide a remedy for certain defendants who bore the brunt of a racially disparate sentencing scheme," low-level crack dealers. *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020).

On the other hand, 21 U.S.C. § 848, which covers continuing criminal enterprises, "is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett v. United States*, 471 U.S. 773, 781 (1985). Section 848(e) in particular is "aimed at special and serious crimes," including "killing in furtherance of a continuing criminal enterprise, large-scale drug distribution, or large-scale drug importation." *NJB*, 104 F.3d at 634. We find it hard to believe that Congress would authorize courts to reduce sentences imposed under § 848(e)(1)(A), especially jury-imposed death sentences, without so much as a word. Appellants attempt to baldly rewrite the statutory scheme in arguing that Congress wanted a sentence reduction to apply to their nine capital murder convictions. We cannot allow such a circumvention of congressional intent and the clearly expressed statutory means of implementing that intent.

14

C.

Nevertheless, Roane and Tipton argue that "[b]ecause conviction of an offense punishable under 21 U.S.C. § 841(b)(1)(A) is incorporated as an element of 21 U.S.C. § 848(e)(1)(A), § 848(e)(1)(A) has been modified by the Fair Sentencing Act and is therefore covered under the First Step Act." *See* Appellant Roane's Opening Br. at 19. The gist of this argument is that appellants' convictions for possession with intent to distribute 50 grams or more of crack cocaine under §§ 841(a)(1) and 841(b)(1)(A) served as the predicate offense to their § 848(e)(1)(A) murder convictions. Pursuant to the Fair Sentencing Act, § 841(b)(1)(A) now requires a threshold drug quantity of 280 grams or more of crack cocaine to trigger its statutory penalties. After the Fair Sentencing Act, appellants argue, the threshold drug quantity required for a § 848(e)(1)(A) capital murder offense with a drug distribution predicate is 280 grams. Appellants' convicted drug weight of 50 grams can no longer sustain a conviction under § 848(e)(1)(A), and therefore, appellants contend, its penalties are modified.

This argument, however, runs headlong into the Supreme Court's recent decision in *Terry v. United States*, ---- U.S. ----, 141 S. Ct. 1858 (2021). In *Terry*, the Court clarified that the relevant question district courts must ask when conducting the covered offense inquiry is "whether the Fair Sentencing Act modified the *statutory penalties* for *petitioner's offense*." *Id.* at 1862. (emphasis added). It reasoned that in section 404(a) of the First Step Act, "'statutory penalties' references the entire, integrated phrase 'a violation of a Federal criminal statute,'" which means "offense." *Id.* (quoting *United States v. Jones*, 962 F.3d 1290, 1298 (11th Cir. 2020); Black's Law Dictionary 1300 (11th ed. 2019)).

15

We believe that *Terry* compels the answer in this case. *Terry* requires us to look to the "statutory penalties for [appellants'] *offense*, not the statute or statutory scheme." *Id.* at 1863. The relevant offense here is 21 U.S.C. § 848(e)(1)(A), which is completely different from the 21 U.S.C. § 841(b)(1)(A) drug distribution predicate. The Fifth Circuit recently noted that "[e]very court of appeals to consider the question has concluded that § 848(e)(1)(A) sets forth separate offenses– offenses for which the defendant may be prosecuted, convicted, and punished *in addition to* the underlying predicate drug-trafficking offenses." *United States v. Vasquez*, 899 F.3d 363, 383 (5th Cir. 2018) (emphasis in original); *see also United States v. McCullah*, 76 F.3d 1087, 1104–05 (10th Cir. 1996) (concluding the same for the continuing criminal enterprise predicate).

Most crucially for the *Terry* analysis, and most fatally to appellants' argument, the statutory penalties associated with their § 848(e)(1)(A) convictions remain the same both before and after the Fair Sentencing Act– a 20-year minimum sentence up to life imprisonment or death for drug-related murder. Thus, the penalties could not possibly have been modified by the Fair Sentencing Act, the essential requirement for First Step Act coverage. Moreover, in urging us to focus on the drug distribution predicate of § 841(b)(1)(A), appellants completely ignore *Terry*'s instruction that we look at the actual offense for which they were convicted, § 848(e)(1)(A), not some secondary and subsidiary part. The penalties associated with this offense are established completely independently of the predicate offenses even while incorporating some of the substantive conduct. *See United States v. Fletcher*, 997 F.3d 95, 97 (2d Cir. 2021). Thus, § 848(e)(1)(A) is not a "covered offense" eligible for sentence reduction under the First Step Act.

16

D.

Roane and Tipton resist this straightforward reasoning by pointing to our recent decision in *United States v. Thomas*, 32 F.4th 420 (4th Cir. 2022) (per curiam). *Thomas*, however, is no help to them. First, *Thomas* was a case about whether 21 U.S.C. §§ 848(a) and 848(c) were covered offenses under the First Step Act. Whether § 848(e)(1)(A) is a covered offense was not even before the court, nor were we presented with the stark textual and congressional intent arguments advanced in the instant case. "[U]nder our adversarial system of justice, an unchallenged and untested assumption is simply not a holding that binds future courts." *United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019). This is even more salient in a case as consequential as this one, with jury-imposed death penalties hanging in the balance. We cannot take two clauses in a long opinion as our license to ignore the statutory text, overrule congressional intent, and buck the Supreme Court's guidance in *Terry*.

Second, *Thomas* actually compels us to hold against appellants in this case. *Thomas* held that a CCE conviction under §§ 848(a) and (c) was not a "covered offense" under the First Step Act. *Thomas*, 32 F.4th at 423. All evidence in this case suggests that the predicate for Roane and Tipton's murder convictions was their engagement and work in furtherance of a CCE, and not for their drug distribution convictions under § 841(b)(1)(A). In the indictment, all relevant § 848(e)(1)(A) charges were for intentional killings "while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 U.S.C. § 848(a)." *See* J.A.T. 36–57 (Counts 3, 5, 8, 11, 17, 18, 19, 24, 25). Roane and Tipton were both convicted of a substantive CCE offense under 21 U.S.C. § 848(a). *See* J.A.T. 40–41 (Count

17

2). The jury instructions identified the CCE conviction as one of the elements of the murder charges, requiring the jury to find "that the defendant was engaged in furtherance of the continuing enterprise charged in Count Two of the indictment." J.A.R. 42. Finally, on direct appeal, this court agreed that the § 848(e)(1)(A) murder convictions were predicated on the substantive CCE offense. *Tipton*, 90 F.3d at 887. Roane and Tipton's argument as to *Thomas* illustrates the flawed equation running throughout their appeal. They seek to somehow equate a drug distribution offense with the infinitely more serious matter of a killing in furtherance of a CCE. In short, they attempt to compare things that are not at all comparable.

E.

Last, but certainly not least, holding in favor of appellants would create a stark circuit split. The two circuits to decide the question presented by this appeal have both emphatically held that 21 U.S.C. § 848(e)(1)(A) is not a covered offense under the First Step Act. *See United States v. Snow*, 967 F.3d 563 (6th Cir. 2020); *United States v. Fletcher*, 997 F.3d 95 (2d Cir. 2020). Although both cases preceded *Terry*, our sister circuits identified 21 U.S.C. § 848(e)(1)(A) as the relevant offense for their First Step Act determination. *See Fletcher*, 997 F.3d at 97; *Snow*, 967 F.3d at 564. They rightly decided that the First Step Act cannot be massaged to support the proposition that criminal liability under § 848(e)(1)(A) is altogether eliminated because some former predicate drug weight might no longer sustain a conviction. We agree with that view for the reasons set forth above, and we thus decline to create a gratuitous circuit split.

18

III.

We turn now to appellants' request for a reduction in the sentences imposed for their crack cocaine distribution offenses under 21 U.S.C. § 841(b)(1)(A). These offenses are covered by the First Step Act, as their statutory penalties were explicitly modified by the text of the Fair Sentencing Act. *See* Pub. L. 111–20, § 2(a), 124 Stat. 2372, 2372 (2010); *see also Terry*, 141 S. Ct. at 1864.

We recently held that all proceedings under section 404 of the First Step Act beget procedural and substantive reasonableness review. *United States v. Swain*, 49 F.4th 398, 402 (4th Cir. 2022). This "requires us to consider the totality of the circumstances to determine whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in [18 U.S.C. § 3553(a)]." *Id.* (internal quotations omitted). The totality of the circumstances inquiry, in turn, "require[s] courts to consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine– following the Fair Sentencing Act– whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." *United States v. Collington*, 995 F.3d 347, 360 (4th Cir. 2021).

We conclude that the district court satisfied its burden under this standard. As an initial matter, section 404(c) of the First Step Act makes any sentence reduction discretionary for covered offenses. *See* 132 Stat. 5222. "Congress left the decision as to whether to grant a sentence reduction to the district court's discretion." *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019). Even so, the district court carefully explained and weighed the sentencing factors under 18 U.S.C. § 3553(a) for both defendants.

19

The district court began by examining the 40-year sentence associated with Roane's conviction for possession of 50 grams of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A). J.A.R. 190–91. It found this sentence to be within the new post-Fair Sentencing Act statutory penalty range: a conviction of 50 grams now triggers the mandatory minimum under § 841(b)(1)(B), which mandates a sentence of imprisonment of five to forty years. J.A.R. 191. The court then considered the rest of the § 3553(a) sentencing factors to determine whether this sentence remained appropriate. It began with "the nature and circumstances of the defendant." J.A.R. 192. It noted that Roane "murdered multiple people on different occasions in cold blood in furtherance of his drug trafficking," committed several violent and drug-related crimes, and had a criminal history of category V, all of which weighed against a sentencing reduction. J.A.R. 192. The court then proceeded to consider Roane's good conduct and rehabilitative efforts in prison along with the mitigating evidence and actual innocence claims presented in Roane's sentence reduction motion. J.A.R. 192–193, 193 n. 13. However, this "laudable" mitigating evidence was outweighed, as the court ultimately "believe[d] that reducing [Roane's] sentence would not reflect the seriousness of the offense, promote just punishment for the offense, provide respect for the law or afford adequate deterrence to criminal conduct." J.A.R. 193. It looked to the fact that Roane was a leader in his drug trafficking ring and was himself heavily involved in several murders, one of which resulted in a jury sentencing him to death. *Id.* Lastly, the court found no applicable policy statement from the Sentencing Commission in favor of a sentence reduction, and it noted that reducing his sentence could lead to unwarranted sentence disparities. J.A.R. 194.

The district court also thoroughly weighed the sentencing factors as applied to Tipton. Tipton's two § 841(b)(1)(A) convictions resulted in one forty-year sentence and one twenty-year sentence. J.A.T. 196. The court stated that "under the current statutory penalties, [it] may impose a sentence up to forty years' imprisonment for each count," thus Tipton's sentences "remain within the statutory penalties today." J.A.T. 196–97. It then proceeded to evaluate each § 3553(a) factor in light of Tipton's motion. The court noted the mitigating evidence Tipton presented but found that "the nature and circumstances of the offense and [Tipton's] history and characteristics" weighed heavily against him. J.A.T. 198. The court found telling the fact that Tipton "did not limit his violence to others engaged in drug trafficking," but instead "innocent bystanders fell victim…simply as a result of finding themselves in the wrong place at the wrong time." *Id.* The court then found that "reducing the sentence of a lethal drug dealer would undermine" sentencing goals, since Tipton "has proven himself as the ultimate danger to the community" through his leadership role in an incredibly violent drug trafficking ring. *Id.* As in Roane's case, the district judge thought the fact that Tipton was sentenced to death for his crime weighed against a sentence reduction and noted that his "lengthy disciplinary record [in prison] …does not demonstrate a respect for the law." *Id.* It further found that Tipton had already received an in-guideline sentence for these drug distribution crimes, and that there was "no policy statement from the Sentencing Commission [which] weighs in favor of reducing" Tipton's sentence. J.A.T. 199. Lastly, the district court worried that a sentence reduction could lead to unwarranted disparities, noting that Tipton "received the same sentences as his co-conspirators" for the drug distribution convictions. *Id.*

21

The district court carefully considered appellants' arguments and made a well-supported determination that the ends of justice would be disserved by any sentencing reductions for their drug distribution crimes. The proceeding did not run afoul of the First Step Act, nor did it evidence any procedural or substantive flaw. For the foregoing reasons, the judgment is affirmed.

*AFFIRMED*